Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Lucas Hori (State Bar No. 294373)
lhori@rutan.com
Talya Goldfinger (State Bar No. 294926)
tgoldfinger@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KASRA SARHADI, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

PEAR HEALTH LABS, INC., d/b/a AAPTIV,

Defendant.

Case No. 3:24-cv-7921-TLT

Judge: Hon. Trina L. Thompson

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

[Request for Judicial Order and [Proposed] Order Filed Concurrently Herewith]

Date: April 22, 2025
Time: 2:00 p.m.
Place: Courtroom 9

Date Action Filed: November 12, 2024
Trial Date: None Set

**TO PLAINTIFF KASRA SARHADI AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 22, 2025 at 2:00 p.m.[1] or as soon thereafter as counsel may be heard in the courtroom of the Honorable Trina L. Thompson located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Pear Health Labs, Inc. d/b/a Aaptiv ("Aaptiv"), will and does hereby move the Court for an order dismissing Plaintiff Kasra Sarhadi's Complaint against Aaptiv.

The Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that it does not and cannot state a claim against Aaptiv under either of the claims for relief pleaded based on the California Invasion of Privacy Act and/or the Video Privacy Protection Act. This Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum and Points and Authorities, the concurrently filed Request for Judicial Notice, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument that may be presented to the Court by Aaptiv or other matter that may be considered by the Court.

Dated: January 8, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: *\/s/ Talya Goldfinger*
Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

---

[1] Aaptiv also intends to file a forthcoming motion to compel arbitration of Plaintiff's claims on an individual basis based on Aaptiv's Terms of Use. This motion is filed without waiver of Aaptiv's right to compel arbitration. Aaptiv has scheduled the hearing on the instant Motion for April 22 in order to leave time for the Court to hear Aaptiv's anticipated arbitration motion before ruling on its motion to dismiss.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ... 1

II. FACTUAL ALLEGATIONS ... 2

III. LEGAL STANDARD ... 4

IV. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT ... 4

A. The CIPA Claim for Relief Fails As A Matter Of Law ... 5

1. The Complaint Fails to State a "Wiretapping" Claim Because the Alleged Communications were Not Over Telephone ... 5

2. The Complaint Fails to State an "Eavesdropping" Claim For Multiple Reasons ... 6

a. *Aaptiv Cannot Eavesdrop on its Own Communications* ... 6

b. *The Alleged Communications were Not Intercepted while "In Transit."* ... 9

c. *Users Consent to Any Alleged Data Sharing* ... 11

3. The Complaint Fails To State a "Use" Claim Because there was No Underlying Wiretapping or Eavesdropping ... 12

4. The Complaint Fails to State an Aiding and Abetting Claim Because there was No Underling Wiretapping or Eavesdropping ... 13

B. The VPPA Claim for Relief Fails As A Matter Of Law ... 14

V. CONCLUSION ... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 4, 10

*Aulson v. Blanchard*,
83 F.3d 1 (1st Cir. 1996) ........................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 4

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................ 6

*Doe I v. Google LLC*,
No. 23-CV-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ........................................ 2, 8

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........................................ 11-12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................ 2, 6-8, 13

*Hammerling v. Google LLC*,
No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........................................ 10

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........................................ 5, 13

*In re Reinert*,
No. AP 14-02204-JAD, 2015 WL 1206714 (Bankr. W.D. Pa. Mar. 12, 2015), *aff'd sub nom. Reinert v. Bould*, No. 15CV0542, 2015 WL 6760510 (W.D. Pa. Nov. 5, 2015).. 4

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................ 10

*James v. Allstate Ins. Co.*,
No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........................................ 2, 6

*Johnson v. Blue Nile, Inc.*,
No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ........................................ 7

**Page(s)**

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ... 9

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ... 5, 9, 13-14

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ... 1, 14

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ... 9

*Quigley v. Yelp, Inc.*,
No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ... 10

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ... 10, 15

*Rodriguez v. Sony Computer Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ... 14

