Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Lucas Hori (State Bar No. 294373)
lhori@rutan.com
Talya Goldfinger (State Bar No. 294926)
tgoldfinger@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KASRA SARHADI, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

PEAR HEALTH LABS, INC., d/b/a AAPTIV,

Defendant.

Case No. 3:24-cv-7921-TLT

Judge: Hon. Trina L. Thompson

**CLASS ACTION**

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Date: April 22, 2025
Time: 2:00 p.m.
Place: Courtroom 9

Date Action Filed: November 12, 2024
Trial Date: None Set

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. PLAINTIFF HAS NOT ADEQUATELY PLED A CIPA VIOLATION .......... 2

A. Plaintiff Appears To Rely On An Aiding And Abetting Theory .......... 2

B. Plaintiff Fails To State An Eavesdropping Claim Because He Does Not Allege That His Communications Were Intercepted "In Transit." .......... 3

C. Plaintiff Also Fails To State An Eavesdropping Claim Because He Does Not Allege A Lack Of Consent .......... 7

D. Plaintiff Also Fails To State An Eavesdropping Claim Because He Does Not Allege Any Third Party Eavesdropper .......... 9

III. PLAINTIFF HAS NOT ADEQUATELY PLED A VPPA VIOLATION .......... 13

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Balletto v. Am. Honda Motor Co.*,
No. 23-CV-01017-JSW, 2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ........................ 6

*Brodsky v. Apple Inc.*,
No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)..................... 6

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................................................................... 8

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) ....................................................................... 9

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)..............10-11

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................................................................... 8

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ...............................................................6, 9-10

*Hammerling v. Google LLC*,
No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024)....................................................... 8

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ......................... 14

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) ......................... 6

*Johnson v. Blue Nile, Inc.*,
No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)........................... 9

*Jones v. Tonal Sys., Inc.*,
No. 3:23-CV-1267-JES-BGS, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024).......3-4, 7

*Konop v.Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................................................ 3

**Page(s)**

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......................................................4, 6, 10, 12

*McCoy v. Alphabet, Inc.*,
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)........................... 6

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015).................................................................................. 13

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................................................................... 3

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)..................................................................... 11

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)............................ 3

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ...................................................................... 11

*Viki, Inc.*, No. 23-CV-02161-RFL, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024)
..................................................................................................................................... 14

*Williams v. DDR Media, LLC*,
No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .......................... 9

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
No. 22-CV-1954-BAS-BLM, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023)................. 6

*Yale v. Clicktale, Inc.*,
No. 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ......................... 9

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ...................................................................... 12

**FEDERAL STATUTES**

Video Privacy Protection Act (18 U.S.C. section 2710(b)) ........................................ 1, 14

**STATE STATUTES**

Cal. Penal Code section 631(a)..........................................................................*passim*

**MEMORANDUM**

## I. INTRODUCTION.

Plaintiff's cut-and-pasted Complaint suffers from conclusory and inconsistent pleadings. Rather than address the deficiencies in his Opposition to defendant Pear Health Labs, Inc., d/b/a Aaptiv's ("Aaptiv") Motion to Dismiss, Plaintiff avoids them altogether. Instead, Plaintiff tries to shift the focus off of his own pleadings. He argues, for example, (1) that Aaptiv should have the burden of disproving many of his claims (*see* Opposition at 3, 19); (2) that the Court should resolve a split of authority in his favor (*id*. at 8); and (3) that the Court should not even consider Aaptiv's Privacy Policy that is referred to both explicitly and implicitly in his Complaint. *Id*. at 18-19. And, all the while, Plaintiff takes liberties with both the pleadings and the actual law. But none of these smoke and mirrors distract from the fact that Plaintiff's Complaint is insufficient to plead a claim for relief that is plausible on its face.

