Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Lucas Hori (State Bar No. 294373)
lhori@rutan.com
Talya Goldfinger (State Bar No. 294926)
tgoldfinger@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASRA SARHADI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PEAR HEALTH LABS, INC., d/b/a AAPTIV,<br><br>Defendant. | Case No. 3:24-cv-7921-TLT<br><br>Judge: Hon. Trina L. Thompson<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>[Declarations of Gregory Altin, Talya Goldfinger and Mina Ching; Notice of Lodging; and [Proposed] Order Filed Concurrently Herewith]<br><br>Date: April 22, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 9<br><br>Date Action Filed: November 12, 2024<br>Trial Date: None Set |

/ / /

/ / /

/ / /

/ / /

/ / /

**TO PLAINTIFF KASRA SARHADI AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 22, 2025 at 2:00 p.m. or as soon thereafter as counsel may be heard in the courtroom of the Honorable Trina L. Thompson located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Pear Health Labs, Inc. d/b/a Aaptiv ("Aaptiv"), will and does hereby move the Court for an order compelling arbitration of Plaintiff Kasra Sarhadi's ("Plaintiff") individual claims against Aaptiv pursuant to the End User License Agreement and Terms of Service and dismissing the action.

Aaptiv brings this Motion pursuant to 9 U.S.C. sections 2, 3 and 4 and Federal Rule of Civil Procedure 7. This Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum and Points and Authorities, the concurrently filed Declarations of Gregory Altin and Talya Goldfinger, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument that may be presented to the Court by Aaptiv or other matter that may be considered by the Court.

Dated: March 14, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: [signature]
Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

- A. Plaintiff Agreed To The EULA When He Created An Aaptiv Account ........ 2
- B. The EULA Includes A Broad Agreement To Arbitrate Plaintiff's Dispute ........ 4

III. LEGAL STANDARD ........ 5

IV. PLAINTIFF'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION ........ 6

- A. The Parties Formed An Agreement To Arbitrate ........ 6
  - 1. Plaintiff had Reasonably Conspicuous Notice of the EULA ........ 8
    - a. The Context of the Transaction Strongly Supports Reasonably Conspicuous Notice ........ 8
    - b. The Placement of the Notice Strongly Supports Reasonable Conspicuous Notice ........ 10
  - 2. Plaintiff Manifested his Assent to the EULA ........ 14
- B. The Parties Delegated Any Issues Of Arbitrability To The Arbitrator ........ 14
  - 1. The EULA Expressly Delegates Arbitrability Issues ........ 15
  - 2. The EULA Incorporates the AAA Rules ........ 15

V. PLAINTIFF DOES NOT HAVE ANY BASIS TO OPPOSE ARBITRATION ........ 16

VI. THE CASE SHOULD BE DISMISSED AFTER ARBITRATION IS COMPELLED ........ 19

VII. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**FEDERAL CASES** **Page(s)**

*Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011 (9th Cir. 2023) ... 20

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ... 6

*Ayeni-Aarons v. Best Buy Credit Servs./CBNA*, 2019 WL 3943864 (E.D. Cal. Aug. 20, 2019) ... 6

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) (Baker, J. concurring) ... 9, 14

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ... 16

*Chabolla v. ClassPass Inc.*, 2025 WL 630813 (9th Cir. Feb. 27, 2025) ... 9, 14

*Chandler v. TA Operating LLC*, 2022 WL 597581 (E.D. Cal. Feb. 24, 2022) ... 19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ... 6

*Colores v. Ray Moles Farms, Inc.*, 2023 WL 2752379 (E.D. Cal. Mar. 31, 2023) ... 20

*Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796 (N.D. Cal. 2004) ... 17

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ... 6

*Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019 (E.D. Cal. Sept. 11, 2012) ... 19

*Dhaliwal v. Ace Hardware Corp.*, 2023 WL 2555471 (E.D. Cal. Mar. 17, 2023) ... 20

*Diaz v. Nintendo of Am. Inc.*, 2020 WL 996859 (W.D. Wash. Mar. 2, 2020) ... 17

*Dupler v. Orbitz, LLC*, 2018 WL 6038309 (C.D. Cal. July 5, 2018) ... 11, 17

**Page(s)**

**FEDERAL CASES (CONT'D)**


*Duval v. Costco Wholesale Corp.*, 2023 WL 3852694 (N.D. Cal. June 5, 2023) .......... 6

*Fries v. Wells Fargo Bank*, 2024 WL 1816931 (C.D. Cal. Feb. 22, 2024) .......... 20

*Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052 (9th Cir. 2018) .......... 16

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 1, 8-9, 11, 20

*Gregory v. Armstrong*, 2023 WL 11983324 (C.D. Cal. Nov. 28, 2023) .......... 20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) .......... 14-15, 17

*Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702 (9th Cir. 2024) .......... 6

*Hofer v. Emley*, No. 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) .......... 6

*In re Ring LLC Privacy Litig.*, 2021 WL 2621197 (C.D. Cal., June 24, 2021) .......... 1, 12, 17

*Kairy v. Supershuttle Int'l, Inc.*, 2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) .......... 18

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024) .......... 7-11, 13-14

*Kersting v. UnitedHealth Grp.*, 2023 WL 4305127 (S.D. Cal. June 29, 2023) .......... 20

*Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161 (N.D. Cal. 2011) .......... 19

*McLellan v. Fitbit, Inc.*, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) .......... 16

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) .......... 18

**Page(s)**

**FEDERAL CASES (CONT'D)**

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) .......... 18

*Nevarez v. Forty Niners Football Co., LLC*,
2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......... 12-13

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 7-8, 10, 14

*Paulson v. Dean Witter Reynolds, Inc.*,
905 F.2d 1251 (9th Cir. 1990) .......... 17

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) .......... 2

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......... 7, 11

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) .......... 12

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .......... 19

*Regan v. Pinger, Inc.*,
No. 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) .......... 1, 6-8, 12-13, 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 15

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .......... 6

*Sparling v. Hoffman Constr. Co.*,
864 F.2d 635 (9th Cir. 1988) .......... 19

*Sri Trang Gloves (Thai.) Pub. Co. v. Pac. Apex P'ship LLC*,
2023 WL 12011482 (C.D. Cal. May 15, 2023) .......... 20

*Wheeler v. LG Elecs. USA, Inc.*,
2024 WL 51353 (E.D. Cal. Jan. 4, 2024) .......... 20

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) .......... 18

**Page(s)**

**FEDERAL CASES (CONT'D)**

*Zaimi v. Neiman Marcus Grp., LLC*,
2022 WL 19569536 (C.D. Cal. Aug. 31, 2022) .......... 1, 8, 11, 15-16

*Zenelaj v. Handybook Inc.*,
82 F.Supp.3d 968 (N.D. Cal. 2015) .......... 16

**OTHER STATE CASES**

*Baltazar v. Forever 21, Inc.*,
62 Cal.4th 1237 (2016) .......... 18

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
83 Cal.App.4th 677 (2000) .......... 18-19

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal.4th 223 (2012) .......... 18

*Rodriguez v. Am. Techs., Inc.*,
136 Cal.App.4th 1110 (2006) .......... 5

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal.4th 899 (2015) .......... 18

**FEDERAL STATUTES**

9 U.S.C.
section 2 .......... 18
section 4 .......... 6

## MEMORANDUM AND POINTS AND AUTHORITIES

## I. INTRODUCTION.

This is a straight-forward motion to compel arbitration pursuant to the parties' agreement. The operative agreement is an End User License Agreement and Terms of Service (the "EULA") that contains a comprehensive provision requiring Plaintiff Kasra Sarhadi ("Plaintiff") to submit his claims to binding, individual arbitration. Plaintiff agreed to the EULA with Defendant Pear Health Labs, Inc. d/b/a Aaptiv ("Aaptiv") when he created an account on Aaptiv's fitness app (the "App"). Yet, despite creating an Aaptiv account and agreeing to the EULA, Plaintiff filed his putative class action Complaint in federal court, alleging opportunistic privacy claims regarding his use of that same App. Defendant promptly demanded that Plaintiff submit his individual claims to arbitration. But Plaintiff refused to honor his binding agreement to arbitrate, preferring instead to pursue a class action attorneys' fee award rather than legitimately redress any actual consumer harm.

Plaintiff's own allegations confirm he agreed to the EULA. To sign up for an Aaptiv account, as Plaintiff alleges he did (Complaint ¶ 86), users are presented with a sign-in screen that requires them to enter their name and email address and click a sign-up button. Plaintiff concedes that he downloaded the Aaptiv App and entered this information to create an account. *Id*. Below the sign-up button, Aaptiv states "By joining Aaptiv, you agree to our Terms of Service" and conspicuously links to the EULA. Courts have termed such agreements "sign-in wrap agreements" and they are routinely upheld to enforce arbitration agreements like the one in the EULA. *See,e.g., Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 937 (N.D. Cal. 2024) (compelling arbitration of VPPA claims); *Regan v. Pinger, Inc.*, No., 2021 WL 706465, at *4 (N.D. Cal. Feb. 23, 2021) (compelling arbitration); *Zaimi v. Neiman Marcus Grp., LLC*, 2022 WL 19569536, at *1 (C.D. Cal. Aug. 31, 2022) (compelling arbitration); *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *6 (C.D. Cal., June 24, 2021) (compelling arbitration).

Having agreed to the terms of the EULA, Plaintiff does not have any basis to oppose arbitration. The EULA's arbitration agreement delegates any issues relating to the agreement's interpretation, applicability, or enforceability to the arbitrator. So, even if Plaintiff intends to raise challenges to the EULA, he needs to do so in the arbitration itself. In any event, the arbitration

agreement is applicable because its broad language covers Plaintiff's current claims and it is enforceable because it is not procedurally or substantively unconscionable (nor could Plaintiff meet his high burden to show otherwise).

Recently, a court in this District compelled arbitration of the same privacy claims brought by Plaintiff's attorneys against one of Aaptiv's alleged vendors, Twilio, Inc. *See Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024). The Court should do the same here. The Court should enforce the parties' EULA, grant Aaptiv's Motion, and dismiss Plaintiff's claims so this matter can proceed in arbitration.

## II. FACTUAL BACKGROUND.

Though Plaintiff's Complaint is sparse as to individual details about Plaintiff and his use of the Aaptiv App, both his allegations and the evidence shows that Plaintiff agreed to the EULA and its broad arbitration agreement.

### A. Plaintiff Agreed To The EULA When He Created An Aaptiv Account.

To access Aaptiv's content and programs, a user must create an Aaptiv account. Complaint ¶¶ 23, 61; Declaration of Gregory Altin ("Altin Decl.") ¶ 6. Plaintiff alleges he downloaded the Aaptiv App on his Apple iPhone and created an Aaptiv account in June 2020. Complaint ¶ 86. Aaptiv's App screen for creating an account at that time was simple and clear—as it remains today. It included spaces to type in the user's first name, last name, email address, and password. *Id.* ¶¶ 22-23, Ex. 9. Underneath these spaces, the user needed to click a button labeled "Join Aaptiv" to proceed. *Id.* Beneath this button, text read "By joining Aaptiv, you agree to our Terms of Service." *Id.* In 2020, the notice appeared in dark text on a white background. *Id.* The words "Terms of Service" were capitalized and set off with blue, underlined text to indicate they are hyperlinked. *Id.* ¶ 24, Ex. 9. And, the sign-on page itself was uncluttered, such that the notice easily stood out. *Id.* ¶¶ 22-23, Ex. 9. A screenshot of an emulation of this page as Plaintiff would have seen it on his iPhone in 2020 is attached as Ex. 9 to the Altin Declaration and shown below:




The hyperlink on this page to the "Terms of Service" redirected the user to www.aaptiv.com/terms. *Id.* ¶ 24. In 2020, the terms of use page contained Aaptiv's End User License Agreement and Terms of Service, effective December 20, 2018 (the "EULA"), attached both as Ex. 5 to the Altin Declaration and as Ex. A to the Ching Declaration. As described below, the EULA contained (and still does contain) a broad arbitration and class action waiver.

Any new user creating an account on the App in 2020 – as Plaintiff alleges he did – needed to navigate to Aaptiv's sign-in page, enter information, and click "Join Aaptiv" to set up an account. *Id.* ¶¶ 10, 23. A 2020 App user could not log in until the user created an account through that page by clicking "Join Aaptiv" and consented to the EULA (nor can a user today). *Id.* ¶¶ 11, 23. In fact, Plaintiff concedes in his pleading that he created an Aaptiv account and that he did so by entering information into the App, including his full name and email address. Complaint ¶¶ 24, 86. Plaintiff further concedes that "[e]ach user must provide all of this information in order to create an account and access the content on the App." Complaint ¶ 25.

While Plaintiff alleges that he created an account in the App in 2020, any subsequent user creating an Aaptiv account either within the App or through a web browser on the Aaptiv webpage likewise would have accepted terms of use containing an arbitration provision in the same manner. *See* Altin Decl. ¶¶ 6-20; Declaration of Mina Ching ("Ching Decl."), Ex. A. The design of Aaptiv's App sign-in screen has changed minimally over time—today's version has similar design and text confirming that, "By joining Aaptiv, you agree to our Terms of Service." Altin Decl. ¶¶ 10-11, Ex. 4. And those terms of service continue to include an arbitration clause and class action waiver agreement. *Id.* ¶ 11, Ex. 2. In short, there is no way Plaintiff could have created an Aaptiv account, whether in 2020 any time since, without agreeing to arbitration.

### B. <u>The EULA Includes A Broad Agreement To Arbitrate Plaintiff's Dispute.</u>

Paragraph 11 of the EULA as presented to Plaintiff in 2020 is entitled "Dispute Resolution." ¶¶ 13-18, Ex. 5, p. 7; Ching Decl. Ex. A. The provision is not hidden. It appears in its own, separate section and in the same font and size as the EULA's other provisions. *See id.* Subsection "a. <u>General</u>," of Paragraph 11 provided in 2020:

> You and Aaptiv agree that any dispute arising out of or in any way related to this EULA or your use of the App, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of this EULA, will be resolved by binding arbitration. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THIS EULA, YOU AND AAPTIV ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR

TO PARTICIPATE IN A CLASS ACTION.[1]

*Id*. This subsection is mutual, with both parties required to resolve any claims through binding arbitration. *Id*. Subsection "b. Exceptions" also carves out specific claims from its scope, including claims in small claims court and claims for intellectual property infringement. *Id*.

Further, subsection "c. Arbitrator" provided in 2020:

> Any arbitration between you and Aaptiv will be governed by the Federal Arbitration Act and the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this EULA, and will be administered by the AAA. The AAA Rules and filing forms are available online at www.adr.org. The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.

*Id*.

Thus, by agreeing to the EULA, Plaintiff broadly agreed to arbitrate "any dispute arising out of or in any way related to this EULA or ***your use of the App***." *Id*. (emphasis added). Yet, on November 12, 2024, Plaintiff filed his putative class action Complaint in this Court, alleging that Aaptiv violated the California Invasion of Privacy Act ("CIPA") and the Video Privacy Protection Act ("VPPA") by sharing his personal information with its vendors when Plaintiff used the Aaptiv App. Complaint ¶ 5. On January 21, 2025, Aaptiv sent a letter to Plaintiff demanding that he dismiss his Complaint and submit his individual claims to arbitration, as agreed in the EULA. Declaration of Talya Goldfinger ("Goldfinger Decl.") ¶ 2, Ex. 1. Plaintiff refused (*id*., ¶ 3, Ex. 2) and this Motion ensued.

## III. LEGAL STANDARD.

The Federal Arbitration Act (the "FAA") governs the enforceability of the EULA's arbitration clause for two, independent reasons. First, the EULA expressly calls for the application of the FAA. Altin Decl. Ex. 5, p. 7 ("Any arbitration between you and Aaptiv will be governed by the Federal Arbitration Act"). *See Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1121-22,

[1] Subsection "e. No Class Actions" additionally provided that the parties agree to "bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding." *Id*. (capitalization removed).

(2006) (language in parties' agreement stating that any claim shall be arbitrated "pursuant to the FAA" controls). Second, "the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce[.]" *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 706 (9th Cir. 2024). The "interstate commerce" provision is interpreted broadly, *Ayeni-Aarons v. Best Buy Credit Servs./CBNA*, 2019 WL 3943864, at *2 (E.D. Cal. Aug. 20, 2019), and applies to activities conducted via mobile application like those alleged here. *See Duval v. Costco Wholesale Corp.*, 2023 WL 3852694, at *2 (N.D. Cal. June 5, 2023) (FAA applies to sales on "a virtual marketplace through a smartphone application or website"); *Hofer v. Emley*, No., 2019 WL 4575389, at *12 (N.D. Cal. Sept. 20, 2019) ("the transaction contemplated under the Agreement affects interstate commerce because Getaround's customers must access the Internet—'an instrumentality and channel of interstate commerce'—to use Getaround's services"), *quoting United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007).

The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id*.

The FAA adopts a "strong" and "liberal federal policy favoring arbitration[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also*, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues" governed by an arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "By its terms, the FAA leaves no place for the exercise of discretion by a district court[.]" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quotation omitted).

## IV. PLAINTIFF'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION.

### A. The Parties Formed An Agreement To Arbitrate.

In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *Regan*, 2021 WL 706465, at *4, *citing First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Thus, in determining whether parties have agreed to arbitrate a dispute, the Court applies 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Id.*, *quoting Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).

"To form a contract under California law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024) (citation omitted). In California, courts have historically recognized two types of internet contracts: (1) a browsewrap agreement, where "an internet user accepts a website's terms of use merely by browsing the site" and (2) a clickwrap agreement, which "requires users to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Id.* at 1014. Recently, however, "[a] third category of agreement has become known as a 'sign-in wrap,' in which a website 'notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up." *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) (citation and quotations omitted); *see also*, *Keebaugh*, 100 F.4th at 1014 (in a sign-in wrap agreement, "users are required to advance through a sign-in screen which states 'By tapping 'Play,' I agree to the Terms of Service'"). "Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh*, 100 F.4th at 1014 (citation and quotation omitted); *see also*, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (enforcing arbitration agreement through a sign-in wrap agreement).

The parties' agreement here was a sign-in wrap agreement. As described above, when Plaintiff created an account, he was presented with a basic and clear screen that required him to enter his name, email, and password and to click a button stating "Join Aaptiv". Altin Decl. ¶¶ 22-23, Ex. 9. Below this button was the phrase "By joining Aaptiv, you agree to our Terms of Service."

*Id*. Plaintiff's own allegations are consistent with him encountering this sign-in screen. Plaintiff alleges he downloaded the Aaptiv App on his Apple iPhone in June 2020 and created an account by entering information into the App[,]" including his full name and email address. Complaint ¶¶ 24, 86. Plaintiff agrees that "[e]ach user ***must*** provide all of this information in order to create an account and access the content on the App." Complaint ¶ 25 (emphasis added). The screen attached as Exhibit 9 to the Altin Declaration was the operative sign-in screen in Aaptiv's App in June 2020. Altin Decl. ¶ 22. *See Oberstein*, 60 F.4th at 517 (constructive notice may be found "as a matter of law" based on defendant's screenshots of its sign-in wrap agreement); *see also*, *Regan*, 2021 WL 706465, at *1 (where design of sign-in screen changed over time and Plaintiff did not allege when he created his first account, court relied on defendant's declarant attestations as to which screen Plaintiff saw); *Zaimi*, 2022 WL 19569536, at *1 (relying on defendant's declaration to establish the sign-in screen plaintiff viewed and denying plaintiff's request for discovery based on claim that he did not see the terms of use).

By joining Aaptiv and creating an account, Plaintiff had notice of the EULA through an enforceable sign-in wrap agreement because, as explained below, he had reasonably conspicuous notice of the terms of the EULA and he clicked a button manifesting his assent.

**1. Plaintiff had Reasonably Conspicuous Notice of the EULA.**

To satisfy the first part of the test – whether the website/app provides reasonable conspicuous notice – courts consider whether "a reasonably prudent Internet user would have seen" the notice. *Oberstein*, 60 F.4th at 515 (quotation omitted). The Ninth Circuit has looked to both the "context of the transaction" and the "placement of the notice." *Keebaugh*, 100 F.4th at 1019-20 (citation omitted).

**a. The Context of the Transaction Strongly Supports Reasonably Conspicuous Notice.**

"[A] user engaging in a full registration process, as opposed to a one-time purchase, is more likely to expect a continuing relationship that would put her on notice for a link to the terms of that continuing relationship." *Ghazizadeh*, 737 F. Supp. 3d at 925. *See also*, *Oberstein*, 60 F.4th at 517 (9th Cir. 2023) ("in contrast with the noncommittal free trial ... the context of this transaction,

requiring a full registration process, reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship"). Thus, courts have found reasonably conspicuous notice of sign-in wrap agreements where users signed up for a mobile game, or for a platform that offered education courses through online videos like Aaptiv's online workout videos. *See Keebaugh*, 100 F.4th at 1020 ("No reasonably prudent internet user—one who is likely often exposed to similar online agreements—would consider downloading and playing a potentially endless mobile game to be equivalent to an insular and discrete one-time transaction."); *Ghazizadeh*, 737 F. Supp. 3d at 926 ("users of Coursera's services, a platform that offers online educational courses via pre-recorded videos, would similarly expect (or should expect) their access to the platform would be continual and governed by some terms of use"). On the other hand, courts have declined to find reasonably conspicuous notice where users simply made a one-time purchase. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 869 (9th Cir. 2022) (Baker, J. concurring) ("In this case involving one-off transactions, reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print."); *Chabolla v. ClassPass Inc.*, 2025 WL 630813, at *5 (9th Cir. Feb. 27, 2025) ("The transaction could easily be considered a one-time purchase of credits at a discounted rate to be traded in at gyms and studios, rather than the formation of an ongoing relationship with ClassPass.").

Plaintiff's interaction with the Aaptiv App was much more than a one-time purchase or transaction. In fact, Plaintiff alleges he "used the App regularly" for a period of over 4 years. Complaint ¶ 93. *See Ghazizadeh*, 737 F. Supp. 3d at 926 ("users of a service like Coursera know that they can continue to access Coursera's recorded videos. Plaintiff's complaint underscores the ongoing nature of Coursera's services. Plaintiff states that he 'has consistently viewed videos on Coursera'"). Users like Plaintiff are required to create an Aaptiv account (Altin Decl. ¶¶ 10-11, 23; Complaint ¶¶ 23, 61) and they engage in an on-going relationship with Aaptiv. This ongoing interaction is the kind users reasonably expect to be governed by some kind of terms of use.

Moreover, Plaintiff here should have especially expected his interactions with Aaptiv to be governed by terms because he downloaded Aaptiv's App. "When downloading an app to one's own device, the prudent internet user necessarily anticipates ongoing access to that app at the user's

discretion ... An app is different from a typical one-and-done interaction between the user and a traditional website—the app's presence on the phone until deleted carries the connotation that the user will also have ongoing access to that app unless something material changes." *Keebaugh*, 100 F.4th at 1020. Plaintiff alleges he downloaded Aaptiv's App. Complaint ¶ 86. Thus, Plaintiff knew he was entering into an on-going relationship with Aaptiv until such time as he deleted the App.

By downloading the Aaptiv App, creating an Aaptiv account, and then continuing to view videos on the App for a period of over 4 years, Plaintiff should have reasonably expected his relationship with Aaptiv to be governed by some sort of terms and he was on notice for a link to Aaptiv's terms of service.

**b. The Placement of the Notice Strongly Supports Reasonable Conspicuous Notice.**

Not only was Plaintiff on notice to expect a link to Aaptiv's terms of use, but that link itself was also placed in such a way that any reasonably prudent user would have seen Aaptiv's notice. *See Keebaugh*, 100 F.4th at 1014. Courts consider "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design[.]" *Oberstein*, 60 F.4th at 515 .

Aaptiv's sign-on page was uncluttered so the notice easily stood out (as it still does today). *See* Altin Decl. ¶ 22, Ex. 9. In fact, other than the boxes for Plaintiff to fill in and the "Join Aaptiv" button, the notice was the only text on the entire page. *See id*. Aaptiv's sign-in screen does not include any intervening text between the "Join Aaptiv" button and the notice. *See id*. On an iPhone, Aaptiv's notice appeared on a single line, written in an single sentence, and it appeared on a single screen, without requiring the user to scroll to see it. *See id*. The term "Terms of Service" was capitalized, underlined, and in dark blue font, denoting a hyperlink. *Id*. ¶ 24, Ex. 9. Aaptiv's notice also used clear language. *See id*., Ex. 9. And, in June 2020, Aaptiv's notice appeared as dark text on a white background. *Id*. ¶ 23, Ex. 9. The Ninth Circuit has held that similar notices bind a user to arbitration.

For example, the Court in *Keebaugh* found that a notice stating "By tapping 'Play' I agree to the Terms of Service" was conspicuous and compelled arbitration where the notice used

contrasting font to the background color, the statement itself was clear, the link to the Terms of Service was conspicuous, and the sign-in screen was uncluttered. *Id*. at 1020-21. The *Keebaugh* opinion included an image of the screen, as follows:




Numerous district courts have likewise found similar designs in sign-in wrap agreements to be conspicuous. *See DoorDash, Inc.*, 445 F. Supp. 3d at 586 (compelling arbitration; notice was conspicuous where it was "wholly visible" and the sign-on screen was uncluttered, even though it used gray-on-gray font and did not capitalize or underline the hyperlink); *Ghazizadeh*, 737 F. Supp. 3d at 928 (compelling arbitration of VPPA claim; notice was conspicuous where the sign-in screen was uncluttered and the hyperlinked terms were bolded, even though they were not underlined or in blue font); *Dupler v. Orbitz, LLC*, 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018) (compelling arbitration; notice was "conspicuously located" and was hyperlinked in blue text); *Zaimi*, 2022 WL

19569536, at *1 (compelling arbitration; notice was conspicuous where was hyperlinked in blue text); *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at *7 (N.D. Cal. Aug. 15, 2017) (compelling arbitration; notice was conspicuous where it was written in black bold text against a white background); *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (compelling arbitration; notice was conspicuous where the hyperlink was underlined on a white background and appeared on a "relatively uncluttered" screen).

For example, the sign-in screens included in the *Regan* and *In re Ring LLC Priv. Litig.* opinions – both of which compelled arbitration – are reproduced below.







*Regan*, 2021 WL 706465, at *7 (notice was conspicuous where the terms of service were capitalized and in a different color than the surrounding text); *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *6 (notice was conspicuous where the terms of service were hyperlinked in blue on an uncluttered page).

Aaptiv's notice is just as visible, if not more so, than those notices that courts in this district and the Ninth Circuit have found to be conspicuous. Like those cases, Aaptiv's notice uses clear

language that appears on an uncluttered screen. In fact, Aaptiv's sign-in screen is even less cluttered than those screens courts have found to give conspicuous notice. Unlike the screens in *Keebaugh* and *Regan*, Aaptiv's sign-in screen did not include any other substantive text or graphics. Unlike the dark sign-in screen in *Keebaugh*, Aaptiv's 2020 sign-in screen was a simple white with dark text, just like in other cases in this district. And, unlike the notices in *Regan* and *In re Ring LLC Priv. Litig.*, Aaptiv's notice appears on just a single line with a single link.

By way of example, Aaptiv's sign-in screen is similar to the sign-in screen from the *Nevarez* opinion – where the court compelled arbitration – both of which are reproduced below.







*Compare* Altin Decl. ¶ 22, Ex. 9 *with Nevarez*, 2017 WL 3492110, at *2.

**2. Plaintiff Manifested his Assent to the EULA.**

"The second part of the analysis—whether the user took some action that unambiguously manifested the user's assent to the agreement—is straightforward on these facts." *Oberstein*, 60 F.4th 505, 517. To create an account, Plaintiff was required to enter his name, email, and password and to affirmatively click a button stating "Join Aaptiv". Altin Decl. ¶¶ 22-23, Ex. 9. Aaptiv's conspicuous notice unambiguously stated that, "By joining Aaptiv, you agree to our Terms of Service." *See id*. "[T]hat is all that is required." *Oberstein*, 60 F.4th 505, 517 (button stated "Sign in" or "Place Order" and notice stated "By continuing past this page, you agree to the Terms of Use."). *See also*, *Keebaugh*, 100 F.4th at 1020 (button stated "Play" and notice stated "By tapping 'Play' I agree to the Terms of Service").

In contrast to Aaptiv's unambiguous notice, courts have found that a user did not manifest assent where the button the user clicked merely said "Continue" and the notice "did not indicate to the user what action would constitute assent to those terms and conditions." *Berman*, 30 F.4th at 858 ("Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent to those terms and conditions ... This notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'"); *see also*, *Chabolla v. ClassPass Inc.*, 2025 WL 630813, at *8 ("Screen 2 explains that '[b]y signing up you agree to our Terms of Use and Privacy Policy.' There is no 'sign up' button, and the only button on screen 2 reads 'Continue.' At no point on any screen is a user advised that a particular action has 'signed her up' or will 'sign her up'"). That is not the case here.

Thus, Plaintiff had reasonably conspicuous notice of the EULA and he manifested his assent to the EULA by clicking "Join Aaptiv" – creating an enforceable sign-in wrap agreement to arbitrate his claims.

**B. The Parties Delegated Any Issues Of Arbitrability To The Arbitrator.**

Once the Court determines that the parties have an arbitration agreement, the Court's analysis need not go any further because the parties delegated any issues of arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("parties

may delegate threshold arbitrability questions to the arbitrator"); *see also*, *Zaimi*, 2022 WL 19569536, at *2 (whether arbitration clause covered plaintiff's claims was an issue the parties delegated to an arbitrator). Here, the arbitration agreement delegates issues of arbitrability to the arbitrator in two ways, either one of which independently suffices: (1) the EULA includes express language delegating authority to the arbitrator, and (2) the EULA incorporates the AAA rules.

**1. The EULA Expressly Delegates Arbitrability Issues.**

First, the EULA explicitly delegates arbitrability issues as follows: "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." Altin Decl. Ex. 5, p. 7. This express language is clear and unmistakable. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n. 1, 72 (2010) ("clear and unmistakable" delegation of authority to the arbitrator is valid and enforceable.); *Henry Schein, Inc.*, 586 U.S. at 69 (same). For this reason alone, any remaining issues concerning the application or enforceability of the EULA must be decided by an arbitrator.

**2. The EULA Incorporates the AAA Rules.**

Second, the EULA also delegates arbitrability issues to the arbitrator by incorporating the rules of the American Arbitration Association ("AAA"). Specifically, the EULA provides that "[a]ny arbitration between you and Aaptiv ***will*** be governed by" (1) AAA's Commercial Dispute Resolution Procedures ("AAA Commercial Rules") and (2) AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules")[2], and "will be administered by the AAA." Altin Decl. Ex. 5, p. 7 (emphasis added). Both the AAA Commercial Rules and the AAA Consumer Rules expressly delegate arbitrability issues to the arbitrator. *See* Goldfinger Decl., ¶ 4, Ex. 3, p. 14 (Commercial Rules, R-7; "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.") and Ex. 4, p. 17 (Consumer Rules, R-14; "The arbitrator shall have the power to rule on his

---

[2] The AAA Consumer Rules apply where the parties "have specified that the Supplementary Procedures for Consumer-Related Disputes shall apply, which have been amended and renamed the Consumer Arbitration Rules." *See* Goldfinger Decl. ¶ 4, Ex. 4, p. 9.

or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").

The Ninth Circuit has held that incorporating the AAA's rules is "clearly and unmistakably" a delegation of threshold arbitrability issues to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-32 (9th Cir. 2015) (parties' reference to deciding their dispute pursuant to the AAA arbitration rules was a "clear and unmistakable" delegation to the arbitrator of questions whether the parties had an agreement to arbitrate and whether that agreement covered the dispute); *see also*, *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061-62 (9th Cir. 2018) (agreement that stated the arbitration would be "conducted pursuant to the Rules of the American Arbitration Association" clearly and unmistakably indicated the parties' intent to submit arbitrability questions to an arbitrator). Numerous courts in this District and others have followed the Ninth Circuit's guidance. *See Zenelaj v. Handybook Inc*., 82 F.Supp.3d 968, 971-74 (N.D. Cal. 2015) ("regardless of their sophistication, the Court finds that the Parties in this case clearly and unmistakably delegated the question of arbitrability to the arbitrator when they expressly incorporated the AAA Rules into their Agreement"); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ("In our circuit, incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.") (quotation omitted); *Zaimi*, 2022 WL 19569536, at *4 ("Here, the parties agreed that 'any arbitration under this agreement shall be conducted under the prevailing rules of the American Arbitration Association.' Like in *Brennan* and this Court's precedent, this is clear and unmistakable evidence that the parties intended to delegate arbitrability to the arbitrator.").

The EULA's incorporation of the AAA rules therefore constitutes a separate, clear, and unmistakable delegation to the arbitrator of any arbitrability issues, in addition to the EULA's express terms. Either one of these terms would have sufficed. Here, the EULA contains both.

## V. <u>PLAINTIFF DOES NOT HAVE ANY BASIS TO OPPOSE ARBITRATION</u>.

Given that the parties delegated issues of arbitrability to the arbitrator – including decisions as to whether the agreement covers the instant dispute and decisions on contract defenses like illegality or unconscionability – any challenges to arbitrability that Plaintiff may raise must be

decided in the arbitral forum. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 68 (this is true "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless"); *see also*, *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *7 ("Because the parties agreed to delegate gateway arbitrability issues, those issues must be reserved for the arbitrator to resolve."). "If an arbitration provision contains a delegation clause, the Court's inquiry ends." *Diaz v. Nintendo of Am. Inc.*, 2020 WL 996859, at *1 (W.D. Wash. Mar. 2, 2020).

Even if the EULA did not contain a delegation clause, however, Plaintiff has no basis to dispute the applicability or enforceability of the arbitration agreement here. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Paulson v. Dean Witter Reynolds, Inc.*, 905 F.2d 1251, 1254 (9th Cir. 1990) (quotation omitted). There is no question that Plaintiff's claims in this lawsuit are governed by the arbitration agreement in the EULA that broadly covers "any dispute arising out of or in any way related to this EULA or ***your use of the App***." Altin Decl. Ex. 5, p. 7 (emphasis added). *See Regan*, 2021 WL 706465, at *8 (presumption in favor of arbitration is "particularly applicable where the arbitration clause is broadly worded"); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 807 (N.D. Cal. 2004) ("The arbitration provision at issue covers all disputes 'arising out of or in connection with' the [agreement]. Its scope is, therefore, broad."). Plaintiff alleges that Aaptiv violated CIPA and the VPPA when Plaintiff used the App by sharing data Plaintiff enters into the App. Complaint ¶ 5. "Given the strong federal policy favoring arbitration ... 'arbitration should only be denied where it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Regan*, 2021 WL 706465, at *8, *quoting AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986). *See also, Dupler v. Orbitz, LLC*, 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018) ("Plaintiffs must provide 'forceful evidence' of intent to exclude claims [] from the arbitration agreement." ). Here, there is no plausible argument that this dispute *is not* covered by the EULA.

Nor could Plaintiff carry his burden of proving the arbitration agreement is somehow unenforceable (it is not). *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012) ("the party opposing arbitration bears the burden of proving any defense, such as unconscionability") (citation omitted). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To prove that the arbitration agreement is unconscionable, for example, Plaintiff would need show that it is both procedurally and substantively unconscionable. *See Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1244 (2016) (California courts balance these two factors on a sliding scale). The California Supreme Court has emphasized that "unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Baltazar*, 62 Cal.4th at 1244 (emphasis and quotation omitted). Unconscionable contracts are those that are "so one-sided as to shock the conscience." *Id.* (quotation omitted); *see also*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (citing California authorities). That is simply not the case with the arbitration agreement in the EULA.[3]

The EULA's arbitration agreement did not subject Plaintiff to any "oppression" or "surprise" such as to render it procedurally unconscionable. *See Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677, 688 (2000) ("there is nothing in the showing made by Coast Plaza which prove that it was, or would have been, 'surprised' by the clause imposing mandatory arbitration as the required means of dispute resolution. The arbitration clause was prominent and conspicuous as well as simple and straightforward."). The Dispute Resolution section in the EULA is simple and uses plain language and Aaptiv even set it out in its own section, despite having no obligation to do so. Altin Decl. Ex. 5, p. 7. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 914 (2015). Courts routinely enforce arbitration provisions found in form contracts like the EULA. *See Wiseley*

[3] Relatedly, "the class action waiver is not unconscionable ... the enforcement of arbitration agreements that ban class procedures, *is* the law of California and of every other state." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225-26 (9th Cir. 2013) (emphasis in original); *see also*, *Kairy v. Supershuttle Int'l, Inc.*, 2012 WL 4343220, at *3 (N.D. Cal. Sept. 20, 2012) (discussing caselaw history; "courts must compel arbitration even in the absence of the opportunity for plaintiffs to bring their claims as a class action"). !

*v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (upholding grant of motion to compel arbitration based on online retailers' contract of adhesion); *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1261-62 (9th Cir. 2017) (reversing denial of motion to compel arbitration of individual claims based on adhesive employment contract); *Chandler v. TA Operating LLC*, 2022 WL 597581, at **3–4 (E.D. Cal. Feb. 24, 2022) (rejecting argument that arbitration agreement in contract of adhesion was procedurally unconscionable).

Separately, no terms in the EULA are "overly harsh" or "one-sided" to render them substantively unconscionable. *See Baltazar*, 62 Cal. 4th at 1244; *Coast Plaza Drs. Hosp.*, 83 Cal.App.4th at 688 ("The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner.") (citation omitted). To the contrary, the EULA's dispute resolution provision binds both parties (Altin Decl. Ex. 5, p. 7), preserves Plaintiff's rights to seek a full panoply of remedies (*id*.), and in many respects favors Plaintiff over Defendant. For example, as noted, the EULA incorporates the AAA Consumer Arbitration Rules, pursuant to which: (1) Aaptiv must pay the arbitrator's fees and direct arbitration costs payable to AAA and (2) the arbitrator has broad discretion to "grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case." *See id*.; Goldfinger Decl., ¶ 4, Ex. 4 at pp. 28, 33.

And so, even if Plaintiff had not agreed to delegate issues concerning the "interpretation, applicability, or enforceability" of the arbitration agreement to the arbitrator, Plaintiff has no basis with which to challenge the arbitrability of his claims.

## VI. THE CASE SHOULD BE DISMISSED AFTER ARBITRATION IS COMPELLED.

"[O]nce a court determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration." *Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 11, 2012), *citing*, *inter alia*, *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). *See also*, *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("the class action waivers are enforceable, which leaves only Plaintiff's individual claims remaining in

this action. Since those claims are subject to arbitration, dismissal is appropriate"). Here, the EULA's broad arbitration clause encompasses all of Plaintiff's claims. Further, Plaintiff only recently filed his case, and the parties have not actively litigated any issues that would require this Court to retain jurisdiction. In fact, in anticipation of the parties' March 12, 2025 mediation, the parties did not engage in any discovery and proposed staying the proceedings. Dkt. No. 17. Aaptiv promptly filed this Motion when that mediation was unsuccessful, and in advance of the Court's March 26 deadline. Dkt. No. 22.[4] Accordingly, upon entry of an order compelling arbitration, dismissal is proper.

---

[4] Aaptiv filed a Motion to Dismiss on January 8, 2025 to avoid default, which is set for hearing at the same time as the instant Motion on April 22. Dkt. No. 11. Aaptiv offered Plaintiff to delay briefing on the Motion to Dismiss, but Plaintiff refused. Goldfinger Decl. ¶¶ 2-3, Exs. 1-2. Aaptiv respectfully requests that the Court decide the instant Motion first for efficiency as such decision could obviate the need for a decision on the Motion to Dismiss. In any event, the filing of Aaptiv's Motion to Dismiss should in no way constitute a waiver of the agreement to arbitrate. *See Fries v. Wells Fargo Bank*, 2024 WL 1816931, at *3 (C.D. Cal. Feb. 22, 2024) ("The simple fact that [defendant] filed a motion to dismiss does not decide the issue of waiver."); *Colores v. Ray Moles Farms, Inc.*, 2023 WL 2752379, at *4 (E.D. Cal. Mar. 31, 2023) ("even where the party seeking arbitration has filed a motion to dismiss on the merits, the Ninth Circuit has not found waiver without prolonged delays and 'significant additional litigation activity'"); *Sri Trang Gloves (Thai.) Pub. Co. v. Pac. Apex P'ship LLC*, 2023 WL 12011482, at *2–3 (C.D. Cal. May 15, 2023) ("effectively filing one dispositive motion on the same issues during just two months of proceedings does not constitute the active litigation over a prolonged period"); *Ghazizadeh*, 737 F. Supp. 3d at 920-21 (no waiver even though defendant's motion to dismiss was pending); *Wheeler v. LG Elecs. USA, Inc.*, 2024 WL 51353, at *6-7 (E.D. Cal. Jan. 4, 2024) (no waiver even after defendant delayed 11 months and moved to dismiss). Aaptiv repeatedly stated its intent to file this Motion – including in its Motion to Dismiss, in a demand letter to Plaintiff, in its initial disclosures, and in the parties' joint statement. Aaptiv promptly and timely moved to compel arbitration two days after the parties' unsuccessful mediation (without actively litigating the case beforehand) and almost two weeks before the Court's deadline. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (no waiver where defendant "explicitly and repeatedly stated its intent to move to compel arbitration in both case management statements and in the initial case management conference before the district court"); *Gregory v. Armstrong*, 2023 WL 11983324, at *9 (C.D. Cal. Nov. 28, 2023) ("a defendant who is 'consistently vocal about its intent to move to compel arbitration' generally has not made a conscious decision to seek judicial judgment on the merits of a claim"); *Dhaliwal v. Ace Hardware Corp.*, 2023 WL 2555471, at *3-4 (E.D. Cal. Mar. 17, 2023) ("If anything, defendants' decision to stipulate to the stay of discovery supports the view that they did not seek to take advantage of federal discovery procedures that are not available in arbitration"); *Kersting v. UnitedHealth Grp.*, 2023 WL 4305127, at *8–9 (S.D. Cal. June 29, 2023) ("Plaintiff fails to cite to a case in which a party that moved to compel arbitration within approximately three months of being served and engaged only in removing and answering the complaint and, as ordered by the Court, exchanging preliminary disclosures and an ENE had waived its right to arbitrate.").

## VII. CONCLUSION.

Plaintiff agreed to arbitrate his claims. He downloaded the Aaptiv App, created an Aaptiv account, and used Aaptiv's App regularly for over 4 years, accepting Aaptiv's conspicuously-linked terms of service to do so, including the arbitration agreement in the EULA. He cannot now bring claims regarding his use of that same App in court. And, to the extent Plaintiff wants to raise meritless challenges to arbitrability, he agreed to delegate those challenges to the arbitrator. The EULA's dispute resolution provisions should be enforced, and Plaintiff's individual claims should be compelled to arbitration.

Dated: March 14, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: ______________________
Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV