**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KASRA SARHADI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEAR HEALTH LABS, INC., d/b/a AAPTIV,<br><br>Defendant. | Case No. 3:24-cv-07921-TLT<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: April 22, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9<br>Judge: Hon. Trina L. Thompson |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. DEFENDANT WAIVED ANY RIGHT TO ARBITRATE BY FILING ITS MOTION TO DISMISS ..... 2

II. DEFENDANT HAS NOT SHOWN PLAINTIFF WAS ON NOTICE OF ANY TERMS OF USE HYPERLINK ..... 3

A. The Ninth Circuit's Binding Decisions in *Berman* and *Chabolla* Should Dictate The Outcome Here ..... 4

B. The Hyperlink Was Too Inconspicuous To Put Plaintiff On Notice ..... 7

1. Simply Underlining Hyperlinks Is Not Sufficient For Notice ..... 8

2. The Hyperlink Is In A Tiny, Non-Contrasting Font ..... 9

3. The Hyperlink Is A Considerable Distance From The Other Relevant Text And Buttons ..... 11

4. The Hyperlink Is The Least Prominent Element On The Page ..... 12

C. Defendant's Arguments And Authorities Are Unpersuasive ..... 14

III. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFF AGREED TO ARBITRATE WITH DEFENDANT ..... 16

IV. THE INCONSPICUOUS PLACEMENT OF THE ARBITRATION AGREEMENT ON PAGE SEVEN OF THE 2018 TERMS FURTHER WEIGHS AGAINST ENFORCEABILITY ..... 17

V. DEFENDANT MUST WITHDRAW ITS ARGUMENTS RELATED TO EXPRESS CONSENT ..... 18

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) .......... 9, 10

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... passim

*Chabolla v. ClassPass, Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... passim

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 18

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) .......... 4, 10

*Cullinane v. Uber Tech., Inc.*,
893 F.3d 53 (1st Cir. 2018) .......... 13

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 18

*Dupler v. Orbitz, LLC*,
2018 WL 6038309 (C.D. Cal. July 5, 2018) .......... 15

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 15

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 287320 (C.D. Cal. Jan. 23, 2025) .......... 3, 8, 9

*Goldstein v. Fandango Media, LLC*,
2021 WL 6617447 (S.D. Fla. July 27, 2021) .......... 8, 11

*Guess?, Inc. v. Super. Ct.*,
79 Cal. App. 4th 553 (2000) .......... 2, 3

*In re Ring LLC Privacy Litig.*,
2021 WL 2621197 (C.D. Cal. June 24, 2021) .......... 15, 16

*Iravanian v. Translations.com, Inc.*,
687 F. Supp. 3d 871 (N.D. Cal. 2023) .......... 17

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 1, 4, 16

*Kaneko Ford Design v. Citipark, Inc.*,
202 Cal. App. 3d 1220 (1988) .......... 2

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 14, 15, 16

*Lemberg v. LuLaRoe, LLC*,
2018 WL 6927836 (C.D. Cal. Mar. 1, 2018) .......... 3

*Lien v. City of San Diego*,
2021 WL 2072385 (S.D. Cal. May 24, 2021) .......... 17

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) .......... 17

*Lopez v. Dave Inc.*,
2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) .......... 8

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) .......... 2, 3

*Massel v. SuccessfulMatch.com*,
718 F. Supp. 3d 1112 (N.D. Cal. 2024) .......... 8, 9, 14

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 2

*Morrison v. Yippee Entertainment, Inc.*,
2024 WL 4647296 (S.D. Cal. Oct. 31, 2024) .......... 14

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) .......... 16

*Nevarez v. Forty Niners Football Co.*,
2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......... 15

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) .......... 16

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 14

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) .......... 15

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 18

*Ramirez v. Trusper, Inc.*,
2024 WL 4479862 (N.D. Cal. Oct. 11, 2024) .......... 14, 17

*Regan v. Pinger, Inc.*, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ..... 15, 16

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) ..... 16

*Rocha v. Urban Outfitters, Inc.*, 2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ..... 10, 12, 13

*Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233 (2016) ..... 16

*Scriber v. Ford Motor Co.*, 2023 WL 7348461 (S.D. Cal. Nov. 7, 2023) ..... 16

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ..... 8

*Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089 (C.D. Cal. 2023) ..... 12, 13, 15

*Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) ..... 11

*Support Community, Inc. v. MPH Int'l, LLC*, 2025 WL 547380 (9th Cir. Feb. 19, 2025) ..... 2

*United States v. Bohn*, 956 F.2d 208 (9th Cir. 1992) ..... 17

*Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020) ..... 10

**RULES**

Fed. R. Civ. P. 12(b) ..... 3

Fed. R. Civ. P. 12(g) ..... 3

Plaintiff Kasra Sarhadi ("Plaintiff") respectfully submits this opposition to Defendant Pear Health Labs, Inc. d/b/a Aaptiv's ("Defendant" or "Aaptiv") Motion to Compel Arbitration (the "Motion" or "MTC").

**INTRODUCTION**

Perhaps realizing its Motion to Dismiss is doomed to fail, Defendant belatedly filed the present Motion in an attempt to push Plaintiff's clearly meritorious claims out of open court and into the secrecy of private arbitration. This, however, is too little too late. By filing its Motion to Dismiss (ECF No. 11) over two months *before* the present Motion, on top of engaging in a case management conference and setting case-related deadlines, Defendant has waived any right it may have had to compel Plaintiff to arbitration.

Even if the Court does rule on Defendant's Motion, Defendant cannot compel Plaintiff to arbitration because the law in the Ninth Circuit is clear that account creation screens like the one on the Aaptiv mobile application (the "App") are insufficient to provide adequate notice of and unambiguous manifestation of intent to be bound by a contract linked from that page. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022); *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1155-1157 (9th Cir. 2025). Defendant is also claiming, without explanation or support, that it is entitled to enforce a contract between App users and an entity called "Aaptiv, Inc." Declaration of Gregory Altin (the "Altin Decl.") Exs. 5, 7. Defendant Pear Health Labs is not a party to the contract and has made no argument that it should be entitled to benefit from a contract to which it is not a party. *Id*. What is more, the supposed agreement to arbitrate is buried on page 7 of the 2018 End User License Agreement (the "2018 Terms") and not set apart from the wall of small text by any bolding, spacing or coloration of the text, which further weighs against Defendant's argument that Plaintiff was on notice and assented to the arbitration agreement. *Id*. Ex. 5. Defendant bears the burden as the party "seeking arbitration to show that it provided notice … and that there was mutual assent to the contractual agreement to arbitrate." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). Defendant has not carried its burden here.

For the following reasons, Defendant's Motion Should be denied.

## ARGUMENT

### I. DEFENDANT WAIVED ANY RIGHT TO ARBITRATE BY FILING ITS MOTION TO DISMISS

As an initial matter, the Court need not even reach whether Defendants' arbitration clause is enforceable (it is not) because Defendant waived the right to compel arbitration. "[A] party's extended silence and delay in moving for arbitration may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (cleaned up). "[T]his element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in [] court." *Id*.

Here, Defendant was fully aware of the arbitration clause *in what it contends is its own online contract*. *See Guess?, Inc. v. Super. Ct.*, 79 Cal. App. 4th 553, 557 (2000) ("Kirkland has known about the arbitration provisions in PLB's license agreements since before this lawsuit was filed and served."). Despite this, Defendant took advantage of being in court for four months and filed a motion to dismiss, an act of actively litigating the merits of the case. *See* ECF No.1 (Complaint filed November 11, 2024); ECF No. 11 (the "MTD") (Motion to Dismiss filed January 8, 2025). Plaintiff's Opposition was filed on January 22, 2025. (ECF No. 14). After taking nearly two months to assess the strength of the MTD arguments, and apparently deciding it was not in an advantageous position, Defendant pivoted and filed the instant Motion on March 14, 2025.

Defendant cannot have it both ways. If Defendant believed this case did not belong in court, it should have filed the MTC as a threshold issue, not months after previewing the (lack of) success of its litigation strategy and forcing Plaintiff to oppose the MTD. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 414-15 (2022) (finding waiver where "Sundance initially defended itself against Morgan's suit as if no arbitration agreement existed"); *Support Community, Inc. v. MPH Int'l, LLC*, 2025 WL 547380, at *1 (9th Cir. Feb. 19, 2025) (finding waiver where "[t]hough [defendant] could have petitioned to compel arbitration in its first responsive pleading in state court … it failed to do so"); *Kaneko Ford Design v. Citipark, Inc.*, 202 Cal. App. 3d 1220, 1228 (1988) (finding waiver where plaintiff waited to move to compel arbitration until "approximately five and one-half months after

the complaint"); *Guess?, Inc.*, 79 Cal. App. 4th at 558 (finding waiver after four months of litigation); *cf. Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *5 (C.D. Cal. Jan. 23, 2025) (finding defendant waived the right to bring another Rule 12 motion after filing of motion to compel arbitration pursuant to Fed. R. Civ. P. 12(g)).[1]

It is also irrelevant that Defendant continued to raise the specter of an arbitration clause in its briefing because Defendant did not actually move to compel arbitration until *after* taking its shot on the Motion to Dismiss. Defendant's actions speak louder than its words, and Defendant is not permitted to ascertain is chances on the merits before moving to compel arbitration as a backstop.

In short, "[b]ecause [Defendant] had knowledge of [its] right to arbitrate and [it] engaged in acts inconsistent with that right for a significant period of time," the Court should find that Defendants waived their right to arbitrate. *Martin*, 829 F.3d at 1128.

## II. DEFENDANT HAS NOT SHOWN PLAINTIFF WAS ON NOTICE OF ANY TERMS OF USE HYPERLINK

Defendant argues the hyperlink on its App sign-up page was "placed in such a way that any reasonably prudent user would have seen Aaptiv's notice." MTC at 10.[2] "To form a contract under … California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Id.* at 857. Thus, "[t]o avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Id.* at 856. "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; *and* (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously

[1] *Lemberg v. LuLaRoe, LLC*, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) ("While courts may disagree as to whether a motion to compel arbitration constitutes a motion pursuant to Rules 12(b)(1), 12(b)(3), or 12(b)(6), courts generally agree that such a motion is a Rule 12(b) motion.").

[2] Defendant does not and cannot argue that Plaintiff had actual notice of the arbitration agreement.

manifests his or her assent to those terms." *Id.* Accordingly, when a hyperlink to an agreement is "not conspicuous enough to put [plaintiffs] on inquiry notice," then the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019).

"[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers" as "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023). Thus, the burden is on the party "seeking arbitration to show that it provided notice … and that there was mutual assent to the contractual agreement to arbitrate." *Id.* at 1099. Defendant cannot meet its burden to show Plaintiff was on notice of any Terms of Use based on its App sign-up page.[3]

### A. The Ninth Circuit's Binding Decisions in *Berman* and *Chabolla* Should Dictate The Outcome Here

Two binding cases from the Ninth Circuit. *Berman* and *Chabolla*, evaluated the exact question before the Court here: "[u]nder what circumstances can the use of a website bind a consumer to a set of hyperlinked 'terms and conditions' that the consumer never saw or read?" *Berman*, 30 F.4th at 853.

The webpages in *Berman* containing the hyperlinks at issue looked like this:




[3] Defendant concedes Plaintiff signed up via the App (MTC at 1.), so Defendant's arguments related to its website are irrelevant to its Motion.

*Id*. at 859 (Appendix A).




*Id*. at 861 (Appendix B).

In *Berman*, similar to here, the defendants argued that "by clicking on the 'continue' buttons, [the plaintiffs] had agreed to the hyperlinked terms and conditions, including the mandatory arbitration provision." *Id.* at 854. The Ninth Circuit disagreed, holding "the design and content of the webpages [the plaintiffs] visited did not adequately call to their attention [] the existence of the terms and conditions…." *Id.* at 858. Specifically:

> [t]he text disclosing the existence of the terms and conditions … is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other

> visual elements draw the user's attention away from the barely readable critical text.

*Id.* at 856-57 (cleaned up); *see also id.* at 857 ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists.").

Similarly, in *Chabolla*, the relevant webpage (called "Screen 1") looked like this:




*Chabolla*, 129 F.4th at 1174 (Appendix).

Again, similar to here, the defendants argued that by clicking the "Continue" or Sign up with Facebook" button the Plaintiff "agree to arbitrate any claims against [them]." *Id.* at 1151. Again, the Ninth Circuit disagreed, holding "[b]ecause of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is 'deemphasized by the overall design of the webpage' and not 'prominently displayed'" and was therefore unenforceable. *Id.* at 1157. Specifically:

> The user is directed to the action box in the right third of the page and must enter an email to continue. For users (like Chabolla) who enter their email address, the most obvious and natural next step is to click "Continue." If a user continued to read down the page, they

> would see an option to "Sign up with Facebook." The notice of additional terms is found below the "Sign up with Facebook" option, on the periphery of where a user intending to use their email would be looking. *A reasonably prudent user would likely click "Continue" and read no further* if she had no intention of using Facebook. It is not apparent that a user agrees or commits to anything on screen 1 other than sharing her email address. Here, the notice seems to fade into the irrelevancy of other aspects of the page.

*Id.* (emphasis added); *see also id.* ("[B]ecause of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is deemphasized by the overall design of the webpage and not prominently displayed on screen 1.") (cleaned up).

Applying these binding decisions here, Defendant cannot show its sign-up screen put users on sufficient notice of the terms and conditions hyperlink.

**B. The Hyperlink Was Too Inconspicuous To Put Plaintiff On Notice**

Defendant contends the App sign-up page looked like this:



Altin Decl. Ex. 9. The hyperlink to the Terms of Service bears many of the same hallmarks of the hyperlinks found inconspicuous in *Berman* and *Choballa.*[4]

*1. Simply Underlining Hyperlinks Is Not Sufficient For Notice*

Similar to *Berman*, the hyperlink and qualifying language at issue is "is printed in a tiny [] font" and is not recognizable as a hyperlink. *Berman*, 30 F.4th at 856. Specifically, the link here appears in a tiny black font that looks like almost identical to the color of the accompanying text and "is barely legible to the naked eye." *Id*.

As *Berman* and other courts have repeatedly found, "[s]imply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id.* at 854; *Gill*, 2025 WL 287320, at *4 ("Specifically, the hyperlinks Chipotle argues gave Plaintiffs notice of the Arbitration Agreement are not in adequately contrasting font color or in all capital letters. Instead, the hyperlinks are merely underlined (on the website) or bolded (in the app).") (internal citations omitted); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481 (2021) ("Further, the hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital letters."); *Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1121 (N.D. Cal. 2024) ("Because Millionaire Match's links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous enough to put Mr. Massel on notice of the terms and that Mr. Massel therefore cannot be said to have assented to them."); *Lopez v. Dave Inc.*, 2022 WL 17089824, at *2 (N.D. Cal. Nov. 21, 2022), *aff'd*, 2023 WL 8594393 (9th Cir. Dec. 12, 2023) (finding "the sign-up page does not provide reasonably conspicuous notice of the fact that a hyperlink is present" because "[w]hile the term 'TOS' is underlined," there was no contrasting font color or capital letters) (cleaned up); *Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021) ("[T]he comparatively miniscule size of the typeface used to notify the purchaser that he is agreeing to certain 'Terms and Policies' and its light grey color render it practically unreadable.").

[4] It should also not be lost on the Court that this screen here would have been viewed on an iPhone that was no more than 6.7 inches in 2020. Claire Calvet, *iPhone Size Comparisons*, ECOATM (June 13, 2019), https://blog.ecoatm.com/iphone-size-comparisons/.

*2. The Hyperlink Is In A Tiny, Non-Contrasting Font*

Further emphasizing this conclusion is that the hyperlink is not in "contrasting font." Instead, again, it is in the same black font—perhaps, at best, a marginally lighter shade—as the adjacent text. The lack of a contrasting color weighs against notice. *Gill*, 2025 WL 287320, at *5 ("Chipotle's argument that the hyperlinks are sufficiently conspicuous because they are in dark brown typeface that contrasts with the white background misses the point—the problem here is that the hyperlinks are in the same or very similar shade of brown typeface as the rest of the surrounding text, making it not sufficiently clear that the text is a hyperlink.") (cleaned up); *see also Massel*, 718 F. Supp. 3d at 1121; *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466-67 (S.D.N.Y. 2017) ("The 'Terms of Service' are colored in light blue superimposed on a bright white background, making those 'Terms of Service' … even more difficult to read."); *Lee v. Plex, Inc.*, Case No. 5:24-cv-2386, ECF No. 47 at 7 (N.D. Cal. Mar. 28, 2025) ("[T]he Terms of Use and Privacy Policy appeared in the same gray font as the rest of the sentence, rather than in blue, the color typically used to signify the presence of a hyperlink.") (cleaned up).[5] To this end, the *Applebaum* decision provides a useful comparison:




**Aldin Decl. Ex. 9**




***Applebaum*, 263 F. Supp. 3d at 458**

[5] The *Lee* decision is attached hereto as **Exhibit 1**.

Likewise, *Lee* provides a useful comparison:




**Aldin Decl. Ex. 9**




***Lee*, Ex. 1, at 7**

In addition, even if the link is in a slightly different color,[6] "[u]sing a different color for the hyperlink from the surrounding text, by itself, is not sufficient to render the hyperlink reasonably conspicuous."). *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("I am not convinced that the mere change in color of the hyperlinks, without more, is enough."); *Applebaum*, 263 F. Supp. 3d at 467 ("Courts have required more than mere coloring to indicate the existence of a hyperlink to a contract."); *Rocha v. Urban Outfitters, Inc.*, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) ("[T]here was insufficient notice to Rocha, as the small grey font on a white background fails to draw a consumer's attention.").

---

[6] The "slightly lighter shade" in Defendant's screenshots may be the result of Defendant or its counsel clicking the hyperlink prior to submitting the screenshot to make it appear more conspicuous, which is not how the color of the hyperlink would appear to a normal user. Conversely, had Defendant filled in the form fields as a normal user would, the "Join Aaptiv" button would have lit up, this further diminishing notice.

*3. The Hyperlink Is A Considerable Distance From The Other Relevant Text And Buttons*

Also diminishing notice, and as in *Chabolla*, all of the boxes where the information is entered and the relevant "Join Aaptiv" button are grouped together at the top of the page and are significantly larger than the text in the paragraph containing the hyperlink. Altin Decl. Ex. 9. The hyperlink, by contrast, is in tiny font and as close to the bottom of the page as possible. *Id*. The user's eye would not be drawn to the bottom of the page and "for users (like [Plaintiff] who enter their [name, password, and] email address, the most obvious and natural next step is to click ["Join Aaptiv"] … and read no further." *Chabolla*, 129 F.4th at 1157.

Because the hyperlink is significantly below the form fields and "Join Aaptiv" button, "[i]t is not apparent that a user agrees or commits to anything on [the] screen [] other than sharing her email address" and "the notice [thus] seems to fade into the irrelevancy of other aspects of the page." *Id.*; *see also Goldstein*, 2021 WL 6617447, at *3 ("It is significant that Fandango's notice regarding the binding nature of its Terms and Policies was placed *beneath* the large, orange, all-capitalized, COMPLETE MY PURCHASE click button, rather than above it … It is not reasonable to expect a user to continue reading below the highly conspicuous purchase button.") (emphasis added); *Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041, at *7 (C.D. Cal. Nov. 3, 2023) ("[T]he color of the hyperlink cannot offset and compensate for the size of the hyperlink or the distance between the statement containing the hyperlink and the second button."); *Lee*, Ex. 1, at 7 ("[T]he notice was placed at the very bottom of the visible page, far below the 'Continue with Facebook' button that Plaintiff clicked to create his account."). The Ninth Circuit's binding decision in *Chabolla* provides the most useful analog:

//

//

//

//

//

//




**Aldin Decl. Ex. 9**




***Chabolla*, 129 F.4th at 1174**

*4. The Hyperlink Is The Least Prominent Element On The Page*

Last, the sign-up page contains much larger, more prominent elements that are "more likely to draw a consumer's attention." *Rocha*, 2024 WL 393486, at *5. These include the form fields that use significantly larger text and the large, blue "Join Aaptiv" button, both of which appear significantly above the hyperlink as noted above. Altin Decl. Ex. 9. Thus, "[t]he comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Berman*, 30 F.4th at 857; *see also Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (denying motion to compel arbitration where "the page contained four fillable fields for the user to input" and "the notice language at the bottom of the page is still the least conspicuous

part of the webpage, and nothing in the webpage draws the viewer's attention to it"); *Lee*, Ex. 1, at 7 (noting hyperlink, while "legible, [] is far less prominent than the colorful buttons that the user must click on to create an account"); *Cullinane v. Uber Tech., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) ("The inclusion of the additional payment option and the placement of a large blue PayPal button in the middle of the screen were more attention-grabbing and displaced the hyperlink to the bottom of the screen."); *Rocha*, 2024 WL 393486, at *5.

Here, the *Serrano* decision denying arbitration provides a useful comparison:




**Aldin Decl. Ex. 9**




***Serrano*, 666 F. Supp. 3d at 1093**

* * *

"These distinctions may seem picayune, but [app] operators like [Defendant] have ultimate control over their design decisions. Nothing requires them to present terms as subtle hyperlinks to separate pages instead of, say, requiring users to scroll through the actual terms before signing up."

*Massel*, 718 F. Supp. 3d at 1121." And "the onus must be on [app] owners to put users on notice of the terms to which they wish to bind consumers." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). Defendant's failure to do that here warrants denial of its Motion.

**C. Defendant's Arguments And Authorities Are Unpersuasive**

Defendant appears to argue that Plaintiff is bound by the its Terms of Use because "Plaintiff knew he was entering into an on-going relationship with Aaptiv." MTC at 10. This does nothing to cure Defendant's notice deficiencies because "even in the context of a forward-looking and continuing relationship, [Defendant] still had the obligation to ensure that the visual placement of the notice of the [] terms was conspicuous." *Ramirez v. Trusper, Inc.,* 2024 WL 4479862, at *4 (N.D. Cal. Oct. 11, 2024); *see also Keebaugh v. Warner Bros. Ent. Inc.*,100 F.4th 1005, 1014 (9th Cir. 2024) ("The context of the transaction is a *non-dispositive* factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous. Courts must still evaluate the visual aspects of the notice…") (emphasis added); *Morrison v. Yippee Entertainment, Inc.*, --- F. Supp. 3d --- 2024 WL 4647296 at *4 (S.D. Cal. Oct. 31, 2024) ("[T]he Court finds that a consumer would anticipate at least a limited ongoing relationship based upon their subscription … However, the Court must still analyze the hyperlink's visual placement to determine whether it is sufficiently conspicuous to put a 'reasonably prudent' user on notice. Ultimately, the Court concludes that Defendant did not provide Plaintiff with sufficient notice") (cleaned up).

Indeed, as the Ninth Circuit just held:

> We decline to find that Chabolla had zero indication her relationship with ClassPass would be ongoing. But we also decline to find that the nature of whatever relationship formed gave her reason to look for additional terms and conditions not explicitly listed on ClassPass's website. Given that it is ClassPass's burden to establish the existence of an agreement to arbitrate, and that the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers, we cannot find the vague nature of business with ClassPass alerted Chabolla to look for additional terms

*Chabolla*, 129 F.4th at 1157 (cleaned up); *see also Lee*, Ex. 1 at 7 ("Plaintiff's free subscription to Plex's streaming service did not portend any future purchases – let alone 'potentially unlimited' purchases.").

Further, the cases cited by Defendant are distinguishable. *First*, every decision cited by Defendant predates *Chabolla*, and all but two predate *Berman*.[7] Thus, any district court opinion that Defendant cites is no longer good law to the extent it conflicts with or contradicts *Chabolla* and *Berman*.

*Second*, the hyperlinks in the decisions cited by Defendant were significantly more conspicuous than the one here. The hyperlinks in many of Defendant's decisions were often bolded *and* in colors that contrasted with the font of the surrounding text, unlike here. *See*, *e.g.*, *Regan v. Pinger, Inc.*, 2021 WL 706465, at *1-2 (N.D. Cal. Feb. 23, 2021) (bolded, blue and green hyperlinks); *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021) (blue hyperlinks on many screens); *Dupler v. Orbitz, LLC*, 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018) ("The Terms of Use are hyperlinked in blue text, which stands out against the surrounding black text."); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110, at *3 (N.D. Cal. Aug. 15, 2017) ("[T]he words 'terms of use' are in blue font…").

The hyperlinks were also often "directly above or below the relevant action item in a manner disrupting the natural flow of actions" (*Chabolla*, 129 F.4th at 1157), rather than multiple lines down like here, or were presented next to a box that users must click. *See*, *e.g.*, *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *8 (hyperlinks directly above or below button and next to checkbox); *Regan*, 2021 WL 706465, at *1-2 (directly below button); *Dupler*, 2018 WL 6038309, at *3 ("[T]he text that puts customers on notice of the Terms of Use is conspicuously located directly above the 'Complete Booking' button."); *Pizarro*, 2022 WL 3357838, at *3 ("[T]he notice and hyperlink appear directly below the 'See My Rates' button…"); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 928 (N.D. Cal. 2024) ("[T]he hyperlinked terms are bolded, and … the notice is displayed directly below the action button."); *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005,

[7] One of those post-*Berman* decisions is *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022). That decision, however, "cited *Berman*" but appeared to ignore or "did not address the Ninth Circuit's statement that the notice must do more than simply underscore the hyperlinked text." *Serrano*, 666 F. Supp. 3d at 1097 n.1 (cleaned up). Thus, *Pizarro*'s analysis seems contradictory to *Berman*'s, and "*Berman*, of course, is binding precedent, while *Pizarro* is not." *Id.*

1021 (9th Cir. 2024) ("Directly beneath the operative Play button is the following: 'By tapping 'Play' I agree to the Terms of Service'"…).

Last, many of the cases Defendant cites involved hyperlinks on more visually simplistic pages, with few or no form fields to distract the user's attention from the hyperlink, unlike here. *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *8; *Regan*, 2021 WL 706465, at *1-2; *Keebaugh*, 100 F.4th at 1010-11.

**III. DEFENDANT HAS NOT MET ITS BURDEN TO SHOW PLAINTIFF AGREED TO ARBITRATE WITH DEFENDANT**

It is Defendant's burden to prove Plaintiff was on notice of the arbitration provision at issue. *Jackson* 65 F.4th at 1099. But the "evidence" provided by Defendant does not help Defendant meet that burden. The 2018 Terms, which Defendant contends apply to Plaintiff's account, are explicitly between an entity called "Aaptiv, Inc." and the user. Altin Decl. Exs. 5, 7. This contrasts with Defendant's current terms, which list "Pear Health Labs Inc. dba Aaptiv" as the contracting party. *Id.* Ex. 2.

Defendant does not explain its relationship to this entity or why it would be allowed to benefit from that entity's contracts. Defendant cannot show it was a third party beneficiary to this contract. *Scriber v. Ford Motor Co.*, 2023 WL 7348461, at *9 (S.D. Cal. Nov. 7, 2023) ("Language limiting the right to compel arbitration to a specific [customer] and a specific [signatory] … means that extraneous third parties may not compel arbitration.") (quoting *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948 (9th Cir. 2022)); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) ("[T]he parties to the contract must have expressly intended that the third party would benefit."). Defendant cannot show that even if became affiliated with "Aaptiv, Inc." at some later date, that would allow it to invoke the arbitration agreement. *See Revitch v. DIRECTV, LLC*, 977 F.3d 713, 715-16 (9th Cir. 2020) (affirming denial of motion to compel arbitration where "the contract between Revitch AT&T mobility did not reflect an intent to arbitrate the claim … against DIRECTV"). And to the extent there is ambiguity as to whether the arbitration clause can be invoked by Defendant, that ambiguity must be construed in Plaintiff's favor. *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 248 (2016) ("Where the drafter of a form contract has prepared an arbitration provision whose application to a

particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation.").

In addition, by failing to make these arguments in its Motion, Defendant has also waived any such arguments on reply. *See, e.g.*, *Lien v. City of San Diego*, 2021 WL 2072385, at *7 (S.D. Cal. May 24, 2021) ("The Court declines to consider this argument raised for the first time in the reply brief.") (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).

## IV. THE INCONSPICUOUS PLACEMENT OF THE ARBITRATION AGREEMENT ON PAGE SEVEN OF THE 2018 TERMS FURTHER WEIGHS AGAINST ENFORCEABILITY

The above reasons are more than enough to doom Defendant's Motion. Buteven if Defendant (i) had timely filed its Motion prior to litigating the merits of the case, (ii) had a sign-up page with a conspicuous hyperlink under California law, and (iii) could enforce the other entity's contract, it *still* could not compel Plaintiff to arbitration because the arbitration agreement is not enforceable.

The agreement to arbitrate is buried almost three-quarters of the way through the dense 11-page contract. Altin Decl. Exs. 5, 7. Though there is a mention of an agreement to arbitrate on the first page, neither that reference nor the actual agreement on page 7 are bolded, in capital letters, or are otherwise sufficiently set apart from the surrounding text. *Id*. This is icontrasts wither provisions on numerous pages of the contract, which are set apart by the use of capital letters.

The hiding of the arbitration provision in such a dense contract further weighs against the arbitration agreement's enforceability. *Ramirez*, 2024 WL 4479862 at *8 ("[T]he Court also highlights that the actual arbitration clause is buried in the fourteenth page of the Participation Agreement under a misleading title … This deficiency further supports Ramirez's position that [the defendant] failed to provide a reasonably conspicuous notice of the terms to which Ramirez could unambiguously manifest assent."); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) (finding unfair surprise where "TForce presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font" and "[n]othing in the text of the agreement called Lim's attention to the delegation clause, and Lim was not required to sign or initial that specific provision"); *Iravanian v. Translations.com, Inc.*, 687 F. Supp. 3d 871, 878 (N.D. Cal. 2023) ("[T]he arbitration agreement is located at the end of more than 40 individual paragraphs

with no visual markers to call Plaintiff's attention to it, and Plaintiff was not required to sign or initial that specific provision.").

## V. DEFENDANT MUST WITHDRAW ITS ARGUMENTS RELATED TO EXPRESS CONSENT

Separate and apart from arbitration, Defendant's MTC exposes a glaring weakness in Motion to Dismiss: that Defendant cannot claim Plaintiff consented to any wiretapping.

To recap, Defendant claimed Plaintiff consented to the wiretapping of his communications based on Defendant's Privacy Policy, "by which Plaintiff and other users provide *express consent* to the alleged third party disclosure." ECF No. 11 at 16:4-5 (emphasis added). As Plaintiff pointed out in his Opposition, "merely having a privacy policy online" is insufficient "to show consent under CIPA." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024). Instead, Defendant was required to submit the "the design and content of the portion of the App where users were notified of and assented to that Privacy Policy," which Defendant did not do. ECF No. 14 at 20:3-5.

It is now clear why Defendant wanted to improperly shift the burden onto Plaintiff. Defendant has now submitted the design and content of the sign-up page of its mobile application in both 2020 and in present day. *See* Altin Decl. Exs. 2, 9. Notably, ***a hyperlink to Defendant's Privacy Policy does not even appear on this page***. *Id*. Nor has Defendant shown ***anywhere*** on its application where such a hyperlink would appear.

As Plaintiff noted, "merely having a privacy policy online" is insufficient "to show consent under CIPA." *Cody*, 718 F. Supp. 3d at 1000. Defendant had to show that users agreed to the same via "a conspicuous hyperlink." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1197 (S.D. Cal. 2024); *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1358 (S.D. Cal. 2024) ("Where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.") (cleaned up). Defendant's presentation here shows there was *no hyperlink*, much less a conspicuous one, on Defendant's mobile application. Defendant's express consent argument is thus without a factual basis, and Defendant must withdraw that defense.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Dated: March 28, 2025

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*