Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Lucas Hori (State Bar No. 294373)
lhori@rutan.com
Talya Goldfinger (State Bar No. 294926)
tgoldfinger@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASRA SARHADI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PEAR HEALTH LABS, INC., d/b/a AAPTIV,<br><br>Defendant. | Case No. 3:24-cv-7921-TLT<br><br>Judge: Hon. Trina L. Thompson<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>**[Supplemental Declaration of Gregory Altin Filed Concurrently Herewith]**<br><br>Date: April 22, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 9<br><br>Date Action Filed: November 12, 2024<br>Trial Date: None Set |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

Page

I. PLAINTIFF HAD REASONABLY CONSPICUOUS NOTICE OF THE EULA .......... 2

A. The Context of Plaintiff's Ongoing Relationship with Aaptiv is a Key Factor and Strongly Supports Finding Reasonably Conspicuous Notice .......... 3

B. The Overall Design and Content of the Screen Strongly Supports a Finding of Reasonably Conspicuous Notice .......... 4

1. Aaptiv's Screen was Uncluttered and Lacked Any Other Elements .......... 4

2. The Hyperlink to the EULA on Aaptiv's Screen was Conspicuous .......... 6

II. AAPTIV HAS NOT WAIVED ITS RIGHT TO COMPEL ARBITRATION .......... 9

III. PLAINTIFF CANNOT AVOID ARBITRATION WITH AAPTIV AFTER HE CREATED AN ACCOUNT AND AGREED TO ARBITRATE WITH AAPTIV, INC .......... 11

IV. THERE IS NO BASIS TO CHALLENGE THE ARBITRATION AGREEMENT .......... 15

V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**


*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) ........ 5

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) ........ 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 2, 4, 5, 6, 9

*Chabolla v. ClassPass Inc.*,
2025 WL 630813 (9th Cir. Feb. 27, 2025) ........ 2, 4, 5, 6, 8

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ........ 7

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) ........ 6

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ........ 12, 13

*Fries v. Wells Fargo Bank*,
2024 WL 1816931 (C.D. Cal. Feb. 22, 2024) ........ 9

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ........ 3

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 287320 (C.D. Cal. Jan. 23, 2025) ........ 10

*Gregory v. Armstrong*,
2023 WL 11983324 (C.D. Cal. Nov. 28, 2023) ........ 11

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 1, 3, 4, 7

*Kersting v. UnitedHealth Grp.*,
2023 WL 4305127 (S.D. Cal. June 29, 2023) ........ 10

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 13

**Page(s)**

**FEDERAL CASES (CONT.)**

*Lee v. Plex, Inc.*,
Case No. 5:24-cv-2386, ECF No. 47 (N.D. Cal. Mar. 28, 2025) ..................... 2, 4, 7, 8

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016)........................................................................ 11

*Massel v. SuccessfulMatch.com*,
718 F. Supp. 3d 1112 (N.D. Cal. 2024) ............................................................ 7

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)........................................................................................ 11

*Nevarez v. Forty Niners Football Co.*,
2017 WL 3492110 (N.D. Cal. Aug. 15, 2017).................................................... 1

*Nutanix, Inc. v. Tessell, Inc.*,
No. 2025 WL 793652 (N.D. Cal. Mar. 12, 2025)............................................. 14

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........................................................................ 3, 4

*Parsittie v. Schneider Logistics, Inc.*,
2023 WL 2629869 (C.D. Cal. Feb. 8, 2023)................................................ 9, 13

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. Dec. 2, 2024).............................................. 4, 14, 15

*Rocha v. Urb. Outfitters, Inc.*,
2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ......................................................... 9

*Sauer v. Experian Info. Sols., Inc.*,
2022 WL 2163016 (C.D. Cal. May 12, 2022) .................................................. 12

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) ............................................................. 9

*Strehl v. Guitar Ctr., Inc.*,
2023 WL 9700041 (C.D. Cal. Nov. 3, 2023)................................................... 5, 8

*Support Cmty., Inc. v. MPH Int'l, LLC*,
2025 WL 547380 (9th Cir. Feb. 19, 2025)........................................................ 10

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) ................................................................. 6

**Page(s)**

**CALIFORNIA CASES**

*Inc. v. Superior Ct.*,
79 Cal. App. 4th 553 (2000) .......... 10, 11

*Kaneko Ford Design v. Citipark, Inc.*,
202 Cal. App. 3d 1220 (1988).......... 11

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1 (2021) .......... 3, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's myopic Opposition ignores anything Plaintiff cannot explain. Defendant Pear Health Labs, Inc., d/b/a Aaptiv ("Aaptiv") moved to compel arbitration based on the parties' End User License Agreement (the "EULA") that Plaintiff agreed to through an enforceable sign-in wrap agreement when he created an account on Aaptiv's App. While Plaintiff does not dispute that sign-in wrap agreements are enforceable, he claims that Aaptiv's screen did not provide him with reasonably conspicuous notice of the EULA. Plaintiff's argument sidesteps context and controlling caselaw.

Plaintiff had conspicuous notice of the EULA for numerous reasons. Because Plaintiff downloaded the Aaptiv App and created an ongoing Aaptiv account, he should have expected his use of the Aaptiv App to be governed by terms of service, as is commonplace. Out of all of the authority cited by both Aaptiv and Plaintiff, the instant case is the only situation dealing with a user who both downloaded the defendant's app and signed up for a paid relationship with the defendant lasting over four years. Moreover, because Aaptiv's sign-in screen was uncluttered, contained no distracting images or alternate links, contained no intervening text between the "Join Aaptiv" button and the notice, and utilized common features denoting a hyperlink to the EULA, Plaintiff reasonably should have seen Aaptiv's notice of the terms to which he was agreeing by signing up. Out of all of the authority cited by both Aaptiv and Plaintiff, Aaptiv's sign-in screen is perhaps the least cluttered and one of only a few cases (all of which compelled arbitration) where the notice appeared on a single line, in a single sentence, and without any other links or notices. *See, e.g. Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1010 (9th Cir. 2024); *Nevarez v. Forty Niners Football Co., 2*017 WL 3492110, at *2 (N.D. Cal. Aug. 15, 2017). Given all these contextual factors, if the Court were to find that Aaptiv's sign-in screen did not provide Plaintiff with reasonably conspicuous, it would be tantamount to eviscerating the enforceability of sign-in wrap agreements altogether.

Rather than addressing the context of his transaction with Aaptiv and the sign-in screen in which the notice of the EULA appeared, Plaintiff focuses only on minutia related to the hyperlink for the EULA, arguing it was not blue enough and not close enough to the "Join Aaptiv" button. Not only are these assertions untrue and unsupported, Plaintiff misses the bigger picture of both the

screen and the transaction. Plaintiff also ignores the numerous authorities cited in Aaptiv's motion, including from the Ninth Circuit, with analogous screens and transactions. Instead, Plaintiff cites authorities dealing with one-off transactions and confusing, cluttered screens. The clarity of Aaptiv's notice is evident just by looking at the screen and bears no resemblance to the screens from Plaintiff's cited caselaw, images of which are attached in the appendices hereto.

The Court should enforce the parties' agreement, compel arbitration, and dismiss Plaintiff's claims.[1]

## I. PLAINTIFF HAD REASONABLY CONSPICUOUS NOTICE OF THE EULA.

Plaintiff does not dispute that the Federal Arbitration Act applies and embodies a strong public policy favoring arbitration. *See* Motion at 6. Plaintiff does not dispute that the screen attached to the Altin Declaration at Exhibit 9 was the screen he saw in 2020 when he downloaded the Aaptiv App and created an Aaptiv account. Nor does Plaintiff dispute the abundant and recent cases finding that sign-in wrap agreements like the one at issue here are enforceable because they provide reasonably conspicuous notice to the user. *See* Motion at 7. Finally, Plaintiff does not dispute that the notice Aaptiv provided of the EULA (i.e., "By joining Aaptiv, you agree to our Terms of Service") was clearly written and that clicking the "Join Aaptiv" button on Aaptiv's sign-in screen unambiguously manifested his assent to the EULA. *See* Motion at 14.[2] Thus, Plaintiff's Opposition centers on this sole issue of whether Plaintiff had reasonably conspicuous notice of the EULA. In making this determination, courts look to both the context of the transaction and the

---

[1] Plaintiff does not dispute that dismissal is proper after arbitration is compelled. *See* Motion at 19-20.

[2] On the other hand, an unclear notice was a key reason the courts in Plaintiff's cited authorities refused to compel arbitration. *See Chabolla v. ClassPass Inc.*, 2025 WL 630813, at *8 (9th Cir. Feb. 27, 2025) (screen stated "by signing up you agree to our Terms of Use and Privacy Policy" but there was no "sign up" button only a "Continue" button. "At no point on any screen is a user advised that a particular action has 'signed her up' or will 'sign her up'"); *Lee v. Plex, Inc.*, Case No. 5:24-cv-2386, ECF No. 47 at 9 (N.D. Cal. Mar. 28, 2025) (neither page "clearly indicated to Plaintiff what action would constitute assent to the terms of the service and privacy policy. . . . The notice language at the bottom of the Sign-Up Page states: 'By creating an account or continuing to use a Plex application, website, or software, you acknowledge and agree that you have accepted the **Terms of Service** and **Privacy Policy**.' In context, this language is ambiguous because it describes two actions that constitute assent, but neither matches the 'Continue with Facebook' button that Plaintiff clicked.") (citations omitted); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022) ("Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent to those terms and conditions.").

context of the notice's appearance on the sign-in screen. *See* Motion at 8.

**A. The Context of Plaintiff's Ongoing Relationship with Aaptiv is a Key Factor and Strongly Supports Finding Reasonably Conspicuous Notice.**

That Plaintiff here both (1) downloaded the Aaptiv App and (2) created an account with Aaptiv to use the Aaptiv App on a continuous basis for over four years (Complaint ¶¶ 86, 93) strongly support a finding that Plaintiff had reasonably conspicuous notice of the EULA. Ninth Circuit precedent establishes that "the full context of the transaction is critical, because transactions in which a consumer is signing up for an ongoing account, makes it reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship." *Keebaugh*, 100 F.4th at 1016 (quotations omitted); *see also*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925 (N.D. Cal. 2024) ("The transactional context 'is key to determining the expectations of a typical consumer.'").

In *Keebaugh*, the Ninth Circuit found that, even where the user did not create an account with Warner Bros., the context of the transaction still supported a finding of reasonably conspicuous notice because "[n]o reasonably prudent internet user—one who is likely often exposed to similar online agreements—would consider downloading and playing a potentially endless mobile game to be equivalent to an insular and discrete one-time transaction." *Keebaugh*, 100 F.4th at 1020. Further, the court held that "[t]he nature of downloading a mobile game to one's phone is different than simply accessing a website. When downloading an app to one's own device, the prudent internet user necessarily anticipates ongoing access to that app at the user's discretion … An app is different from a typical one-and-done interaction between the user and a traditional website[.]" *Id.* *See also*, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) ("in contrast with the noncommittal free trial offered in *Sellers*, the context of this transaction, requiring a full registration process, reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship."). Plaintiff both downloaded the Aaptiv App and, unlike in *Keebaugh*, created an Aaptiv account. *See* Complaint ¶ 86.

Unlike here, the so-called "binding cases" cited by Plaintiff did not involve continuing relationships. *See* Opp. at 4, *citing Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 869 (9th

Cir. 2022) (Baker, J. concurring) ("In this case involving one-off transactions, reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print."); *Chabolla v. ClassPass Inc.*, 2025 WL 630813, at *5 (9th Cir. Feb. 27, 2025) ("The transaction could easily be considered a one-time purchase of credits at a discounted rate to be traded in at gyms and studios, rather than the formation of an ongoing relationship with ClassPass."); *Lee v. Plex, Inc.*, Case No. 5:24-cv-2386, ECF No. 47 at 6 (N.D. Cal. Mar. 28, 2025) (attached as Plaintiff's Exhibit 1) (plaintiff "did not enter into a paid membership plan that involved ongoing transactions – or even a single paid transaction . . . Plaintiff had no 'reason to look for additional terms and conditions not explicitly listed on [Plex's] website.'") (citations omitted).

Having no response to these facts or authorities, Plaintiff ignores them. Plaintiff asserts that the context of the transaction here "does nothing to cure Defendant's notice deficiencies[.]" Opp. at 14. But the context is an "important factor" and "key" element in determining that Aaptiv's notice was conspicuous. *See Keebaugh*, 100 F.4th at 1019. Because Plaintiff created an Aaptiv account for a paid, long-term subscription service with Aaptiv, and separately because Plaintiff also downloaded the Aaptiv App, Plaintiff was on notice that terms of service to governed his relationship with Aaptiv.

**B. <u>The Overall Design and Content of the Screen Strongly Supports a Finding of Reasonably Conspicuous Notice.</u>**

"[A]s the Ninth Circuit has said in later cases [to *Berman*], reasonably conspicuous notice requires looking at the context of the overall design and content of the website." *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *1 (N.D. Cal. Dec. 2, 2024), *citing Keebaugh*, 100 F.4th at 1020. "This court looks to the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in determining whether there was reasonable conspicuous notice. *Oberstein*, 60 F.4th at 515. In other words, it is not sufficient to look only at the hyperlink itself. The Court must consider the notice in the context of the entire sign-in screen.

**1. Aaptiv's Screen was Uncluttered and Lacked Any Other Elements.**

Aaptiv's sign-in screen was sparse. It consisted of a white background with boxes for the

user to fill in his name and email, a "Join Aaptiv" button for the user to click, and the notice of the EULA. Declaration of Gregory Altin ("Altin Decl.") Ex. 9. The screen did not include any graphics or distracting images. The screen did not include any other hyperlinks. And, the screen did not include any other notices or fine print. In fact, other than the boxes and the "Join Aaptiv" button, the notice of the EULA was the only text on the entire page. *Id*.

The same cannot be said of any of the cases cited by Plaintiff. In *Berman*, the website was full of "other visual elements [that] draw the user's attention away from the most important part of the page" and the notice was "buried in fine print." *Berman*, 30 F.4th at 857. Plaintiff in his Opposition misleadingly uses only a portion of the actual sign-in page from *Berman*, cutting off the large portion of fine print on the page. And yet, even this deceptively edited image still shows a sign-in page that is much more cluttered than Aaptiv's sign-in screen. *Compare* Altin Decl. Ex. 9 *with* Opp. at 5. The full image from *Berman* is attached as Appendix A hereto.

Similarly, in *Chabolla*, the screen was "crowded" and the notice was obscured by other images and intervening and muddled text about signing up with Facebook or language regarding gift cards. *Chabolla*, 129 F.4th at 1157. Again, Plaintiff's Opposition uses a deceptively cropped image of the screen in *Chabolla* that cuts off all of the distracting images. *See* Opp. at 12. But even this cropped image from *Chabolla* shows a sign-in screen filled with other notices, other fine print, and other buttons that Aaptiv's screen lacked. Plaintiff also provides numerous other examples of screens that are crowded and/or contain other distracting images and text. *See, e.g., Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480-81 (2021) (in addition to the context of the transaction not "contemplat[ing] some sort of continuing relationship", the screen was cluttered and the notice appeared "outside the white box containing the payment fields where the consumer's attention would necessarily be focused."); *Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041, at *7 (C.D. Cal. Nov. 3, 2023) (other elements "draw[s] the user's attention away from the Purchase Terms hyperlink). The full images of the screens in these decisions are also included in the attached Appendices B-D.[3]

[3] Plaintiff also relies on cases from other jurisdictions, despite this being an issue of California contract interpretation. *See* Motion at 6-7. Plaintiff does not explain why these cases should apply, but in any event, the reasonings from those decisions are not applicable here. *See Applebaum v.*

Plaintiff's efforts to distinguish Aaptiv's numerous authorities is equally unavailing. Plaintiff ignores some of Aaptiv's cited cases altogether and dismisses others as "predate[ing]" *Chabolla* and *Berman*. Opp. at 31. This distinction is immaterial because neither *Chabolla* nor *Berman* rejected the well-established authority requiring the Court to consider both the context of the transaction and the overall look of the screen. Plaintiff also tries to distinguish Aaptiv's cited cases based only on the look of the hyperlinks. *See* Opp. at 31-32. As explained further below, distinctions like the color used in a hyperlink are unimportant.

**2. The Hyperlink to the EULA on Aaptiv's Screen was Conspicuous.**

Aaptiv's sign-in screen provided notice of the EULA in a single, clear sentence on a single line. The user was not required to scroll to see the notice. There was no intervening text, boxes, or buttons between the "Join Aaptiv' button and the notice. The hyperlink to the EULA within the notice (the only hyperlink on the whole page) was contrasted from the other text by underlining, capital case lettering, and a dark blue font. *See* Altin Decl. Ex. 9.[4] And, of course, all of these elements appeared in the context of an uncluttered screen.

Ignoring both the context of his transaction with Aaptiv and the context of Aaptiv's screen in which the notice appeared, Plaintiff focuses solely on Aaptiv's hyperlink to the EULA. Plaintiff claims "the Hyperlink was too inconspicuous to put Plaintiff on notice" for four reasons (*see* Opp. at 4-14, capitalization removed), none of which has merit.

First, Plaintiff argues that "simply underlining hyperlinks is not sufficient for notice." Opp. at 8 (capitalization removed). This is a strawman because Aaptiv has never claimed that its notice

---

*Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) (New York law; the screen "was misleading" because it "was titled in bold terms '**Add Phone Number.**' . . . A reasonable consumer would have thought that the consumer had agreed to be contacted by Lyft, specifically, to receive a text message from the company."); *Wilson v. Redbox Automated Retail, LLC,* 448 F. Supp. 3d 873, 884 (N.D. Ill. 2020) (Illinois law; "Moreover, there are two other buttons between the 'Pay Now' button and the link to the Terms of Use. Those buttons perform functions entirely unrelated to the function by which a Redbox customer manifests assent to the Terms of Use—i.e., making payment."); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 64 (1st Cir. 2018) (Massachusetts law; "the 'Link Card' and 'Link Payment' screens were filled with other very noticeable terms that diminished the conspicuousness of the 'Terms of Service & Privacy Policy' hyperlink and the notice").

[4] Plaintiff claims that the screen "would have been viewed on an iPhone that was no more than 6.7 inches in 2020." (Opp. at 8, n. 4.) The attached Appendix E includes an image of Aaptiv's sign-in screen in roughly the dimensions of an iPhone 11. The text is not only legible, it also would have been viewed from a close distance when Plaintiff held his phone.

was conspicuous only because the hyperlink to the EULA was underlined. To the contrary, Aaptiv has established that its notice was conspicuous because of all the contextual factors detailed above as set forth in the Motion. Moreover, Aaptiv's hyperlink here was more than just underlined. The words "Terms of Service" used capitalized letters that contrasted with the rest of the notice sentence and used dark blue font, both of which are indicative of a hyperlink. *See* Motion at 10.

Second, Plaintiff argues that Aaptiv's notice was "tiny" and in a "non-contrasting font." Opp. at 9. This argument is, first and foremost, untrue. Aaptiv's notice was in a legible size, the notice was written in black ink against a white background, and the hyperlink to the EULA within that notice was written in dark blue ink. *See* Altin Decl. Ex. 9.[5] Moreover, Plaintiff does not and cannot cite any authority dictating a specific color or font size that must be used for a hyperlink to be conspicuous. In the Ninth Circuit's *Keebaugh*, for example, the notice was written in small lettering to be viewed on a phone and the hyperlink was written in the exact same color white as the notice itself. The court found this to be conspicuous because the entire notice contrasted with the dark background of the app screen. *Keebaugh*, 100 F.4th at 1021. Here, even if Aaptiv's hyperlink were not written in blue ink (and capitalized and underlined), the entirety of the black notice stood out against the white screen.

*Massel*, *Colgate*, and *Lee*, all cited by Plaintiff, are good illustrations of how context is important even when only evaluating the hyperlink on a sign-in screen as Plaintiff does here. In all of these cases, the courts found the hyperlinks to be inconspicuous not because they lacked a certain color or size, but because *other* hyperlinks or notices on the same page contained design elements that made them more conspicuous than the relevant hyperlinks. *See Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1121 (N.D. Cal. 2024) ("This conclusion is bolstered by the fact that other links on the signup page appear in all capital letters while the links to the Service Agreement and Privacy Policy are in title case."); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 766 (N.D. Cal. 2019) ("A reasonable user scanning the page would first see the "Forgot Password?" hyperlink and would observe that it is a different color, underlined, and of a particular font size. That user would

[5] Plaintiff claims that the hyperlink may have turned blue because "Defendant or its counsel click[ed] the hyperlink prior to submitting the screenshot to make it appear more conspicuous[.]" Opp. at 10, n. 6. Not so. *See* Supplemental Declaration of Gregory Altin, ¶ 3.

not then see the "Terms and Conditions" and "Privacy Policy" hyperlinks and conclude that they were clickable. They are not underlined, they are the same size as the sentence they are in, and the color is different from the initial hyperlink they would see."); *Lee*, Case No. 5:24-cv-2386, ECF No. 47 at 7-8 ("the same bolded gray font" used to denote a hyperlink to the Terms of Use "is also used for other elements of the Sign-Up Page that do not appear to be hyperlinks – namely, the text that states 'Email address' and 'Create password.'"). These findings are not applicable here where Aaptiv's sign-in page contained no other links or terms.

Third, Plaintiff argues that the hyperlink is a "considerable distance" from the other relevant text and buttons, but sites no useful authority for why any supposed distance should be relevant on a screen like Aaptiv's where the entire sign-in screen appeared on one, uncluttered page on an iPhone with no intervening text, links, or buttons between the "Join Aaptiv" button and the notice. By contrast, in both *Lee* and *Chabolla* that Plaintiff claims are "useful" comparisons, the sign-in screens contained other, intervening text or buttons before the notice. *See Chabolla*, 129 F.4th at 1157 ("The user is directed to the action box in the right third of the page and must enter an email to continue. . . . If a user continued to read down the page, they would see an option to 'Sign up with Facebook.' The notice of additional terms is found below the 'Sign up with Facebook' option, on the periphery of where a user intending to use their email would be looking. A reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook."); *Lee*, Case No. 5:24-cv-2386, ECF No. 47 at 4 (Plaintiff clicked "Continue with Facebook" button. Below that was a button "Continue with Apple," spaces to enter an email and password, a button that stated "Create an Account," a notice that stated "Already have an account? **Sign in**" with a hyperlink, and "[b]elow all this text" was the relevant notice). *See also*, *Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041, at *2 (C.D. Cal. Nov. 3, 2023) ("the user must either zoom out or scroll down in order to view" the notice). Moreover, Aaptiv's notice would have appeared directly above Plaintiff's iPhone's home button, where his eyes would be naturally drawn.

Fourth, and finally, Plaintiff claims that the hyperlink is the least prominent element on the page. This argument is misleading because the single-sentence notice (and hyperlink therein) is the *only* element on Aaptiv's sign-in screen other than the form fields and the "Join Aaptiv" button. In

Plaintiff's examples, by contrast, the sign-in screens all provided other, more prominent notices or links. *See, e.g. Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) ("Underneath those fields was a purple button with white text stating, 'Sign Up.' Below that in black underlined text was the line, 'Already have an account? Sign in.' Finally, below that, smaller and lighter text stated, 'By creating an account, you agree to the Amuse Privacy Policy and Terms of Use. You also agree to receive SMS messages related to your account. Standard message and data rates apply.'"); *Rocha v. Urb. Outfitters, Inc.*, 2024 WL 393486, at *5 (N.D. Cal. Feb. 1, 2024) ("the page where Urban Outfitters includes the disclosure (that placing an order constitutes an agreement to arbitrate) contains other information that is more likely to draw a consumer's attention. The page includes the order summary, contact, shipping, and payment information, options to select delivery dates, and other clickable boxes such as an option to opt-in to receive text messages and to add a 'promo code.' … Additionally, as in *Berman*, the disclosure is sandwiched between other larger elements: a considerably larger 'place order' box and larger, darker text with the option to enter a 'promo code.'").

Thus, Plaintiff had reasonably conspicuous notice of the EULA because, by downloading the Aaptiv App and signing up for an Aaptiv account, he should have reasonably expected that his relationship with Aaptiv would be governed by certain terms. In doing so, he was then presented with an uncluttered screen that provided no other notices except to the EULA he was already expecting to see. And, even if all the contextual factors were ignored, Plaintiff saw a single, clear notice sentence, written in black ink on a white screen, that included an underlined, capitalized, and contrasting hyperlink to the EULA.

## II. AAPTIV HAS NOT WAIVED ITS RIGHT TO COMPEL ARBITRATION.

"Plaintiff ignores the fact that it is ***his*** 'heavy burden' to establish waiver." *Parsittie v. Schneider Logistics, Inc.*, 2023 WL 2629869, at *4 (C.D. Cal. Feb. 8, 2023) (emphasis in original). Plaintiff does not and cannot cite a single case where the mere filing of a motion to dismiss constituted waiver of the right to arbitrate. To the contrary, numerous authorities – including those already cited by Aaptiv in its Motion and unrefuted by Plaintiff – have determined that "[t]he simple fact that [defendant] filed a motion to dismiss does not decide the issue of waiver." *Fries v. Wells*

*Fargo Bank*, 2024 WL 1816931, at *3 (C.D. Cal. Feb. 22, 2024); *see also*, Motion at 20, n. 4.

Nor are any of Plaintiff's authorities analogous to the instant case, where Aaptiv moved to compel arbitration only four months after Plaintiff filed his Complaint, Aaptiv did not engage in any discovery, and Aaptiv did not actively engage in litigation, save to file one motion to dismiss without prejudice to avoid default, and that will be heard at the same time as this Motion. *See* Opp. at 3-4, *citing Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (defendants "spent seventeen months litigating" including answering discovery and conducting a deposition); *Support Cmty., Inc. v. MPH Int'l, LLC*, 2025 WL 547380, at *1 (9th Cir. Feb. 19, 2025) (defendant waited 10 months after its default was set aside, moved to dismiss with prejudice, removed to federal court, and asserted six counterclaims); *Guess?, Inc. v. Superior Ct.*, 79 Cal. App. 4th 553, 558 (2000) (defendant "fully participated in the discovery process", including objecting to interrogatories and cross-examining deponents); *Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *5 (C.D. Cal. Jan. 23, 2025) (not finding any waiver of the right to arbitrate).

Aaptiv further stipulated to stay the case, including setting case management dates. *See* Motion at 20, n. 4, *citing Dhaliwal v. Ace Hardware Corp.*, 2023 WL 2555471, at *3-4 (E.D. Cal. Mar. 17, 2023) ("If anything, defendants' decision to stipulate to the stay of discovery supports the view that they did not seek to take advantage of federal discovery procedures that are not available in arbitration"); *Kersting v. UnitedHealth Grp.*, 2023 WL 4305127, at *8–9 (S.D. Cal. June 29, 2023). And, Aaptiv filed its Motion almost two weeks prior to the deadline as set forth in the Scheduling Order. Dkt. 22 at 2. Plaintiff cites no authority (because none exists) in which a party was held to have waived its right to arbitrate when the party moved to compel arbitration prior to the court's deadline.

Aaptiv also repeatedly and unambiguously asserted its plan to move to compel arbitration, including in its Motion to Dismiss, in a demand letter to Plaintiff, in its initial disclosures, in the parties' joint statement, and to the Court during the CMC. *See* Motion at 20, n. 4. Plaintiff does not dispute that he was aware of Aaptiv's intention to move to arbitrate, but Plaintiff claims that Aaptiv's repeated statements as to its intentions are "irrelevant." Opp. at 3. Not only is Plaintiff's argument unsupported, it is contrary to the numerous authorities cited by both Aaptiv and Plaintiff.

*See* Motion at 20, n. 4, *citing, e.g., Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (no waiver where defendant "explicitly and repeatedly stated its intent to move to compel arbitration in both case management statements and in the initial case management conference before the district court"); *Gregory v. Armstrong*, 2023 WL 11983324, at *9 (C.D. Cal. Nov. 28, 2023) ("a defendant who is 'consistently vocal about its intent to move to compel arbitration' generally has not made a conscious decision to seek judicial judgment on the merits of a claim"). *Compare* Opp. at 3-4, *citing*, *e.g., Yasuda*, 829 F.3d at 1126 ("defendants did not even note their right to arbitration until almost a year into the litigation and did not move to enforce that right until well after that time"); *Guess?*, 79 Cal. App. 4th at 558 (defendant "remained mute on the subject of arbitration but vocal, in court and out, on the subject of its other objections"); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 414-15 (2022) (defendant answered the complaint, asserted 14 affirmative defenses "but none mentioning the arbitration agreement" and waited almost eight months); *Kaneko Ford Design v. Citipark, Inc.*, 202 Cal. App. 3d 1220, 1228-29 (1988) (*plaintiff* waived its right to arbitrate by waiting five and half months after filing the complaint and failing to notify defendant, who answered the complaint, of its intent to arbitrate).

In this regard, Plaintiff's efforts to paint Aaptiv's actions as a nefarious attempt to gain some unknown advantage fall flat. Aaptiv did not "force Plaintiff to oppose to the MTD" or wait "to asses the strength of the MTD" as Plaintiff claims. *See* Opp. at 2. To the contrary, Aaptiv offered to delay the briefing on the MTD but Plaintiff refused. Declaration of Talya Goldfinger ¶¶ 2-3, Exs. 1-2. In actuality, Aaptiv submitted substantial evidence with its Motion to Compel and needed time to collect this evidence, particularly because Plaintiff claims he signed up for the Aaptiv App over four years ago. (Notably, Plaintiff does not dispute this evidence.) Aaptiv then promptly and timely moved to compel arbitration two days after the parties' unsuccessful mediation. That is not waiver.

## III. <u>PLAINTIFF CANNOT AVOID ARBITRATION WITH AAPTIV AFTER HE CREATED AN ACCOUNT AND AGREED TO ARBITRATE WITH AAPTIV, INC.</u>

Next, Plaintiff asserts that Aaptiv cannot enforce the arbitration agreement because the 2018 EULA is between the user and "Aaptiv, Inc." instead of "Pear Health Labs Inc. dba Aaptiv." Opp. at 16. In other words, even though Plaintiff created an account on the Aaptiv App in 2020 with

Aaptiv, Inc., and even though Plaintiff's claims are based on his use of that Aaptiv App, and even though Plaintiff alleges that defendant Aaptiv "own[s] and operate[s]" Aaptiv (Complaint ¶ 4), and even though Plaintiff has allegedly used the Aaptiv App continuously since 2020, including after its terms were updated to include defendant Aaptiv (*see* Opp. at 16), Plaintiff somehow claims that he should not be bound by this agreement with Aaptiv, Inc.

As an initial matter, Plaintiff does not dispute that the later, 2023 EULA is between the user and defendant "Pear Health Labs Inc. dba Aaptiv" (*see* Altin Decl. Ex. 2), or that Plaintiff continued using the Aaptiv App after the EULA was updated. *See* Complaint ¶ 93 ("Plaintiff used the App regularly from June 2020 to September 2024); Altin Decl. ¶ 13 (Aaptiv updated its terms of use in 2023). Plaintiff does not and cannot explain why he is not equally bound by the 2023 EULA as the 2018 EULA. The progression here is simple. Plaintiff signed up for the Aaptiv App when it was owned and controlled by Aaptiv, Inc. and he continued using it after it became owned and controlled by defendant Aaptiv (*see* Supplemental Declaration of Gregory Altin ("Supp. Altin Decl.") ¶ 2) – all the while being governed by a EULA with an arbitration agreement. In fact, Plaintiff even implicitly consented to any changes in the 2018 EULA, which provides a clear process for Plaintiff to oppose modifications to the agreement that Plaintiff does not even claim to have followed. *See* Altin Decl. Ex. 7 at 8. Moreover, the 2018 EULA provided that it would "inure to the benefit of our successors and assigns." *Id*. at 10.[6]

But even ignoring the 2023 EULA and the actual provisions of the 2018 EULA, Plaintiff should be equitably estopped from arguing that the 2018 EULA does not apply to him given his claims in this case. "California law ... allows a nonsignatory to invoke arbitration under the doctrine of equitable estoppel even when a signatory 'attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants.'" *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71

[6] To the extent there is any dispute about whether Aaptiv is a successor or assign of Aaptiv, Inc., it should be decided by the arbitrator because the parties agreed to delegate issues of arbitrability. *See* Motion at 14-16; *Sauer v. Experian Info. Sols., Inc.*, 2022 WL 2163016, at *3 (C.D. Cal. May 12, 2022) ("The language in the arbitration provision demands that the arbitrator decide threshold issues, such as whether, as an affiliate, Experian is considered a third-party beneficiary within the scope of the Arbitration Agreement.").

(9th Cir. 2021). Equitable estoppel applies in two circumstances, both of which apply here: (1) when the signatory's claims are "intimately founded in and intertwined with" the underlying contract; and (2) when the signatory "alleges substantially interdependent and concerted misconduct by the nonsignatory[.]" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (citations and quotations omitted). Here, both situations apply.

First, Plaintiff's claims of data sharing depend on the Court finding a lack of consent. As explained in the Motion to Dismiss, Plaintiff's claims only prohibit data sharing without consent and so lack of consent is an essential, express element of these claims. Dkt. 11 at 15. Indeed, Plaintiff repeatedly pleads (albeit in a conclusory fashion) that his data was shared without consent. *E.g.,* Complaint ¶¶ 89 (recording "begins the moment a user accesses or interacts with Defendant's Website, prior to a user consenting to any sort of privacy policy"), 90 ("Plaintiff was thus not on notice of any wiretapping when he began entering information into Defendants' App, nor did he provide prior consent"), 94 ("Plaintiff never consented, agreed, nor otherwise permitted" the alleged disclosure), 114 (Plaintiff "did not provide Defendant with any form of consent"), 126 (Plaintiff "did not provide [his] prior consent). The EULA is directly relevant to the issue of consent because it links to and incorporates Aaptiv's Privacy Policy. *See* Altin Decl. Ex. 7 at 1 ("you consent to the collection, use, and disclosure of your personally identifiable information in accordance with Aaptiv's Privacy Policy available at https:www.aaptiv.com/privacy"; "Privacy Policy. Your access to and use of the Service is also subject to Aaptiv's Privacy Policy, the terms and conditions of which are incorporated herein by reference."). Plaintiff's claims are therefore intertwined with the 2018 EULA because he will need show that he did not consent to any data sharing, despite being on notice of, and providing his consent to, Aaptiv's Privacy Policy in the 2018 EULA.[7] *See Parsittie*, 2023 WL 2629869, at *7 ("because a factfinder would need information" related to the contract, "Plaintiff's claims are 'intimately founded in and intertwined with' the contract").

In fact, this Court recently compelled arbitration of Plaintiff's same data sharing claims for

[7] Plaintiff's claims are so intertwined with the EULA and the Privacy Policy referenced therein that Plaintiff in his Opposition claims Aaptiv should withdraw its arguments about consent in its Motion to Dismiss. *See* Opp. 18. This claim, of course, mischaracterizes Aaptiv's argument in the Motion to Dismiss, which concerned whether Plaintiff adequately pleaded a lack of consent, not whether actual consent existed.

the same reason. Plaintiff's counsel brought suit against Twilio, Inc. (with whom Aaptiv is alleged to have shared data), alleging violations of CIPA based on non-party Keeps alleged data sharing with Twilio. The court compelled arbitration based on an arbitration provision in Keeps' – not Twilio's – terms of service, finding that the plaintiff was equitably estopped from avoiding arbitration. The court found that, like here, both circumstances applied to equitably estop plaintiff from avoiding arbitration. "Although the agreement was between [Plaintiff] and [Aaptiv, Inc.], the alleged misconduct here is connected to that agreement because it governed [Plaintiff]'s relationship with—and data-sharing to—[Aaptiv, Inc.]. So, even though [Plaintiff] brings suit only against [Aaptiv], his claims are intimately founded in and intertwined with his agreement with [Aaptiv, Inc.] because consent is an element to each claim, and [Aaptiv] asserts that [Plaintiff] consented to having [Aaptiv, Inc.] share his data to Twilio through his agreement to the [EULA]. And while [Plaintiff] does not mention the Privacy Policy or the [EULA] in his Complaint, parties may not plead around equitable estoppel." *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024). *See also, Nutanix, Inc. v. Tessell, Inc.*, No. 2025 WL 793652, at *5 (N.D. Cal. Mar. 12, 2025) (copyright claim was intertwined with employment contract containing arbitration provision because the claim relied on the work-for-hire doctrine).

Second, Plaintiff alleges substantially interdependent and concerted misconduct by Defendant Aaptiv and Aaptiv, Inc. As noted, when Plaintiff allegedly downloaded the Aaptiv App, signed up for an Aaptiv account, and entered his personal information into the Aaptiv App in 2020, the Aaptiv App was owned and controlled by Aaptiv, Inc. *See* Supp. Altin Decl. ¶ 2. According to Plaintiff, this is when the allegedly infringing and unconsented data sharing began, and it supposedly continued until the present day, when the Aaptiv App is now owned by defendant Aaptiv. *Id.*; Complaint ¶¶ 86-97. According to Plaintiff's own pleadings, then, defendant Aaptiv is alleged to have shared the personal information that Plaintiff gave to Aaptiv, Inc. Thus, Plaintiff's allegations of conduct going back to 2020 are based on intertwined misconduct between defendant Aaptiv and Aaptiv, Inc.

> "The linchpin for equitable estoppel is equity—fairness. Permitting [defendant Aaptiv] to equitably enforce the arbitration agreement in this case would be fairer than permitting [Plaintiff] to skirt its

> agreement with [Aaptiv, Inc.] by suing only [defendant Aaptiv] based on allegations that center on [both defendant Aaptiv's and Aaptiv, Inc.'s] disclosure of [Plaintiff's] information to Twilio. Put another way: [Plaintiff] could have also sued [Aaptiv, Inc.] on essentially the same set of allegations. And had he done so, the arbitration agreement would no doubt apply. Equitable estoppel thus prevents [Plaintiff] from sidestepping that agreement by bringing claims solely against [defendant Aaptiv]."

*Twilio*, 2024 WL 4933332, at *3 (citations omitted). Plaintiff, therefore, cannot avoid arbitration simply because he first entered into the earlier, 2018 EULA with Aaptiv, Inc.

## IV. THERE IS NO BASIS TO CHALLENGE THE ARBITRATION AGREEMENT.

As a last-ditch effort, Plaintiff claims that the arbitration agreement is not enforceable. But Plaintiff does not dispute, and therefore concedes, that the EULA delegated questions of arbitrability to the arbitrator. *See* Motion at 14-16. Indeed, Aaptiv's Motion detailed the multiple provisions within the EULA delegating arbitrability to the arbitrator (*id.*) that Plaintiff simply ignores.

In any event, as detailed in the Motion, to prove the arbitration agreement is unenforceable, Plaintiff would need to show that it is both procedurally and substantively unconscionable (Motion at 18) – which Plaintiff does not and cannot do. Simply claiming that the arbitration agreement is somehow hidden within the EULA (*see* Opp. at 17) is insufficient to establish unconscionability and is, anyway, untrue. The arbitration agreement is set apart in its own section within the EULA, with underlined subheadings (see Altin Decl. Ex. 7 at 7-8) and, as Plaintiff even concedes, "there is a mention of an agreement to arbitrate on the first page[.]" Opp. at 17.

## V. CONCLUSION

For all these reasons, and those raised in Aaptiv's Motion, the Court should compel arbitration of Plaintiff's claims.

Dated:

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: [signature]
Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

# APPENDIX A

Full screen from *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 859 (9th Cir. 2022)



**APPENDIX B**

Full screens from *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025)






# APPENDIX C

Screens from *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)






# APPENDIX D

Screen from *Strehl v. Guitar Ctr., Inc.*, 2023 WL 9700041 (C.D. Cal. Nov. 3, 2023)


Guitar Center

Secure Checkout

Need Help?
Call us at 866-498-7882

1 Your Information
2 Payment Information
3 Complete Your Order

Review and complete your order below

| Item | Price | | QTY | | Total |
|---|---|---|---|---|---|
| GAMMA Atlas Boosted Overdrive Effect Pedal<br>Item# 1500000386854<br>Condition: New<br>FREE Delivery: Expected by Tuesday, Apr 18 | $69.99 | x | 1 | = | $69.99 |

Shipping & Handling: FREE
Tax: $4.37
Your Order Total: $74.36

Complete Order

Shipping Information Edit

Shipping Recipient
Name:
Address Line 1:
Address Line 2:
Company or C/O:
City:
State:
ZIP Code:
Phone:
Email:
[redacted]

Shipping Summary
Subtotal: $69.99
Shipping: $0.00
Tax: $4.37
Total: $74.36
Method: Standard Ground — change

Items
(1) GAMMA Atlas Boosted Overdrive Effect Pedal

Payment Information Edit

Billing Address
Name:
Address Line 1:
Address Line 2:
Company or C/O:
City:
State:
Zip:
Phone:
[redacted]

Payment Information
Payment Type:
Amount:
Expiration Date:
[redacted]

Your order is safe and secure
You're protected every time you shop with us, so you never have to worry about the safety of your credit card information. More

Your Privacy Rights
We're committed to protecting the privacy of our customers. For details about what types of information we collect and how the information is used, read our Privacy Policy

Create Account
Make your next checkout faster and easier by saving your info now.
Just enter a password for: [redacted]
Enter Password | Re-enter Password

By placing your order, you agree to Guitar Center's Purchase Terms and Conditions
After you click 'Complete My Order' your order will be placed and your credit card will be authorized. A confirmation email will be sent to [redacted]

Complete Order

Copyright © Guitar Center, Inc. All Rights Reserved. California Transparency In Supply Chains Act | Purchase Terms & Conditions | Your Privacy Rights | Terms of Use | Do Not Sell or Share My Information

**APPENDIX E**

Aaptiv's screen with 6" x 2.77" dimensions