*Rosenow v. Facebook, Inc.*,
No. 19-CV-1297-WQH-MDD, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ... 10

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ... 12

*Sterk v. Redbox Automated Retail*,
770 F.3d 618 (7th Cir. 2014) ... 14

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ... 5, 7, 10, 13

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ... 2, 5, 7, 13

*Yale v. Clicktale, Inc.*,
No. 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ... 2, 7

**Page(s)**

## FEDERAL STATUTES


18 U.S.C.
section 2710(a)(2) .......... 14
section 2710(b) .......... 1, 14


## CALIFORNIA STATUTES


Penal Code
section 631(a) .......... 1, 5-7, 9-11, 13-14


## RULES


Federal Rules of Civil Procedure
rule 12(b)(6) .......... 4

## MEMORANDUM AND POINTS AND AUTHORITIES

## I. INTRODUCTION

The Complaint is a slap-dash attempt to capitalize on privacy statutes of limited application with generic, conclusory, and ill-fitting allegations. Plaintiff Kasra Sarhadi ("Plaintiff") allegedly used Defendant Pear Health Labs, Inc. d/b/a Aaptiv's ("Aaptiv") fitness app, a comprehensive program that gives users access to thousands of in-person gyms and creates a personalized workout routine through artificial intelligence. Plaintiff brings claims under the California Invasion of Privacy Act ("CIPA") (Cal. Penal Code § 631) and the Video Privacy Protection Act ("VPPA") (18 U.S.C. § 2710(b)) for Aaptiv's alleged data monitoring on its own app.

Enacted well before the existence of the Internet, CIPA is California's anti-wiretapping statute. CIPA is largely limited to wiretapping through telephone wire. Those provisions that arguably could apply to internet communications require eavesdropping (1) by a third party, (2) while the communications are in transit, and (3) without consent. The VPPA was enacted in 1988 after the Washington City Paper published Supreme Court nominee Robert Bork's video rental history from a local video store. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). The VPPA prohibits a video tape service provider from disclosing a consumer's personally identifiable information, but does not prohibit disclosures like those alleged here that are made in the ordinary course of business. Yet Plaintiff alleges that Aaptiv violates these statutes through the use of Twilio's Segment API ("Segment") and the Mixpanel SDK ("Mixpanel") – vendors that act solely in the interest of, and as an extension of, Aaptiv itself.

The Complaint offers only conclusory allegations as to the elements of its claims. Clearly cut-and-pasted to accommodate multiple complaints against different entities,[2] the Complaint focuses on Twilio (hereinafter "Twilio" or "Segment") and Mixpanel, not Aaptiv. Though Plaintiff supposedly engaged a research company to conduct an analysis on the app,

[2] Plaintiff's attorneys have brought at least 10 other lawsuits against these vendors, and other websites using these vendors, across the U.S. on similar claims.

the investigation revealed nothing more than that Aaptiv uses these vendors, but not how or why. For this, the Complaint cites only to selected snippets from Twilio's Segment application and Mixpanel's own marketing materials. "The problem is that these product descriptions are generic—they describe various ways in which [Segment's and Mixpanel's] products are capable of operating generally, not how they operate when [Aaptiv] use[s] them. Thus, the complaint adequately alleges that providers *could* configure and use the products in a way that would cause personal health information to be transmitted to [Aaptiv]" but not that they are doing so. *Doe I v. Google LLC*, No. 23-CV-02431-VC, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024) (dismissing CIPA claims where Google was merely acting as a tool for its users, not a third party interceptor).

The reason for the deficiency in the pleadings is manifest – because here there was no actual, improper data sharing under either CIPA or the VPPA. The Complaint does not and cannot posit any factual allegations that Segment or Mixpanel used Plaintiff's personal data for their own benefit. Aaptiv used these vendors only as tools to efficiently and effectively service its own customers and as part of Aaptiv's ordinary course of business. Numerous courts in this District have already dismissed similar claims. *See Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021)*; Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022); *James v. Allstate Ins. Co.*, No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023). The Court should do the same here.

## II. FACTUAL ALLEGATIONS

Aaptiv is a complete fitness app, offering gym access to thousands of gyms, AI coaching, audio and video-based on-demand workouts, and well-being content. Aaptiv was founded in 2016 to make personalized fitness instruction available to everyone. To achieve this goal, Aaptiv created a new, audio-based training. Aaptiv also uses artificial intelligence to create personalized routines and guidance for its users. By analyzing a user's workout activity and biometric data, Aaptiv is able to help its users improve their overall health and

wellness.[3]

The Complaint alleges that Plaintiff downloaded the Aaptiv app in June 2020 (Complaint ¶ 86) and at some unknown point he entered his personal information into the app. (Complaint ¶ 87.) The Complaint alleges that Plaintiff viewed unspecified "videos" on the app in September 2024, 2 months before filing suit. (*See* Complaint ¶ 93.) That same month, Plaintiff supposedly retained a private research company "to review the App and conduct a dynamic analysis." (Complaint ¶ 27.) This analysis allegedly revealed that, when users enter personal information into the app, such as name, height, and weight, or view a video on the app, Aaptiv supposedly discloses this information to Segment and Mixpanel. (Complaint ¶¶ 34-36.)

Though Plaintiff's analysis allegedly revealed that Aaptiv shares this information with Segment or Mixpanel, there are no allegations to suggest that the analysis revealed *why* Aaptiv shares this information or *what* Aaptiv and/or Segment or Mixpanel do with this information once shared. The Complaint posits the conclusion that Aaptiv sends its communications "to third parties so that the third parties can analyze the information and enable Defendant to target users with ads based on those answers." (Complaint ¶ 70.) The Complaint does not allege that Plaintiff ever received such targeted advertising, whether by email, pop-up video, or elsehow, nor does it offer any other factual allegations suggesting that Plaintiff's personal information was used in any way. Instead, the Complaint cites only to snippets from Segment's and Mixpanel's own websites to show a selection of the services these vendors supposedly offer (*see* Complaint ¶¶ 27-85) and summarily concludes that Aaptiv must use these vendors to "to analyze user data, launch-marketing campaigns, and target specific users or specific groups of users for advertisements" and to "aid Defendant in marketing, advertising, and analytics[.]" (Complaint ¶¶ 82, 85.)

Based on these allegations, Plaintiff brings claims for violation of the VPPA and CIPA. The Complaint recites the elements of these claims in only conclusory fashion,

---

[3] https://Aaptiv.com/about. *See* Request for Judicial Notice ("RJN") Ex. A. *See also*, Complaint at 4, fn. 2 and fn. 6, *infra*.

including that Aaptiv is a video service provider (Complaint ¶109), that Aaptiv users are consumers (Complaint ¶110), that Aaptiv disclosed Plaintiff's personally identifiable information and intercepted Plaintiff's communications in transit (Complaint ¶¶ 111, 123 ), that Plaintiff did not give consent (Complaint ¶ 114, 126), that these disclosures were not made in the ordinary course of business (Complaint ¶ 115), and that Segment and Mixpanel are third parties. (Complaint ¶ 122.)

## III. LEGAL STANDARD

To state a claim upon which relief may be granted a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks omitted). The court is also not obligated to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996); *see also*, *In re Reinert*, No. AP 14-02204-JAD, 2015 WL 1206714, at *6 (Bankr. W.D. Pa. Mar. 12, 2015), *aff'd sub nom. Reinert v. Bould*, No. 15CV0542, 2015 WL 6760510 (W.D. Pa. Nov. 5, 2015).

A complaint challenged by a Rule 12(b)(6) motion to dismiss must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Iqbal*, 556 U.S. at 558.

## IV. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT.

With a Complaint devoid of factual allegations related to Aaptiv's actual use of Segment and Mixpanel, Plaintiff does not and cannot state a claim under either CIPA or the

VPPA.

**A. The CIPA Claim for Relief Fails As A Matter Of Law.**

The conduct CIPA prohibits is found at California Penal Code section 631. Courts have distilled the statute to three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) Clause 1 covers "intentional wiretapping," (2) Clause 2 covers "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) Clause 3 covers "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quotations omitted). CIPA also contains a fourth basis for liability, Clause 4, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability." *Id*. The Complaint purports to assert a single claim for relief under CIPA, but blurs the allegations between the four clauses and does not specify which clause Aaptiv is alleged to have violated. (*See* Complaint ¶¶ 117-128.) Ultimately, however, Plaintiff has not and cannot state a claim under any of the four clauses.

**1. The Complaint Fails to State a "Wiretapping" Claim Because the Alleged Communications were Not Over Telephone.**

CIPA's Clause 1 prohibits wiretapping with "any telegraph or telephone wire, line, cable, or instrument." Cal. Penal Code § 631(a). "Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (granting motion to dismiss); *see also*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (dismissing CIPA claim; "the first clause of § 631(a) ... protects only communications that are made over a 'wire, line, or cable.'"); *Mastel*, 549 F. Supp. 3d at 1135 (dismissing CIPA claim; "Although iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers." Plaintiff used "a feature of the portion of the iPhone that functions as a computer, not the phone."); *What If Holdings*, 2022 WL 17869275, at *2 (dismissing

complaint; "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet."); *Allstate Ins.*, 2023 WL 8879246, at *3 ("Because Section 631(a)'s plain text does not prohibit the non-telephone wire, line, cable or instrument conduct described here, Plaintiff does not state a claim under clause one.")

Because the Complaint challenges only purported communications via the internet (see Complaint ¶¶ 86-89), and not telephone communications, Plaintiff cannot state a wiretapping claim under Clause 1 of CIPA.

**2. The Complaint Fails to State an "Eavesdropping" Claim For Multiple Reasons.**

CIPA's Clause 2 imposes liability on persons who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Penal Code § 631(a). Plaintiff has not and cannot state a claim under Clause 2 (i.e., "eavesdropping) for at least three, independent reasons, any of which is alone a basis for dismissal: (1) Aaptiv cannot eavesdrop on its own communications, (2) the alleged communications were not intercepted in transit, and (3) users consented to any alleged data sharing.

**a. *Aaptiv Cannot Eavesdrop on its Own Communications.***

First, CIPA's Clause 2 is limited to eavesdropping by a third party. "Only a third party can listen to a conversation secretly." *Noom*, 533 F. Supp. 3d at 831; *see also*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("Apple cannot intercept communications to which Apple is already a party. Thus, Plaintiffs have not alleged a violation of the CIPA."). "By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Id.* Thus, "[r]egardless of what actions [Segment or Mixpanel] may have taken, it is established that a party to the communication cannot be liable for recording its own conversations under § 631(a) ... it is well understood that a party cannot eavesdrop on its own conversation, by axiom. Thus, [Aaptiv] cannot be liable under

clause two of § 631(a)." *Swarts*, 689 F. Supp. 3d at 744 (N.D. Cal. 2023) (citation omitted).

The same reasoning applies to Segment or Mixpanel (and any derivative claims against Aaptiv for aiding and abetting Segment or Mixpanel, see Section IV.A.4) where courts in this district have consistently found that such vendors were merely acting as "extensions of" Aaptiv. *Noom*, 533 F. Supp. 3d at 832. *Graham v. Noom* is illustrative. There, the plaintiff visited Noom's website for information concerning diets. Noom used a vendor, FullStory, "to capture and analyze data so that [the vendor] can see how visitors are using their websites." *Id*. at 828. The plaintiffs alleged that the vendor eavesdropped on their communications in violation of CIPA, but the court concluded that the vendor was a party to the communication, no different from a "tape recorder" in the hands of the website operator. *Id.* The court dismissed the complaint on the grounds that Noom could not eavesdrop on its own user's website communications. *Id.* at 832; *see also, Clicktale*, 2021 WL 1428400, at *3 ("First, for the reasons stated in *Noom*, Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."); *Johnson v. Blue Nile, Inc.*, No. 20-CV-08183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) ("for the reasons stated in *Graham v. Noom*, FullStory is not a third-party eavesdropper.")

"Our relevant inquiry here is whether a website owner's usage of third-party recordation software can be considered equivalent to having hired a third party to record." *What If Holdings*, 2022 WL 17869275, at *3. The court in *Noom* contrasted Fullstory's activity, which "allows the clients to analyze their data" with "independent parties who mined information from other websites and sold it[.]" *Noom*, 533 F. Supp. 3d at 832. "Unlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a tool ... that allows Noom to record and analyze its own data in aid of Noom's business." *Id.*; *see also*, *What If Holdings*, 2022 WL 17869275, at *3 ("there are no facts here to suggest that ActiveProspect 'intercepted and used the data itself.'"); *Swarts*, 689 F. Supp. 3d at 745-46 ("Nowhere in Swarts's complaint

does he allege that LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot.”). !

Here, like in *Noom*, there are no factual allegations that Segment or Mixpanel mine any data for their own purposes. The results of the analysis Plaintiff supposedly instigated revealed only that Aaptiv allegedly shares data with Segment and Mixpanel, not how or why it does so. Instead, the Complaint generally alleges what these vendors can be used for – citing only to selected excerpts from these vendor’s own websites – but offers no factual allegations as to how Aaptiv actually uses these vendors in this case. For example, there are no factual allegations that Segment or Mixpanel sold Plaintiff’s personal information to any other third party, or used the information in any way other than in assistance of Aaptiv. As in *Doe I v. Google*, there are no allegations that Plaintiff ever saw any targeted advertisements related to the personal information he allegedly provided to Aaptiv. *See* 2024 WL 3490744 at *3. In fact, any data shared with these vendors is owned exclusively by Aaptiv and not sold to third parties.[4]

Rather, Aaptiv used Segment and Mixpanel to more efficiently and effectively service its own customers across platforms. Segment and Mixpanel both offer a range of services as tools for Aaptiv’s use. For example, Segment’s “data privacy management software helps businesses automate and enforce certain controls or settings to protect sensitive data and stay compliant with privacy laws and regulations.”[5] Segment’s identity resolution allows users to “[s]titch together each customer’s journey between multiple user sessions and devices ... while enabling centralized privacy and governance.”[6] And Mixpanel helps users “better understand [their] customers and answer questions about [their] product”

---

[4] https://segment.com/trust-center/?ref=nav (“all the data stored on the Segment platform is own by you, an we will never sell it.”); https://docs.mixpanel.com/docs/privacy/protecting-user-data (“You have full control over the data you send to Mixpanel.”). *See* RJN Exs. D, G; *see also*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (when ruling on a motion to dismiss, the “incorporation by reference” doctrine ... applies with equal force to internet pages as it does to printed material. Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages.”) (internal citations and quotations omitted).)

[5] https://segment.com/product/privacy-portal/?ref=nav. *See* RJN Ex. E.

[6] https://segment.com/product/unify/?ref=nav. *See* RJN Ex. F.

by enabling them "to track how users engage with [their] product[.]"[7] Even the Complaint's conclusory, selected allegations that Segment and Mixpanel assist with "marketing, advertising, and analytics" show nothing more than that these vendors act in furtherance of Aaptiv's own, internal marketing, advertising, and/or analytics. (*See* Complaint ¶ 39 [Segment "assist[s] with ***Defendants'*** marketing, advertising, and analytics efforts."]; ¶ 70 [Segment and Mixpanel "enable ***Defendant*** to target users with ads"]; ¶ 71 [Segment and Mixpanel "help ***Defendant*** with marketing, advertising, and analytics."]; ¶ 85 [Mixpanel "aid[s] ***Defendant*** in marketing, advertising, and analytics in the App."] [emphasis added].)

Thus, the Complaint offers no, plausible, factual allegations that the alleged communications were intercepted by a third party. Rather, as the Complaint and judicially noticeable facts make clear, Segment and Mixpanel were acting only as tools for Aaaptiv's use and Aaptiv cannot be liable for eavesdropping on its own conversations.

**b. *The Alleged Communications were Not Intercepted while "In Transit."***

Second, CIPA's Clause 2 is limited to communications that were intercepted "in transit." Cal. Penal Code § 631(a). For a website to be "intercepted" in violation of CIPA, "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *see also*, *Mastel*, 549 F. Supp. 3d at 1136 ("There are simply no allegations in the complaint that reasonably give rise to the inference that the 8 Ball Pool App ever read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received.") (emphasis in original). Given the speed of internet communications, CIPA's application to "electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014).[8]

The Complaint's allegations that the electronic communication were intercepted while "in transit" or "in real time" (Complaint ¶¶ 67, 122) are conclusory and should be

[7] https://docs.mixpanel.com/docs/what-is-mixpanel. *See* RJN Ex. H.

[8] "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014).

disregarded. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Numerous courts in this district and others have rejected the conclusory allegations in the Complaint. *See Swarts*, 689 F. Supp. 3d at 746 (granting motion to dismiss; "Courts have found that similarly conclusory allegations fail to support a claim under § 631(a)."); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (granting motion to dismiss; plaintiff did not allege when the communication was intercepted besides a "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" and "in real time"); *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting motion to dismiss; allegations that communications were intercepted "during transit and before placing them in electronic storage" were "conclusory."); *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (granting motion to dismiss; "bare allegations of 'surreptitious surveillance'" were "insufficient" to support CIPA claim where plaintiff "has not alleged facts giving rise to an inference that his communications were intercepted while 'in transit'."); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (granting motion to dismiss; "Using the word "intercept" repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (granting motion to dismiss; "allegations that Google collects 'real-time data' do not plausibly allege that Google collects data while 'in transit.' ... Simply put, real-time data need not be collected in real time, and Plaintiffs do not plausibly allege any mechanism that would allow Google to do so.").

Setting aside the Complaint's conclusory recitation that the communications were intercepted "in transit," there are no plausible, factual allegations that Plaintiff's communications were actually intercepted in transit or before reaching Aaptiv, the intended recipient. To the contrary, the Complaint seems to allege the opposite – that a user inputs

the information into Aaptiv and then the information is allegedly shared with Segment and Mixpanel. For example, Paragraph 24 alleges that "[w]hen a user creates an account on the App, the App prompts the user to enter personal information through a series of questions as part of the account creation process." This allegations plausibly pleads that the recipient of the personal information is Aaptiv. Related, Paragraphs 35 and 36 allege that "when a user signs up for an account and views a video on the App, Defendant discloses" personal information to Segment/Mixpanel]. This allegation seems to allege that the data is sent to Segment/Mixpanel only *after* a user views a video on the app and *after* signing up for acount, by which time the personal information has already been entered on the Aaptiv app. In other words, because Aaptiv must first receive the information before it can allegedly "disclose" it to these supposed third parties, the Complaint does not plausibly plead that the communications were intercepted "in transit." Instead the Complaint pleads the opposite and Aaptiv cannot be liable for eavesdropping.

**c. *Users Consent to Any Alleged Data Sharing.***

Finally, even if the Complaint had plausibly alleged that Segment and Mixpanel are third parties and that Plaintiff's communications were intercepted while in transit, there can be no eavesdropping here where users consent to any disclosure. CIPA only prohibits wiretapping or eavesdropping done "without [] consent." Cal. Penal Code § 631(a). Thus, lack of consent is an essential, express element for a claim under CIPA. "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (lack of consent may be challenged through motion to dismiss).

The Complaint alleges that the "recording of electronic communications begins the moment a use accesses or interacts with Defendant's Website, prior to a user consenting to any sort of privacy policy[.]" (Complaint ¶¶ 89, 90.) But this conclusory allegation is inconsistent with Plaintiff's other allegations. Specifically, the Complaint repeatedly alleges that the personal information allegedly disclosed by Aaptiv is entered by users when "creat[ing] an account on the App" or when "sign[ing] up for an account[.]" (*See* Complaint

¶¶ 24, 35, 36.) It therefore makes no sense that any recording could take place the moment a user accesses the website – there would be no information to even share at that point. Accordingly, the Complaint's inconsistent, conclusory allegation should be disregarded.

Instead, the Court should look to Aaptiv's own Privacy Policy, by which Plaintiff and other users provide express consent to the alleged third party disclosure. The Aaptiv website includes a robust, express Privacy Policy which informs users, among other things, that Aaptiv "may disclose personal information collected from and about you" to "service providers, to perform a business, professional or technical support function" for Aaptiv.[9] In *Garcia v. Enterprise Holdings, Inc.*, the court properly took judicial notice of the defendant's similar browsewrap privacy policy and dismissed plaintiff's invasion of privacy claim based on alleged disclosures to Mixpanel on the grounds that plaintiff had not sufficiently alleged a lack of consent. 78 F. Supp. 3d at 1135-37 ("Because Plaintiff's claim necessarily depends on the application of Zimride's policies—which relate directly to the issue of consent—the Court finds that these documents may appropriately be considered on a motion to dismiss.") "Though Plaintiff denies having conferred his consent, the Court need not accept as true any allegations contradicted by 'matters properly subject to judicial notice or by exhibit' or 'that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' ... Those provisions [of defendant's privacy policy] contradict Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party." *Id*. at 1136; *see also*, *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021) (dismissing CIPA cause of action where defendant's privacy policy evidenced plaintiff's consent to the collection of data at issue).

Therefore, because the Complaint does not and cannot plausibly allege a lack of consent, the CIPA claim must fail.

**3. The Complaint Fails To State a "Use" Claim Because there was No Underlying Wiretapping or Eavesdropping.**

CIPA's Clause 3 imposes liability on one who "uses, or attempts to use, in any

---

[9] https://Aaptiv.com/privacy/. *See* RJN Ex. B.

manner, or for any purpose, or to communicate in any way, any information" obtained through wiretapping or eavesdropping. Penal Code § 631(a). "A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first [wiretapping] or second [eavesdropping] clause of § 631(a)." *Swarts*, 689 F. Supp. 3d at 744 ("Because Swarts fails to state a claim against Home Depot under either the first or second clause of § 631(a), his claim for violations of § 631(a) under the third clause necessarily fail as well."); *see also*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827 ("Plaintiffs must establish that the information at issue ... was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a)."); *Mastel*, 549 F. Supp. 3d at 1137 ("Because the court concludes that Mastel has failed to state a claim under either clause 1 or 2, his claim that Miniclip violated § 631(a)'s third clause fails as a matter of law.").

As noted in Section IV.A.2.a, the Complaint does not include any factual allegations that Plaintiff's data was actually used by Aaptiv, Segment, or Mixpanel in any way. The Court need not even reach this conclusion, however, because liability under Clause 3 is dependent on finding liability under either of the first two clauses. Because the Complaint fails to state a claim under either Clause 1 (*see supra* Section IV.A.1) or Clause 2 (*see supra* Section IV.A.2), it fails to state a claim under Clause 3.

#### 4. The Complaint Fails to State an Aiding and Abetting Claim Because there was No Underling Wiretapping or Eavesdropping.

Finally, CIPA's Clause 4 imposes liability on a person that "aids, agrees with, employs, or conspires with" anyone to violate § 631(a). Cal. Penal Code § 631(a). Just like under Clause 3, because the Complaint fails to adequately plead that Aaptiv or its service providers violated Clause 1 or 2 (*see supra* Sections IV.A.1 and IV.A.2), the aiding and abetting claim must also fail. *See What If Holdings, LLC*, 2022 WL 17869275, at *4 ("ActiveProspect is not liable for wiretapping under Section 631(a) for providing a software tool, and the fact that What If used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping."); *Noom, Inc.*, 533 F.

Supp. 3d at 833 ("As a result, Noom is not liable for aiding and abetting [third party vendor's] wrongdoing because there is no wrongdoing."); *Mastel*, 549 F. Supp. 3d 1129, 1137 ("because Mastel has failed to establish an underlying violation, Mastel cannot maintain a claim against Apple under the fourth clause because none of the alleged conduct that Apple allegedly 'agreed to' or 'aided' violated § 631(a).")

**B. The VPPA Claim for Relief Fails As A Matter Of Law.**

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[.]" 18 U.S.C. § 2710(b). "The VPPA, however, does not prohibit *all* disclosures." *Mollett*, 795 F.3d at 1066 (emphasis in original). The VPPA enumerates several exclusions, including "to any person if the disclosure is incident to the ordinary course of business of the video tape service provider[.]" 18 U.S.C. § 2710(b)(2)(E). "Therefore, in order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett*, 795 F.3d 1062, 1066 (9th Cir. 2015) (granting motion to dismiss where complaint failed to meet the fourth element).

Here, at a minimum, the Complaint fails to allege that the purported disclosure was not authorized because it does not and cannot allege that the "ordinary course of business exception" exception does not apply. The statute defines "ordinary course of business" as including "debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2). Whether disclosures fall within the exception "turns on the underlying purpose for which [the video services provider] provides the information to a third party." *Sterk v. Redbox Automated Retail*, 770 F.3d 618, 626 (7th Cir. 2014). The exception "reflects Congress' awareness of the unremarkable fact that no business is an island and that video tape services providers, like many other businesses, 'may use third parties in their business operations[.]'" *Rodriguez v. Sony Computer Ent. Am., LLC*, 801

F.3d 1045, 1054 (9th Cir. 2015). In *Rodriguez*, therefore, the 9th Circuit upheld dismissal of a VPPA claim where the service of a third party fell within the definition of "order fulfillment" or "request processing." *Id*.

As noted in Section IV.A.2.a, the Complaint does not plausibly allege the underlying purpose for which Aaptiv uses Segment and Mixpanel. The Complaint offers only cut-and-pasted allegations as to how Segment and Mixpanel *can* be used and the various services these vendors claim to offer, but not how Aaptiv actually uses them. As such, the Complaint's conclusory allegation that "Defendant's disclosures [were not] made in the 'ordinary course of business' as the term is defined by the VPPA" (Complaint ¶115) should be disregarded and the Complaint fails to adequately allege this element of its VPPA claim. In fact, it is consistent with the pleadings that Segment and Mixpanel aid Aaptiv in order fulfillment and request processing because the Complaint repeatedly alleges that these vendors provide information like "analytics" *in support* of Aaptiv (*see* Section IV.A.2.a) and the Complaint relies on these vendor's websites, which explain how Segment and Mixpanel are used to create a unified, secure customer experience across Aaptiv's platforms and to enable better responses to customer inquiries. (*See id*.) This is particularly true where one of Aaptiv's featured business operations is providing AI-generated fitness and wellness routines. (*See* Section II.) Thus, the Complaint fails to allege that any information sharing was not part of Aaptiv's ordinary course of business and the VPPA claim should be dismissed as well.

## V. <u>CONCLUSION.</u>

The Complaint cannot state a claim against Aaptiv with conclusory pleadings alone. The Complaint offers no plausible, factual allegations that any wiretapping or eavesdropping in violation of CIPA occurred where any alleged wiretapping did not take place by phone and any alleged eavesdropping was not committed by third parties or while the communication was in transit, and users provide express consent. The Complaint also offers no plausible factual allegations that any disclosures were not made in the ordinary course of business consistent with the exception provided for by the VPPA. As such, the Complaint

fails to state a claim against Aaptiv under either CIPA or the VPPA and should be dismissed in its entirety.

Dated: January 8, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: *_/s/ Talya Goldfinger_*
Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a
AAPTIV