Plaintiff purports to bring claims under the California Invasion of Privacy Act ("CIPA") (Cal. Penal Code § 631) and the Video Privacy Protection Act ("VPPA") (18 U.S.C. § 2710(b)) for Aaptiv's alleged data sharing with its vendors Twilio and Mixpanel. Notwithstanding Plaintiff's vague allegations, it appears based on his Opposition that his CIPA claim against Aaptiv is based on Aaptiv allegedly aiding and abetting its vendors to eavesdrop on Aaptiv's own app. The Opposition confirms, however, that Plaintiff fails to adequately plead the elements of his CIPA claim for at least three, independent reasons: (1) Plaintiff has not adequately alleged that the communications were intercepted while in transit – a crucial element of a CIPA eavesdropping claim; (2) Plaintiff has not adequately alleged that he did not consent to any data sharing; and (3) Plaintiff has not adequately alleged any third party eavesdropper. Plaintiff's allegations as to each of these elements are conclusory and contradicted by the other allegations in his Complaint. For example, Plaintiff alleges a single, conclusory statement that his communications were intercepted "in transit" – an allegation which numerous courts undisputedly reject. *See* Motion at 14. And, this thread-bare "in transit" allegation is then contradicted by Plaintiff's own allegations that he entered his personal information *once* when he signed up for the app in June 2020 and that this data was *later* transmitted to Aaptiv's vendors, sometimes even years later when Plaintiff

allegedly viewed videos on the app. Plaintiff's VPPA claim suffers the same problem. Plaintiff alleges that any disclosures to Aaptiv's vendors were not made in the "ordinary course of business" (Complaint ¶ 115), but that conclusion is contradicted by Plaintiff's numerous other pleadings. *See, e.g.* Complaint ¶¶ 39, 70, 71, 76-79.

Plaintiff cannot survive dismissal with conclusory pleadings alone, and particularly not when these pleadings are then contradicted by Plaintiff's own allegations. Nor can Plaintiff try to shift the burden to Aaptiv and avoid his own obligation to plausibly plead his claims. The Court should grant Aaptiv's Motion and dismiss Plaintiff's ill-pled claims.

## II. PLAINTIFF HAS NOT ADEQUATELY PLED A CIPA VIOLATION.

### A. Plaintiffs Appears To Rely On An Aiding And Abetting Theory.

As explained in the Motion, CIPA has been interpreted to include four, distinct clauses and it is not clear from the Complaint which clause Aaptiv is alleged to have violated. Aaptiv's Motion to Dismiss, Dkt. No. 11 ("Motion") at 9. Plaintiff's Opposition still seems to confuse these distinct clauses. For example, Plaintiff continually refers to "wiretapping," but he does not dispute, and therefore concedes, that "wiretapping" – Clause 1 – requires the use of a telephone. *See* Motion at 9-10. Plaintiff has not alleged a Clause 1 violation. Ultimately, Plaintiff seems to be alleging a violation against Aaptiv for aiding and abetting – Clause 4 – its vendors' alleged eavesdropping – Clause 2. *See* Plaintiff's Opposition to Aaptiv's Motion, Dkt. No. 14 ("Opp.") at 8 ("Defendant violated CIPA § 631 by aiding, agreeing with, employing, or otherwise enabling the wiretapping").

Correspondingly, because there can be no aiding and abetting claim without an underlying eavesdropping claim, Plaintiff must have adequately alleged that Twilio and Mixpanel eavesdropped on Plaintiff's communications with Aaptiv. Plaintiff has not done so for three, independent reasons: (1) Plaintiff does not adequately allege that the communications were intercepted in transit, (2) Plaintiff does not adequately allege his lack of consent to any interception, and (3) Plaintiff's allegations show that Twilio and Mixpanel were mere extensions of Aaptiv, a party to the communications, and a party cannot eavesdrop on its own communications.[1]

---

[1] Plaintiff also does not and cannot dispute that there can be no use claim – Clause 3 – without an underlying wiretapping or eavesdropping. Motion at 16-17. Plaintiff's argument about Aaptiv's vendors' alleged use of his information (Opp. at 18-19) is a red-herring as this claim too is dependent

**B. Plaintiff Fails To State An Eavesdropping Claim Because He Does Not Allege That His Communications Were Intercepted "In Transit."**

The "in transit" requirement is critical to Plaintiff's CIPA claim. To be liable under CIPA's Clause 2 for eavesdropping, "a defendant must have read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received. Stated differently, once a communication has been received by the destination server, a communication becomes stored and contemporaneous interception is no longer possible." *Jones v. Tonal Sys., Inc.*, No. 3:23-CV-1267-JES-BGS, 2024 WL 4357558, at *7 (S.D. Cal. Sept. 30, 2024) (dismissing CIPA claim despite liberal pleading requirements where "the complaint lacks allegations that [third-party] halted the transmission of the messages to their intended recipients") (citations and quotations omitted). *See also*, Motion at 13. That is, if Plaintiff sent Aaptiv an email and a third-party intercepted the email before it reached Aaptiv's inbox, that may be eavesdropping. But if Plaintiff sent Aaptiv an email, Aaptiv received the email in his inbox, and then a third party accessed the email, that is not eavesdropping under CIPA – even if Aaptiv had not yet read the email before it was accessed by the third party. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (for an electronic communication "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage. This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) ("In other words, acquisition of email messages stored on an electronic system, but not yet retrieved by the intended recipients, is not an 'interception' under the Wiretap Act.") (citation and quotations omitted). Correspondingly, and even more analogous here, if Plaintiff sent Aaptiv an email, Aaptiv received the email in his inbox, then Aaptiv forwarded the email to a third-party, that is not eavesdropping under CIPA. In other words, if Aaptiv is merely repeating to Twilio and Mixpanel the information it already earlier learned from Plaintiff, there is no eavesdropping of Plaintiffs' communications under CIPA. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL

---

on Plaintiff adequately pleading that Twilio and Mixpanel eavesdropped on his conversations with Aaptiv.

214552, at *2 (N.D. Cal. Jan. 25, 2022) (defective portions of the complaint "describe how Google records data and then subsequently transmits it, which falls short of a § 631 claim").

Here, Plaintiff alleges that, when he created an account with Aaptiv, he was prompted to enter certain personal information like his name, email address, height, and weight. Complaint ¶ 24. But Plaintiff's averment that this sign-up process is intercepted "in transit" (Complaint ¶ 67) is merely a conclusory, thread-bare recital of one of the elements of his claim that should be disregarded. *See* Motion at 14; *see*, *e.g., Jones*, 2024 WL 4357558, at *7 (averments that customer chats were "intercepted in real time" were conclusory). "Courts in the Ninth Circuit have interpreted the in transit requirement narrowly." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109–10 (C.D. Cal. 2023) (allegation that communication was intercepted in real time "is conclusory and does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a) ... using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [defendant] is intercepting their data in transit."), *citing Bunnell v. Motion Picture Ass'n of Am*., 567 F.Supp.2d 1148, 1152 (C.D. Cal. 2007) ("Even if the storage phase is transitory and lasts only a few seconds, it is still considered electronic storage").

Moreover, Plaintiff's conclusory statement is inconsistent with his allegations that the data is first communicated to Aaptiv during the sign up process and then later transmitted to Twilio and Mixpanel. *See, e.g.* Complaint ¶ 63 ("The dynamic analysis found that user's date of birth, *communicated to Aaptiv during the signup process*, is *transmitted to* Twilio and Mixpanel") (emphasis added), ¶ 64 ("Similarly, the dynamic analysis found the user's weight, *communicated to Aaptiv during the signup process*, is *transmitted to* Twilio and Mixpanel") (emphasis added), ¶65 ("Similarly, the dynamic analysis found the user's heigh in inches, *communicated to Aaptiv during the signup process*, is *transmitted to* Twilio and Mixpanel") (emphasis added). *See* Motion at 15.

Plaintiff, in fact, does not dispute that his allegation that the signup process is intercepted "in transit" (Complaint ¶ 67) is conclusory and should be disregarded. Plaintiff does not even attempt to address Aaptiv's numerous cited cases finding as much. Motion at 14. Nor does Plaintiff try to explain how this conclusory allegation can be reconciled with his prior, inconsistent

allegations that information is entered into the app during the signup process and then *transmitted* – not intercepted – to Twilio and Mixpanel. (*See, e.g.* Complaint ¶¶ 63-65) Instead, Plaintiff attempts to shift the focus entirely. Rather than arguing that his communications with Aaptiv were intercepted during the signup process, Plaintiff's Opposition now claims that his communications with Aaptiv were intercepted when he watched videos on the app. *See* Opp. at 16 (Plaintiff asserts that he "alleges Twilio and Mixpanel acquire users' PII at the time a user actually watches a video").

Plaintiff's reliance on his video watching allegations, however, is misplaced. These allegations actually plead the very opposite of "in transit." Plaintiff alleges that users enter their personal information into the Aaptiv app only once, when creating an account. *See* Complaint ¶ 24. Then, when a user watches a video on the app, Plaintiff alleges that Aaptiv discloses that personal information (which it received much earlier) to Twilio and Mixpanel. *See* Complaint ¶ 54 ("when a user watches a video on the App, Defendants disclose users' full names, e-mail addresses, and dates of birth to Twilio via the Segment API and Mixpanel via the Mixpanel SDK."). *See also,* Opp. at 16 (citing Complaint ¶ 54 and acknowledging that information is only shared "provided they have created an account first"). In Plaintiff's case, he allegedly created an Aaptiv account and entered his personal information in June 2020 (Complaint ¶ 86) and viewed videos on the app as late as September 2024 (Complaint ¶ 93) – over four years later. Thus Plaintiff does not explain, and the Complaint certainly does not plead, how any communications with Aaptiv were supposedly intercepted in transit.

Plaintiff's analogy is equally unpersuasive. Plaintiff gives the example of a consumer calling an operator and the operator asking for personal information before connecting a third-party auditor and then asking the consumer to repeat the personal information. Opp. at 17-18. But Plaintiff has not alleged any sort of continuing conversation or that he repeatedly entered information into Aaptiv. Plaintiff's alleged use of the Aaptiv app was not one, long, four-year conversation. Nor does Plaintiff allege that Aaptiv asked him to repeat any information. Plaintiff does not allege that he ever reentered his personal information. Plaintiff alleges only that he entered his personal information one time – when creating an account – and that Aaptiv later disclosed that information to Twilio and Mixpanel when he viewed a video on the app. In this regard, Plaintiff has not alleged

anything near the type of spyware employed in his cited cases, that allegedly capture data as the words are typed, or as the mouse is clicked, or online chat features, that allegedly intercept communications as a user types them. *See Licea*, 659 F. Supp. 3d at 1110 (C.D. Cal. 2023) ("Plaintiffs raise multiple 'Session Replay' cases as analogous to their pleading and as support for their interception argument. However, Plaintiffs do not plead that their interactions with Defendant used 'Session Replay' technology ... [that] collects and records all interactions with a website."); *cf.* Opp. at 17, *citing Yockey v. Salesforce, Inc.*, No. 22-CV-09067-JST, 2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) (CIPA claims over website chat feature); *Balletto v. Am. Honda Motor Co.*, No. 23-CV-01017-JSW, 2024 WL 589090, at *1 (N.D. Cal. Feb. 13, 2024) (CIPA claims over website chat feature), *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) and *Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 22-CV-1954-BAS-BLM, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023). Aaptiv's alleged information sharing with its vendors after – sometimes years after – that information was disclosed to Aaptiv is the very definition of not in transit.

Moreover, Plaintiff's reliance on his video watching allegations raises an additional problem as to the contents of the information allegedly intercepted. CIPA only probits the unauthorized access of the "contents" of a communication, which is defined as "the intended message conveyed by the communication." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). "It does not include record information regarding the characteristics of the message that is generated in the course of the communication such as the name, address and subscriber number or identity of a subscriber or customer. Similarly, the origin, length, and time of a call, or geolocation data are not content." *Id*. (citations and quotations omitted; dismissing CIPA claim predicated only on non-content information); *see also*, *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *6–7 (N.D. Cal. Aug. 30, 2019) (dismissing CIPA claim; "For example, text messages qualify as contents under the Wiretap Act. However, user names, passwords, and geographic location information are not contents."); *McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) (dismissing CIPA claim based only on interception of log in activities, which is record information). "Plaintiff must at a minimum demonstrate that the

contents were not record information, such as [his] name and address." *Jones v. Tonal Sys., Inc.*, No. 3:23-CV-1267-JES-BGS, 2024 WL 4357558, at *7–8 (S.D. Cal. Sept. 30, 2024) (citation and quotation omitted; dismissing CIPA claim where plaintiff had not met burden to demonstrate that her engagement with the website chat feature contained more than record information). When Plaintiff views a video on the Aaptiv app, the content of this communication (if watching a video can even be considered a communication) is not his personal information like his name and date of birth that Plaintiff allegedly entered years earlier when he signed up for an account. *See* Complaint ¶ 54 ("As the dynamic analysis establishes, when a user watches a video on the App, Defendants disclose users' full names, e-mail addresses, and dates of birth to Twilio via the Segment API and Mixpanel via the Mixpanel SDK.") Plaintiff has, therefore, not alleged any non-record information that is shared when he watches a video on the app.

Thus, far from showing that he has met his burden to plead that the communications were intercepted "in transit," Plaintiff highlights why he has *not* made such allegations. His conclusory and contradictory pleadings not withstanding, Plaintiff has not plausibly alleged that his communications were intercepted "in transit" either when he allegedly signed up for Aaptiv or when he allegedly viewed videos on the app. Because Plaintiff has not alleged any communication that was intercepted in transit, his CIPA claim must fail.

### C. Plaintiff Also Fails To State An Eavesdropping Claim Because He Does Not Allege A Lack Of Consent.

Plaintiff's Complaint includes only a conclusory and implausible averment that the alleged recording "begins the moment a user accesses or interacts with Defendant's Website, prior to a user consenting to any sort of privacy policy." Complaint ¶ 89. This allegation, however, is contradicted by Plaintiff's allegations that users' personal information is disclosed when "creat[ing] an account" or "sign[ing] up for an account," i.e. not "the moment" a user accesses Aaptiv's website. *Compare* Complaint ¶ 89 *with* Complaint ¶¶ 24, 35, 36; *see also*, Motion at 15-16. Plaintiff offers no explanation for this inconsistency. Accordingly, Plaintiff has not plausibly alleged that his communications were intercepted without his content.

Instead of trying to explain how this lone, contradictory allegation meets his burden,

Plaintiff's tries to shift the burden onto Aaptiv to prove a lack of consent. Plaintiff seizes on Aaptiv's Privacy Policy and argues as to whether Aaptiv has sufficiently established that he agreed to the policy. *See* Opp. at 19-21. But Plaintiff's focus on the Privacy Policy, and his corresponding objections to Aaptiv's Request for Judicial Notice, is a red herring.[2] It is not up to Aaptiv at this stage to prove that Plaintiff accepted this Privacy Policy (he did) because Plaintiff has not alleged a lack of consent *at all*. Consent under CIPA is not an "affirmative defense," as Plaintiff claims. Rather, Plaintiff relies on inapposite cases dealing with non-CIPA claims and motions for summary judgment. *See* Opp. at 19, *citing Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) (breach of contract and invasion of privacy claims), *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *1 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (breach of contract, UCL, fraud, and privacy claims), and *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n. 13 (N.D. Cal. 2023) (footnote in summary judgment motion on combined CIPA and non-CIPA claims and relying on non-CIPA cases).

"Where lack of consent is an express element of a claim ... it must be alleged in the complaint." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (rejecting plaintiff's argument that consent is an affirmative defense and granting motion to dismiss where consent not adequately pled). *See also*, Cal. Penal Code § 631(a) (CIPA only probits eavesdropping "without [] consent."). In *Garcia*, for example, the plaintiff tried to argue, as Plaintiff does here, that he never agreed to the browsewrap privacy policy, but the court found that it did not need to reach the question of whether the plaintiff consented to the defendant's privacy policy:

> "In sum, given the procedural posture of this case and the limited record presented, the Court does not purport to determine whether Plaintiff, in fact, consented to the Privacy Policy or to the disclosure of his personal information to Mixpanel. However, given the express provisions of the Privacy Policy and TOS, which ostensibly contradict his bare allegation that he did not consent, Plaintiff must allege additional facts to support his claim."

*Id*. at 1137. Rather, the initial burden must rest with Plaintiff. The existence of the Privacy Policy

[2] The objections are also without merit. For example, Plaintiff claims that Aaptiv's Privacy Policy should be disregarded because it is a printout from the Aaptiv website, not the app. However, Plaintiff attempted to plead a lack of consent by arguing that the alleged improper recording "begins the moment a user accesses or interacts with ***Defendant's Website***, prior to a user consenting to any sort of ***privacy policy***[.]" Complaint ¶ 89 (emphasis added.)

only underscores that Plaintiff has not plausibly alleged a lack of consent with his lone, conclusory and implausible allegation. For this reason, as well, Plaintiff's CIPA claim should be dismissed.

**D. Plaintiff Also Fails To State An Eavesdropping Claim Because He Does Not Allege Any Third Party Eavesdropper.**

Finally, Plaintiff's allegations are consistent with Twilio and Mixpanel being mere extensions of Aaptiv itself and so Plaintiff does not allege any *third party* that intercepted his communications with Aaptiv. Plaintiff offers no factual allegations that Aaptiv engaged Segment or Mixpanel to mine data for their own purposes. Rather, the Complaint's allegations show only that these vendors assist Aaptiv and act exclusively in Aaptiv's interest. *See* Motion at 13, *citing* Complaint ¶¶ 39, 70, 71, 85. In fact, these vendors cannot use Plaintiff's data for their own purposes because any data is owned exclusively by Aaptiv. *See* Motion at 12.

Plaintiff once again tries to shift the focus off of his conclusory, cut-and-pasted pleadings by arguing that the Court should apply a different standard. Based on a split of authority as to how courts conduct the third-party analysis, Plaintiff argues that this Court should apply the "capability" approach and not the "extension" approach." *See* Opp. at 9-13. "This is a close question, and district courts have split on the issue." *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023). Under the first approach, a vendor is not a third-party eavesdropper if it only captures information for the client website to use. *Id*. Under the second approach, a vendor is a third-party eavesdropper so long as it "has the capability" to use the information. *Id*.

Numerous district courts have applied the reasoning set forth in *Graham*. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) (vendor was a party to the communication, no different from a "tape recorder" in the hands of the website operator); *see, e.g. Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) ("First, for the reasons stated in *Noom*, Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."); *Johnson v. Blue Nile, Inc.*, No. 20-CV-08183-LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) ("for the reasons stated in *Graham v. Noom*, FullStory is not a third-party eavesdropper."); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779,

782 (C.D. Cal. 2023) ("Plaintiff must provide facts suggesting that Webex and Kustomer are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant."); *Licea*, 659 F. Supp. 3d at 1109 ("Because Plaintiffs' allegations suggest that the unnamed third party is more similar to the software provider in *Graham* than in *In re Facebook* or *Revitch, Graham* holds more persuasive value.")

Plaintiff contends that "a growing number of courts have rejected the 'extension' approach as 'based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant.'" Opp. at 13, *citing Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023). But the focus under the so-called "extension" approach cases is not on the third party's intentions. Rather, these cases consider the purpose for which the alleged third party was engaged. *See Graham*, 533 F. Supp. 3d at 832 ("FullStory is a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data.") The extension approach makes sense because it focuses on the relationship between the defendant and its alleged third-party vendors – not on the non-party vendors' own capabilities. A broad "capability" standard like the one Plaintiff advocates, meanwhile, would eliminate the third-party eavesdropper rule altogether. If the Court considers only whether Twilio and Mixpanel are *capable* of using the data for their own purpose, there is no scenario where a website can even use a service to monitor data because any service is theoretically capable of using the data it collects.

In fact, while Plaintiff attempts to create a strict dichotomy between "extension" and "capability" approaches, they are not actually so different. The two approaches are "not wholly inconsistent." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *17-18 (N.D. Cal. Apr. 11, 2024). The underlying inquiry under *all* of the cases is whether these vendors are "mere tools used by websites[.]" *Licea*, 659 F. Supp. 3d at 1107-08 ("In the software context, the court in *Javier* stated that "whether software providers ... are third parties under California's eavesdropping statute, or mere tools used by websites, goes to the heart of the privacy concerns articulated in [s]ection 631 and California cases interpreting it.")

"The key is whether the hiring of a third party to collect information

> – even if for the benefit of the contracting party – poses a materially enhanced risk to the individual's privacy. When one considers whether a third party is more like the tape recorder in *Rogers* (no liability) or the friend in *Ribas* (liability), for instance, there is less risk that the individual's privacy will be compromised with a tape recorder because the party holding the tape recorder has control over the tape recorder. In contrast, with the friend in *Ribas*, there was a greater risk that the individual's privacy will be compromised because the friend was not subject to the control of the party who allowed the friend to listen in. Even in *Javier*, Judge Breyer acknowledged the risk that the third party could use the information gathered for other purposes. Thus [], the critical question is the extent the third parties were subject to [defendant's] control and ability to limit the use of dissemination of the [] data."

*Doe*, 2024 WL 1589982, at *17-18. "To the extent Plaintiffs argue that a third party should *per se* be considered an eavesdropper – *i.e.*, even if hired by a party to the communication to do work solely for the party's benefit and with strict limits on the ability of the third party to use the information for any other purpose – ... that would be inconsistent with the case law[.]" *Id*. Here, there are no allegations that Aaptiv engaged Twilio and Mixpanel for any purpose other than to use as a tool for its own benefit. The allegations are consistent with the fact that Aaptiv has sufficient control over Twilio and Mixpanel and the way they utilize Plaintiff's data. And, there are no allegations to suggest that Twilio and Mixpanel pose any greater risk to Plaintiff's privacy than a tape recorder.

Nor do the cases that use the "capability" approach actually apply it as broadly as Plaintiff claims. The relevant inquiry is not whether these vendors are simply *capable* of using the data, but whether they are capable of using it for their own benefit – again, whether they are acting as mere tools for their client's use. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1121 (S.D. Cal. 2024) ("the question now is whether Plaintiff has adequately alleged that [the vendor] has the 'capability' to use the chat data *for its own purposes or benefit*") (emphasis added). In *Swarts v. Home Depot, Inc.*, for example, the court dismissed allegations similar to the ones in the Complaint under the "capability" approach advocated by Plaintiff because there were no allegations that any service could use the information it analyzed other than to relay it to the defendant. 689 F. Supp. 3d 732 (N.D. Cal. 2023); *see also*, *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1121 (S.D.

Cal. 2024) (dismissing CIPA claim under "capability" approach where the allegation of chat service collecting and analyzing customer-support agent interactions "only supports the inference that the service receives and stores these communications for the benefit of its client, Defendant"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (dismissing similar allegations under "capability" approach where they "do not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to Kaiser").

Plaintiff does not proffer any allegations to suggest that Twilio and Mixpanel are capable of using his personal information for their own benefit. Plaintiff claims that he has adequately alleged that Twilio and Mixpanel are capable of using his data because the Complaint alleges that the vendors create "unified customer profiles," incorporate information from other sources, and disclose the information to third parties. *See* Opp. at 10. But none of these alleged uses are for Twilio's or Mixpanel's benefit. For example, Plaintiff alleges that Twilio and Mixpanel interact with "third parties that *Defendant* utilizes for targeted advertising" (Complaint ¶ 78, emphasis added) – not third parties that Twilio and Mixpanel use for their own purposes. (Plaintiff misconstrues this allegation in his Opposition, claiming he alleges Twilio and Mixpanel engage with these third parties "for targeting advertising campaigns" generally, Opp. at 10). *See Licea*, 659 F. Supp. 3d 1096, 1108-09 ("Plaintiffs allege that the 'third party publicly boasts of its ability to harvest valuable data from such communications ***for the benefit of its clients***,' ... The pleadings, taken as true at this stage, nowhere suggest that the third party has the ability to use the information independently.") (emphasis in original). Plaintiff essentially asks the Court to infer that, because Twilio and Mixpanel are capable of using the data for Aaptiv's benefit, they must also be capable of using the data for their own benefit. But Plaintiff's Complaint must be based on more than conjecture and accusations.[3]

Rather, where Plaintiff's claim is once again dependent on a single, conclusory recitation that "each Third Party had the capability to use the wiretapped information for its own purposes" (Complaint ¶ 122) – an allegation that is not supported, or even consistent, with any other allegation

---

[3] For this reason, the Court should also reject Plaintiff's claim that "it is impossible for Plaintiff to know with certainty at this stage what goes on behind the curtain." Opp. at 12.

in the Complaint – the Court should find that Plaintiff has not adequately alleged that Twilio and Mixpanel are third parties. Where Plaintiff has not alleged either that (1) Aaptiv engaged Twilio and Mixpanel for a purpose other than to assist Aaptiv, or (2) Twilio and Mixpanel are capable of being used for a purpose other than to assist Aaptiv, the Court should dismiss his CIPA claim under either approach.

## III. PLAINTIFF HAS NOT ADEQUATELY PLED A VPPA VIOLATION.

Finally, with regard to his VPPA claim, Plaintiff again tries to flip his burden and the law on its head by arguing that "the ordinary course of business exception is an affirmative defense that Plaintiff is not required to plead around." Opp. at 2.[4] But it is Plaintiff who is required to plausibly plead that "the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1067 (9th Cir. 2015) ("As plaintiff's complaint pleads only a *lawful* disclosure under the VPPA, the district court was correct to dismiss the first count of Plaintiffs' complaint."). As Aaptiv described in its moving papers, Plaintiff does not plausibly allege the underlying purpose for which Aaptiv uses Segment and Mixpanel at all. Rather, Plaintiff offers only cut-and-pasted allegations as to how Segment and Mixpanel *can* be used and the various services these vendors claim to offer based on their own marketing materials, but not how Aaptiv actually uses them. *See* Motion at 19.

Plaintiff ignores that his allegations are conclusory and unsupported. Instead, Plaintiff argues as to whether Aaptiv can meet its burden to prove that any disclosures to Twilio and Mixpanel were made in the ordinary course of business. Specifically, Plaintiff argues that any disclosures to Twilio and Mixpanel could not be authorized in the ordinary course of Aaptiv's business because they were made for the purposes of marketing. Opp. at 3-5. But the point is that Plaintiff has not adequately pled that the purpose of Aaptiv's use of Twilio and Mixpanel *was* for marketing. *See, e.g.,* Complaint ¶ 72 (alleging what Segment and Mixpanel are "designed to" do, but not why Aaptiv actually engages these vendors). Moreover, even to the extent Plaintiff has sufficiently alleged why Aaptiv uses Twilio and Mixpanel, these allegations are consistent with a use in the ordinary course

---

[4] Plaintiff also claims that "Defendant does not dispute any element of Plaintiff's VPPA claim." Opp. at 2. Not so. Defendant disputes every element of Plaintiff's VPPA claim. At this stage of the pleadings, however, Aaptiv is only moving to dismiss Plaintiff's VPPA based on his failure to plead that the disclosure was not authorized.

of business where Plaintiff repeatedly alleges that these vendors act in support of Aaptiv. *See* Motion at 13. Contrary to Plaintiff's assertions, there is no *per se* rule reflected in the case law that marketing cannot be in the ordinary course of business. *See* Opp. at 4. In fact, "Congress took into account that providers use third parties in their business operations and 'allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order fulfillment' and 'request processing.'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012). Unlike in *Viki, Inc.*, cited by Plaintiff, for example, here there are no allegations that Aaptiv shared information with Twilio and Mixpanel to benefit the *vendors*' marketing. No. 23-CV-02161-RFL, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024) (ordinary course of business exception was better addressed on summary judgment where plaintiff alleged that Viki shared information with Meta to allow *Meta* to profit from more targeted ads, among other allegations). Rather, the allegations at most show that Twilio and Mixpanel acted as computer services aiding Aaptiv in its ordinary course of business. *See, e.g.,* Complaint ¶ 39 (Twilio and Mixpanel "*assist* with Defendants' marketing, advertising, and analytics efforts") (emphasis added), ¶ 71 (Twilio and Mixpanel "*help* Defendant with marketing, advertising, and analytics") (emphasis added), ¶ 76 (Twilio acts "to *assist* developers, like Defendant, in enhancing their marketing, advertising, and analytics efforts") (emphasis added), ¶ 79 ("Twilio acts as a facilitator"). Plaintiff has, therefore, not adequately pled that any disclosure to Twilio and Mixpanel was unauthorized under the VPPA.

**IV. <u>CONCLUSION.</u>**

For all these reasons, and those detailed in the Motion, the Court should dismiss Plaintiff's conclusory and contradictory Complaint.

Dated: January 29, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: [signature]

Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV