Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Lucas Hori (State Bar No. 294373)
lhori@rutan.com
Talya Goldfinger (State Bar No. 294926)
tgoldfinger@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a AAPTIV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASRA SARHADI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PEAR HEALTH LABS, INC., d/b/a AAPTIV,<br><br>Defendant. | Case No. 3:24-cv-7921-TLT<br><br>Judge: Hon. Trina L. Thompson<br><br>**AAPTIV'S OPPOSITION TO PLAINTIFF KASRA SARHADI'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO COMPEL ARBITRATION; OBJECTIONS TO DECLARATION OF MAX S. ROBERTS**<br><br>**Hearing:**<br>Date: TBD (*See* ECF No. 39)<br>Time: TBD (*See* ECF No. 39)<br>Ctrm: 9<br>Judge: Hon. Trina L. Thompson<br><br>Date Action Filed: November 12, 2024<br>Trial Date: None Set |

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

A. Aaptiv Moved To Compel Arbitration And Plaintiff Opposed .......... 3

B. The Court Compelled Arbitration .......... 4

III. RECONSIDERATION IS AN "EXTRAORDINARY REMEDY" NOT WARRANTED HERE .......... 5

IV. PLAINTIFF HAS NOT RAISED ANY NEW LAW, ARGUMENT, OR EVIDENCE .......... 6

A. *Godun* Did Not Change Controlling Law And Is Not New .......... 6

B. Plaintiff Fails To Identify New Facts Or Argument From *Chabolla* .......... 7

C. Plaintiff Fails To Provide Any New Evidence .......... 8

V. PLAINTIFF HAS NOT RAISED ANY ARGUMENTS OR EVIDENCE THAT CHANGE THE OUTCOME OF THE COURT'S DECISION .......... 10

A. The *Godun* And *Chabolla* Screens Are Distinguishable From Aaptiv's Screen .......... 10

B. Both *Godun* And *Chabolla* Agree That There Are No Dispositive Factors In A Court's Analysis .......... 14

C. Plaintiff Has Not Provided Any Evidence That Aaptiv's Notice Was Not Visible To Him .......... 18

VI. PLAINTIFF HAS CONTINUED USING THE APP TO THIS DAY .......... 20

VII. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)........ 3, 4, 5, 6, 7, 9

*California Crane Sch., Inc. v. Google LLC*,
2024 WL 3498239 (N.D. Cal. July 18, 2024)........ 5, 9

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025)........ 1, 2, 3, 4, 5, 6, 7, 8, 10, 13, 14, 15, 16

*Costa v. Postmates Inc.*,
2020 WL 13526733 (N.D. Cal. June 26, 2020)........ 5, 6, 8, 9

*Fratus v. Cnty. of Contra Costa*,
2016 WL 6947502 (N.D. Cal. Nov. 28, 2016)........ 6

*Godun v. JustAnswer, LLC*,
135 F.4th 699 (9th Cir. 2025)........ 1, 2, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16

*In re Ring LLC Priv. Litig.*,
2021 WL 2621197 (C.D. Cal. June 24, 2021)........ 20

*J & J Sports Prods., Inc. v. Munguia*,
2014 WL 1572409 (N.D. Cal. Apr. 17, 2014)........ 8

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)........ 4, 16

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000)........ 6

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025)........ 16, 17

*Niantic, Inc. v. Global++*,
2020 WL 12175723 (N.D. Cal. Jan. 29, 2020)........ 6, 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)........ 19

*Redisegno.com, S.A. DE C.V. v. Barracuda Networks, Inc.*,
2022 WL 1212014 (N.D. Cal. Apr. 25, 2022)........ 7

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. Sept. 5, 2023)........ 19, 20

**Page(s)**

**FEDERAL CASES (CONT.)**

*Sarhadi v. Pear Health Labs, Inc.*,
2025 WL 1350033 (N.D. Cal. Apr. 18, 2025) .......................... 1, 2, 4, 5, 7, 11, 12, 13, 14, 16

*United States v. Westlands Water Dist.*,
134 F. Supp. 2d 1111 (E.D. Cal. 2001) .......................... 6

*White v. Square, Inc.*,
2016 WL 6647927 (N.D. Cal. Nov. 9, 2016) .......................... 9

*Young v. Peery*,
163 F. Supp. 3d 751 (N.D. Cal. 2015) .......................... 8

**CALIFORNIA CASES**

*Sellers v. JustAnswer LLC*,
73 Cal.App.5th 444 (2021) .......................... 4, 7, 10, 16

**OTHER AUTHORITIES**

Local Rule 7-9 .......................... 5

**OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

## I. INTRODUCTION.

There is no basis for the Court to reconsider its prior Order compelling arbitration. Following Ninth Circuit precedent and consistent with multiple district and state court rulings, this Court ruled that plaintiff Kasra Sarhadi ("Plaintiff") had reasonably conspicuous notice of an arbitration agreement from defendant Pear Health Labs, Inc. d/b/a Aaptiv ("Aaptiv") through an enforceable sign-in wrap agreement when Plaintiff allegedly downloaded the Aaptiv App and created an account with Aaptiv. *Sarhadi v. Pear Health Labs, Inc.*, 2025 WL 1350033, *7 (N.D. Cal. Apr. 18, 2025). The inquiry the Court conducted was fact-intensive and case-specific, and reached the correct result. Plaintiff posits three reasons the Court should reconsider its ruling: (1) that there has supposedly been intervening controlling case law from the Ninth Circuit, *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025); (2) that the Court supposedly "missed the key point" of Plaintiff's previously cited authority, *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025); and (3) that Plaintiff has supposedly discovered new evidence. Motion for Reconsideration ("Motion"), Dkt. 40. Though Plaintiff purports to raise three distinct bases for reconsideration, all of Plaintiff's arguments suffer the same two issues: (1) they are not predicated on new law, argument, or evidence and (2) they would not change the outcome here regardless.

First, Plaintiff's arguments are not based on new law or evidence. *Godun* is not new law. *Godun* applied existing Ninth Circuit precedent to find that a specific screen, distinguishable from the screen in this case, did not provide conspicuous notice. *See Godun*, 135 F. 4th at 707. *Godun* also simply affirmed a district court order, consistent with a state court decision regarding the exact same screen. *Id.*, *citing Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444 (2021). Plaintiff cited the state court opinion in opposition to Aaptiv's Motion to Compel and this Court already distinguished that same screen. *See Sarhadi*, 2025 WL 1350033, at *6, *citing Sellers*, 73 Cal.App.5th at 480-81. Plaintiff also does not raise any new arguments about *Chabolla* that he did not or could not raise in opposition to Aaptiv's Motion to Compel. Dissatisfied with the results of Aaptiv's Motion to Compel, Plaintiff merely rehashes the same arguments this Court already rejected. Finally, the "new evidence" on which Plaintiff relies is not only misleading as discussed below, it is not "new" because

Plaintiff could have submitted the same evidence with his opposition.

Second, even if the Court considered any of Plaintiff's belatedly-raised arguments, they are immaterial because they would not change the outcome of the Court's decision. The *Godun* and *Chabolla* screens are different from Aaptiv's sign-in screen. This Court did not misunderstand or fail to apply the Ninth Circuit holdings. To the contrary, the Court followed the Ninth Circuit's reasoning in finding these screens distinguishable. *Sarhadi*, 2025 WL 1350033 at *6. In fact, it is Plaintiff's argument that is inconsistent with *Godun* and *Chabolla*. Plaintiff argues that the existence of a white gap between the action button and the notice on Aaptiv's screen prevented reasonably conspicuous notice here, irrespective of other factors the Court properly considered. In other words, his argument relies on this purported distance being a dispositive factor for the Court to consider – an approach both *Godun* and *Chabolla* explicitly reject. *See Godun*, 135 F.4th at 709-10 ("Under California law, this inquiry is fact-intensive and is informed by the totality of the circumstances … any suggestion that hard-and-fast rules constrain this inquiry results from over-reading or misreading our precedent."), *citing Chabolla*, 129 F.4th at 1156-57 ("there is no bright-line test for finding that a particular design element is adequate in every circumstance. We must instead consider how those design elements appear on the page."). Finally, the "new evidence" Plaintiff purports to raise is not evidence at all, but speculation from Plaintiff's counsel based on a device (an iPhone 13 Pro Max) that was not released until late 2021 and is therefore irrelevant to what Plaintiff *might* have seen when he signed up in 2020. Declaration of Michael D. Adams ("Adams Decl.") ¶ 7.

Perhaps more egregiously, Plaintiff's supporting declaration omits highly material facts showing Plaintiff's purportedly "new evidence" would not change the result here and appears intended to mislead the Court. Plaintiff's Motion is supported by a declaration from an associate stating that when he recently used the Aaptiv App to sign up for an account, he clicked on a text box to enter his name and a keyboard popped up over the notice. The implication from Plaintiff's "new evidence" is that the keyboard may have impeded Plaintiff's ability to see the notice and hyperlink to Aaptiv's terms of service. Not so. Plaintiff omits the material facts that torpedo this implication. Plaintiff omits that the "Join Aaptiv" button would have been disabled and not clickable while that keyboard was on screen. Plaintiff omits that after using the keyboard to fill in the blank boxes for

name, email and password, *the keyboard retracts from the screen before the "Join Aaptiv" button becomes active.* Even if Plaintiff's belated and speculative "new evidence" were somehow admitted, therefore, it would not change the result because the notice and hyperlink appeared exactly as the Court analyzed them – both before and after Plaintiff's counsel used the keyboard to type text into the form boxes.

The Court should reject Plaintiff's attempts to reverse the Court's well-reasoned ruling with arguments already rejected by this Court; case law that is not new; and evidence that appears calculated to mislead the Court, and in any event would not change the outcome. The Court did not err in conducting a fact-specific analysis of Aaptiv's sign-in screen and finding it provided reasonably conspicuous notice. The Court should deny Plaintiff's Motion for Reconsideration.

## II. FACTUAL BACKGROUND.

### A. Aaptiv Moved To Compel Arbitration And Plaintiff Opposed.

Aaptiv moved to compel arbitration on March 14, 2025 based on an arbitration agreement included in its terms of service. Dkt. 25. Plaintiff had reasonably conspicuous notice of these terms of service through an enforceable sign-in wrap agreement when Plaintiff downloaded the Aaptiv App and created an account. *Id*. Together with its Motion, Aaptiv submitted the declaration of Gregory Altin, its Chief Operating Officer and Chief Technology Officer, and included a screen shot of Aaptiv's sign-in screen as Plaintiff would have seen it in June 2020, recreated by a simulator using Aaptiv's historical code. Dkt. 25-1 at ¶¶ 21-22, Ex. 9. This screen shot showed that, on its face, Aaptiv's sign-in screen gave Plaintiff reasonably conspicuous notice of the arbitration agreement.

Plaintiff submitted his Opposition on March 28, 2025. Plaintiff did not deny that the sign-in screen submitted with the Altin Declaration was the screen he saw when he signed up for an Aaptiv account. Plaintiff also did not deny the numerous other factors raised by Aaptiv warranting a finding of reasonably conspicuous notice, including that Aaptiv's sign-in screen was uncluttered and that the notice was clearly written. Instead, Plaintiff argued that the Ninth Circuit's decisions from *Berman* and *Chabolla* controlled, including cropped screen shots from the sign-in screens omitting material elements of those screens in both decisions and analogizing to those images. Dkt.

31 at 5-6, 12, *citing Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849 (9th Cir. 2022) and *Chabolla,* 129 F.4th 1147. Based on those cases, Plaintiff raised multiple arguments as to why Aaptiv's notice was supposedly not conspicuous, including that "the hyperlink is in a tiny, non-contrasting font" and that "the hyperlink is a considerable distance from the other relevant text and buttons." Dkt. 31 at 8-13 (capitalization removed).

**B. The Court Compelled Arbitration.**

The Court granted Aaptiv's motion to compel arbitration on April 17, 2025. *Sarhadi*, 2025 WL 1350033. Following Ninth Circuit authority, the Court considered both the context of Plaintiff's transaction with Aaptiv and the placement of Aaptiv's notice. The Court found "that the context of the transaction supports reasonably conspicuous notice." *Id*. at 6. "Like in *Keebaugh* [], Plaintiff's interaction with the App was more than a one-time purchase or transaction" and, while not dispositive, "the context of the transaction remains a relevant factor." *Id*., *citing Keebaugh v. Warner Bros. Ent. Inc.,* 100 F.4th 1005, 1019 (9th Cir. 2024).

Regarding the placement of Aaptiv's notice, the Court addressed Plaintiff's "several pages of arguments[.]" *Sarhadi*, 2025 WL 1350033 at *6. The Court distinguished the sign-in screen images from both *Berman* and *Chabolla*. *Id*. ("In *Berman*, the website was full of 'other visual elements [that] draw the user's attention away from the most important part of the page' and the notice was 'buried in fine print.' Similarly, in *Chabolla*, the screen was 'crowded,' and the notice was obscured by other images and intervening and muddled text about signing up with Facebook or language regarding gift cards.") The Court also distinguished the sign-in screens from the other cases cited by Plaintiff, including *Sellers*. *Id*. ("the screen was cluttered, and the notice appeared 'outside the white box containing the payment fields where the consumer's attention would necessarily be focused.'"), *citing Sellers*, 73 Cal.App.5th at 480-81.

The Court further addressed Plaintiff's remaining arguments. *Sarhadi*, 2025 WL 1350033 at 7. Regarding the font Aaptiv used, the Court found that the hyperlink "is clearly an underlined dark blue, capitalized text that is written in a legible size." *Id*. Regarding the distance of the notice from the action button, the Court found "while there is some distance between the 'Join Aaptiv' button and the notice, this is offset by the fact that there is no intervening text or buttons in between

such that the eyes of the user flow to the notice." *Id*. The Court further distinguished the screen in *Chabolla,* where "the sign-in screen contained other, intervening text and buttons before the notice." *Id*., *citing Chabolla,* 129 F.4th at 1157. Finally, regarding Plaintiff's argument that the hyperlink was the "least prominent element on the page," the Court agreed with Aaptiv that this argument is "misleading because the single-sentence notice (and hyperlink therein) is the only element on Aaptiv's sign-in screen other than the form fields and the 'Join Aaptiv' button." *Sarhadi*, 2025 WL 1350033 at *7.

The Court concluded that Aaptiv has "established [] reasonably conspicuous notice[.]" *Id*. "On balance and considering the full context of the hyperlink, the sign-up screen satisfies the visual requirements to provide conspicuous notice that a reasonably prudent internet user 'would have seen' the hyperlink and would have been able to locate the hyperlinked EULA." *Id*.

Instead of initiating arbitration, and in hopes of holding on to the cudgel of a potential class action, one month later Plaintiff's counsel requested leave under Local Rule 7-9 to file a motion or reconsideration. Dkt. 38. Plaintiff claimed to have new authority and new evidence that would change the Court's decision. *Id*. Plaintiff also claimed that the Court "did not recognize dispositive legal arguments in *Chabolla*." *Id*. at 6. The Court granted Plaintiff leave to file a motion for reconsideration, "limited to the Ninth Circuit's recent holding in *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025), application of the facts under *Chabolla v. ClassPass Inc*., 129 F.4th 1147 (9th Cir. 2025), and application of newly discovered evidence. *See* L.R. 7-9(b)." Dkt. 39.

## III. <u>RECONSIDERATION IS AN "EXTRAORDINARY REMEDY" NOT WARRANTED HERE.</u>

"Even if the court grants a party leave to file a motion for reconsideration [under Local Rule 7-9(a)], these motions are disfavored and rarely granted." *Costa v. Postmates Inc.*, 2020 WL 13526733, at *2 (N.D. Cal. June 26, 2020) (quotation omitted). "Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Berman*, 30 F.4th at 858-59, *quoting Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). This is a "high hurdle for the movant to clear." *California Crane Sch., Inc. v. Google LLC*, 2024 WL 3498239, at *1 (N.D. Cal. July 18, 2024) (quotation omitted).

Plaintiff notably omits any of these standards from his Motion, even though "[t]he party seeking reconsideration bears the burden of establishing appropriate grounds for that relief." *Costa*, 2020 WL 13526733, at *2. Plaintiff has not and cannot meet its burden to show that the "extraordinary remedy" of reconsideration is warranted here.

## IV. PLAINTIFF HAS NOT RAISED ANY NEW LAW, ARGUMENT, OR EVIDENCE.

A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc.*, 229 F.3d at 890 (emphasis in original); *see also*, *Berman*, 30 F.4th at 859. "A motion for reconsideration is not a vehicle to reargue the motion … A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (citations and quotations omitted). A motion for reconsideration "may not be used to relitigate old matters, or to raise arguments [] that could have been made prior to the entry of judgment." *Fratus v. Cnty. of Contra Costa*, 2016 WL 6947502, at *4 (N.D. Cal. Nov. 28, 2016) (citations and quotations omitted). Where, like here, "all of Plaintiffs' arguments either were or could have been presented in Plaintiffs' Opposition to Defendants' Motion … This alone is a sufficient reason to deny the present Motion." *Id.* ("Plaintiffs' dissatisfaction with the Court's ruling on arguments the parties already presented is not a valid basis for a motion under Rule 59(e) or Rule 60(b).").

### A. *Godun* Did Not Change Controlling Law And Is Not New.

While it is true that the *Godun* opinion was issued three days before the Court's Order, Plaintiff has not explained how *Godun* represents a material change in the controlling caselaw – likely because it does not. *Godun* applied Ninth Circuit precedent and found that the specific screen at issue did not provide reasonably conspicuous notice. *See, e.g.*, *Godun*, 135 F.4th at 713, *citing Keebaugh*, 100 F.4th at 1018, *Chabolla*, 129 F.4th at 1155-56, and *Berman*, 30 F.4th at 857.

*Godun* also simply affirmed a district court order. In *Niantic, Inc.*, for example, a district court rejected the presentation of a Ninth Circuit decision as new controlling law on a motion for reconsideration where the Ninth Circuit simply affirmed a district court order issued two years prior

because the moving party "could have cited the district court's opinion … and relied on its reasoning[.]" *Niantic, Inc. v. Global++*, 2020 WL 12175723 at *3 (N.D. Cal. Jan. 29, 2020). Plaintiff could have cited the district court order from *Godun* in opposition to Aaptiv's Motion to Compel, but chose not to do so.

Moreover, *Godun* cited to a state court decision that considered the exact same screen and also found it did not provide reasonably conspicuous notice. *See Godun*, 135 F. 4th at 707, *citing Sellers*, 73 Cal.App.5th 444. Plaintiff already cited the *Sellers* decision in his Opposition to Aaptiv's Motion to Compel and the Court found the same screen is distinguishable from Aaptiv's sign-in screen. *Sarhadi*, 2025 WL 1350033, at *6, *citing Sellers*, 73 Cal.App.5th at 480-81 ("the screen was cluttered, and the notice appeared 'outside the white box containing the payment fields where the consumer's attention would necessarily be focused.'").

Because Plaintiff fails to cite any material difference in the law created by *Godun*, *Godun* is not properly raised as a basis for reconsideration. *See Redisegno.com, S.A. DE C.V. v. Barracuda Networks, Inc.*, 2022 WL 1212014, at *2 (N.D. Cal. Apr. 25, 2022) (a court is only allowed to "consider material different law").

### B. Plaintiff Fails To Identify New Facts Or Argument From *Chabolla*.

Plaintiff already relied on *Chabolla* as "controlling" in his Opposition to Aaptiv's Motion to Compel and this Court already addressed *Chabolla* in its Order. *See* Dkt. 31 at 5-6, 12; *Sarhadi*, 2025 WL 1350033 at *6, *7. Plaintiff argued that "*Chabolla* should dictate the outcome here" and that the Ninth Circuit held "[b]ecause of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is 'deemphasized by the overall design of the webpage' and not 'prominently displayed' and was therefore unenforceable." Dkt. 31 at 4-5 (capitalization removed), *citing Chabolla*, 129 F.4th at 1157. The Court considered Plaintiff's argument and rejected it. *Sarhadi*, 2025 WL 1350033, at *6 ("Plaintiff first argues that the notices in *Berman* and *Chabolla* are controlling. However, side-by-side comparison of the notices indicate clear distinctions … in *Chabolla*, the screen was 'crowded,' and the notice was obscured by other images and intervening and muddled text about signing up with Facebook"); *7 ("Plaintiff next complains about the considerable distance

from the 'Join Aaptiv' button and the notice. Plaintiff again analogizes to the screen in *Chabolla.* However, Plaintiff ignores that, in *Chabolla*, the sign-in screen contained other, intervening text and buttons before the notice.") (citations omitted). Plaintiff has not raised any arguments in his Motion for Reconsideration that he did not or could not already raise in his Opposition to Aaptiv's Motion to Compel nor may Plaintiff use his Motion for Reconsideration to reargue his Opposition simply because he disagrees with the Court's Order.[1]

Reconsideration is especially inappropriate here where, as discussed further below, the Ninth Circuit has consistently stated that "this inquiry is fact-intensive and is informed by the totality of the circumstances." *Godun*, 135 F.4th at 709 (quotations omitted); *see also*, *Chabolla*, 129 F.4th at 1156-57. "A district court does not commit clear error warranting reconsideration when the question before it is a debatable one." *Young v. Peery*, 163 F. Supp. 3d 751, 753 (N.D. Cal. 2015). "[C]lear error is not established by arguing that another court 'would have decided the case differently.' Instead, it requires a 'definite and firm conviction that a mistake has been committed.'" *J & J Sports Prods., Inc. v. Munguia*, 2014 WL 1572409, at *2 (N.D. Cal. Apr. 17, 2014), *quoting Easley v. Cromartie,* 532 U.S. 234, 242 (2001).

Thus, even if another court would have decided Aaptiv's sign-in screen differently (and Plaintiff would be hard-pressed to find a court to agree with him here), the Court could not have committed clear error by exercising its discretion in analyzing Aaptiv's sign-in screen and finding that it provided sufficient notice. Plaintiff cannot show with a "definite and firm conviction that a mistake has been committed" by this Court (*id.*) by misapplying cases that hold the inquiry for the court is fact-intensive and that no bright-line rules exist.

**C. Plaintiff Fails To Provide Any New Evidence.**

"When a movant seeks reconsideration based on newly discovered evidence, he must make three showings: the evidence must be newly discovered, the movant must have exercised due diligence to discover the evidence, and the evidence must be of such magnitude that production of

[1] Moreover, Plaintiff was limited by the Court to arguing the "application of the facts under *Chabolla*[.]" Dkt. 39. Plaintiff does not identify any "facts" from *Chabolla* that this Court overlooked or misapplied. Plaintiff cannot use his Motion to reargue "legal arguments in *Chabolla*" or the "core holding of *Chabolla*." Motion at 6, 7.

it earlier would have been likely to change the disposition of the case." *Costa*, 2020 WL 13526733 at *2 (citations and quotations omitted); *see also*, *White v. Square, Inc.*, 2016 WL 6647927, at *2 (N.D. Cal. Nov. 9, 2016), *citing Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). Plaintiff has not and cannot meet any of these three elements.

Plaintiff's speculation about the function of an iPhone keyboard as it appears on the Aaptiv App is not new. The Aaptiv App is publicly available to anyone with a smartphone and Plaintiff and his counsel have always had the ability to access it. *See California Crane Sch., Inc. v. Google LLC*, 2024 WL 3498239, at *1 (N.D. Cal. July 18, 2024) (evidence was not newly discovered where it was publicly available on a website); *see also*, Complaint, Dkt 1 at ¶ 86 (Plaintiff admits he had access to the Aaptiv App as early as June 2020). Both Plaintiff and his counsel, therefore, had access to the Aaptiv sign-in screen well before Aaptiv brought its Motion to Compel.

Plaintiff also has not even attempted to show any diligence in discovering this supposedly "new evidence." *See Costa*, 2020 WL 13526733 at *2 (plaintiffs made "no attempt" to show "reasonable diligence" in discovering the evidence where they "provide[d] no explanation 'as to when, or how, or under what circumstances'" they first learned of the evidence). The existence of a pop-up keyboard on a smartphone is no secret. Plaintiff does not explain when he discovered it, how he discovered it, or under what circumstances he discovered it. In *Berman*, for example, the Ninth Circuit upheld the denial of a motion for reconsideration of an order compelling arbitration based on a sign-in wrap agreement where the moving party failed to act with reasonable diligence in presenting their purportedly new evidence. *Berman*, 30 F.4th at 859 ("had defendants acted with reasonable diligence, plaintiffs' deposition testimony could have been presented to the court in connection with the motion to compel arbitration … The district court did not abuse its discretion in concluding that defendants' 'tactical decision not to submit the deposition testimony until after their motion was denied' failed to provide any basis for seeking reconsideration of the court's earlier ruling."). Plaintiff's only explanation for his delay here is that Aaptiv produced a screenshot from the 2020 App and supposedly "it was impossible for Plaintiff to interact with or dispute how the App appeared at that time." Motion at 9. But nothing prevented Plaintiff's counsel from downloading the Aaptiv App (as he now claims to have done) prior to opposing Plaintiff's Motion

for Reconsideration or at any time prior to the Court's Order. The reason for Plaintiff's delay is manifest – because this isn't new evidence at all, but an after-thought from counsel dissatisfied with the Court's Order.

Finally, even if Plaintiff had brought forth new evidence (he did not) that he diligently discovered (he did not), this purported evidence is of no consequence and would not have been likely to change the disposition of the case for a host of reasons, as explained further below in Section V.C. and the accompanying objections to the Declaration of Max Roberts, including that the purported "evidence" is nothing but misleading speculation from Plaintiff's counsel. Because Plaintiff fails to raise any new, diligently discovered evidence, let alone evidence that would change the outcome of the Court's decision here, Plaintiff's counsel's incomplete and misleading speculations are not properly raised as a basis for reconsideration.

## V. <u>PLAINTIFF HAS NOT RAISED ANY ARGUMENTS OR EVIDENCE THAT CHANGE THE OUTCOME OF THE COURT'S DECISION.</u>

Even if the Court were to consider *Godun*, *Chabolla*, or Plaintiff's purported "new evidence" (it should not), none of these things change the outcome of the Court's decision.

### A. The *Godun* And *Chabolla* Screens Are Distinguishable From Aaptiv's Screen.

All three of the screens Plaintiff points to from *Godun* and *Chabolla* are distinguishable from Aaptiv's sign-in screen. Regarding the chat screen in *Godun*, the Ninth Circuit agreed with the district court and the state court that the screen failed to provide conspicuous notice because the notice appearing on "the black background is outside the main frame of the screen." *Godun*, 135 F.4th at 713. "Placing the notice on the black border (coupled with an "x" button apparently permitting the user to close a dialogue box) creates the visual impression of being tucked away or not important to the transaction. While the page is generally uncluttered, the placement of the advisal on the black border creates an impression of visual discontinuity. This does not capture the user's attention and direct her to the notice." *Id*. at 713-14, *citing, e.g., Sellers*, 73 Cal. App. 5th at 481. Plaintiff acknowledges that the notice in *Godun* was "outside the main frame of the screen," but claims that Aaptiv's notice was somehow also outside the main frame of the screen. Motion at 4, 5. Plaintiff either misunderstands or purposely misreads *Godun*. Aaptiv's notice was not on a black

border or background. There was no dialogue box on Aaptiv's screen that could be closed with an "x" button. In contrast to the notice from *Godun*, the notice on Aaptiv's screen was exactly on the main frame of the screen. *See Sarhadi*, 2025 WL 1350033 at *6 (distinguishing the same screen from *Godun* on the grounds that "the notice appeared 'outside the white box containing the payment fields where the consumer's attention would necessarily be focused.'").

This holding, using the screen from *Godun*, is illustrated visually below.




The payment screen from *Godun* is also distinguishable. The Ninth Circuit "[c]onsider[ed] the notice in the full context of the transaction," including finding that the "context of the transaction is informed by the fact that there is an automatically renewing subscription at issue … where consumers make a one-time purchase of a product, which triggers an automatically recurring membership." *Godun*, 135 F.4th at 712, *citing Sellers*, 73 Cal.App.5th at 480. Viewed in its full context, Aaptiv's screen differs significantly from the payment screen in *Godun*. Aaptiv did not concern a free trial or automatic renewal. *Sarhadi*, 2025 WL 1350033, at *6 ("Plaintiff's interaction with the App was more than a one-time purchase or transaction. Plaintiff was required to create an Aaptiv account and then engaged in an ongoing relationship with Aaptiv.") Aaptiv's screen is also

less cluttered than the *Godun* payment screen and Aaptiv does not include any other text larger than the notice. *See id.* at *6-7 (finding Plaintiff's cited cases "are clearly more cluttered than Aaptiv's notice" and rejecting Plaintiff's argument that the notice is smaller than the other elements on the page "because the single-sentence notice (and hyperlink therein) is the only element on Aaptiv's sign-in screen other than the form fields and the 'Join Aaptiv' button."). Plaintiff makes all of the same arguments with respect to the *Godun* payment screen that he already made in opposition to Aaptiv's Motion to Compel. Plaintiff claims that *Godun* "holds that hyperlinks that are not 'located directly above or below the action button' and that are 'displayed in relatively small text' are not conspicuous, even where the page is 'generally uncluttered.'" Motion at 4. Plaintiff already argued that "the hyperlink is a considerable distance from the other relevant text and buttons" and is in a "tiny, non-contrasting font[.]" Dkt. 31 at 11, 9 (capitalization removed). This Court found that the "text [] is written in a legible size" and "while there is some distance between the 'Join Aaptiv' button and the notice, this is offset by the fact that there is no intervening text or buttons in between such that the eyes of the user flow to the notice." *Sarhadi*, 2025 WL 1350033 at *7. Nothing in *Godun* alters this analysis.

These distinguishing factors are further illustrated on the *Godun* chat screen below.



Finally, and as the Court already found, the screen from *Chabolla* is distinguishable from Aaptiv's sign-in screen, including because the *Chabolla* screen was "obscured by other images" and contained "intervening and muddled text about singing up with Facebook" (*Sarhadi*, 2025 WL 1350033, at *6) and "contained other, intervening text and buttons before the notice." *Id*. at *7.

It is unclear what Plaintiff claims was error in this Court's analysis of *Chabolla*. Plaintiff states that Screen 1 from *Chabolla* is the only relevant screen and seems to imply that the Court erred by even considering the other screens from *Chabolla*. Motion at 6. But the fact that the Court found Screens 2 and 3 from *Chabolla* also distinguishable from Aaptiv's sign-in screen is not error, nor did the Court's analysis of those other screens detract from the Court's consideration of Screen 1 in any way.

Next, Plaintiff seems to imply that the Court erred by considering any factors on Screen 1 from *Chabolla* other than that "the hyperlink was 'below the "Sign up with Facebook" option, on the periphery of where a user intending to use their email would be looking.'" Motion at 6. While Plaintiff does not deny that Screen 1 from *Chabolla* was more cluttered than is Aaptiv's screen, Plaintiff seems to claim that the Court erred by even noting the relative clutter of the two screens in its Order. Plaintiff claims that "*Chabolla* was *not* based on clutter or other images on Screen 1" and that "the issue in *Chabolla* was not that the Facebook language made the page cluttered[.]" Motion at 6 (emphasis in original). But it is untrue that the Ninth Circuit did not consider the clutter on Screen 1. The Ninth Circuit found that "Screen 1 contains text in varying font sizes and images of people exercising" and that "the notice seems to fade into the irrelevancy of other aspects of the page." *Chabolla*, 129 F.4th at 1157. The Ninth Circuit further compared Screen 1 to the screens from two district courts and found that those screens were "less crowded" than Screen 1. *Id*. The Court here was correct in comparing the sparse Aaptiv sign-in screen with the cluttered *Chabolla* Screen 1.[2]

And, even if Plaintiff were correct (he is not) that the "visual placement" of the notice below

[2] Plaintiff also ignores that the court in *Chabolla* considered multiple other factors, including that the context of the transaction, unlike here, did not "weigh[] in favor of nor against the notice requirement." *Chabolla*, 129 F.4th at 1156.

the "Sign up with Facebook" button was the only element on the page that the Ninth Circuit in *Chabolla* considered (Motion at 7), Aaptiv's screen here did not include any "Sign up with Facebook" button. *See Sarhadi*, 2025 WL 1350033 at *7 (distinguishing *Chabolla*; "while there is some distance between the 'Join Aaptiv' button and the notice, this is offset by the fact that there is no intervening text or buttons in between such that the eyes of the user flow to the notice."). Aaptiv's notice was not "outside the user's natural flow" nor did it "fade into the irrelevance of other aspects of the page." Motion at 6, *quoting Chabolla*, 129 F. 4th at 1157.

The distinguishing factors from the *Chabolla* Screen 1 are further illustrated below.




The Court did not misunderstand either the facts or holding from *Chabolla* and did not fail to apply *Godun*. The Court's Order was not clearly erroneous and Plaintiff in his Motion for Reconsideration has done nothing more than disagree with the Court's decision.

**B. Both *Godun* And *Chabolla* Agree That There Are No Dispositive Factors In A Court's Analysis.**

The fundamental problem with Plaintiff's argument that the Court failed to apply *Godun* or misapplied *Chabolla* is that it relies on there being dispositive factors to the Court's analysis.

Plaintiff argues that "[t]he import of *Godun*, along with *Chabolla*'s actual holding, is clear: if a hyperlink is not 'located directly above or below the action button and is displayed in relatively small text,' as here, then that ***in and of itself*** renders the hyperlink inconspicuous." Motion at 11 (emphasis added).[3] In other words, Plaintiff asserts that Aaptiv's notice can never be considered conspicuous following *Godun* or under *Chabolla* because Aaptiv's notice is not directly on top of or underneath the action button. However, that there may be some distance between a notice and a relevant action button does not mean that a notice is automatically inconspicuous, neither under *Godun, Chabolla*, nor any other Ninth Circuit authority. That is not the law and it is certainly not law created by *Godun* or *Chabolla*.

In fact, the Ninth Circuit in both cases specifically ***rejected*** any attempt to create a bright-line rule or dispositive factors as to what does or does not make a hyperlink conspicuous. *Godun* held:

> Under California law, this inquiry is fact-intensive and is informed by the totality of the circumstances. Following California caselaw, we have discussed certain factors relevant to our visual analysis of webpages and hyperlinks, such as the location of the advisal on the webpage or the font size, color, and contrast (against the page's background). But we have not created a checklist for website designers. Nor have we generated per se design rules that must be followed for a contract to be formed between a website user and provider. ***There is no bright-line test*** for finding that a particular design element is adequate in every circumstance. And, by the same logic, there are not per se rules about what's necessarily inadequate, either. ***Such a one-size-fits-all approach would undermine the fact-intensive, totality-of-the-circumstances nature of the analysis***. Barring changes to state-law doctrines regarding internet contract formation, ***any suggestion that hard-and-fast rules constrain this inquiry results from over-reading or misreading our precedent***.

*Godun*, 135 F.4th at 709-10 (citations and quotations omitted; emphasis added). *Godun* further held that "even minor differences in the design elements may make the difference in this fact-intensive analysis. At bottom, when visually analyzing the conspicuousness of an advisal and any hyperlinks, courts must be tuned to the expectations of a reasonably prudent internet user." *Id*. (citations and

[3] Plaintiff's argument here also undermines his claim that *Godun* created any new controlling law.

quotations omitted). *Godun* relied on *Chabolla*, which stated that "there is no bright-line test for finding that a particular design element is adequate in every circumstance. We must instead consider how those design elements appear on the page." *Chabolla*, 129 F.4th at 1156-57.

Here, the Court in its Order considered the "totality of the circumstances" just as *Godun* proscribes. *Godun*, 135 F.4th at 710. The Court found that, "[o]n balance ***and considering the full context of the hyperlink***, the sign-up screen satisfies the visual requirements to provide conspicuous notice[.]" *Sarhadi*, 2025 WL 1350033 at *7 (emphasis added). The Court did not err by considering the full context of Aaptiv's transaction and sign-in screen and finding that Aaptiv's notice was reasonably conspicuous.

Plaintiff would have the Court focus only on the distance between the action button and the notice and ignore any other factor of the screen or the transaction, including the context of the transaction, the clutter of the screen, the presence of any other notices. These are all factors that the Ninth Circuit and California courts have found relevant. *See, e.g., Keebaugh*, 100 F.4th at 1019-20 ("we must look to both 'the context of the transaction' and the 'placement of the notice' when conducting review; courts consider "visuals involved with the notice, such as font size, text placement, and overall screen design."); *Chabolla*, 129 F.4th at 1156 ("This court looks to 'the conspicuousness and placement of the Terms of Use hyperlink, other notices given to users of the terms of use, and the website's general design' in determining 'whether a reasonably prudent user would have inquiry notice of a [sign-in wrap] agreement.'"); *Sellers*, 73 Cal.App.5th at 480-81 (in addition to the context of the transaction not "contemplat[ing] some sort of continuing relationship", the screen was cluttered and the notice appeared "outside the white box containing the payment fields where the consumer's attention would necessarily be focused."). Plaintiff's attempt to use *Godun* or *Chabolla* to create a bright-line rule must necessarily fail.

And district courts have continued to apply this multi-factor, case-specific analysis even in the wake of *Godun*. For example, in *Kroskey v. Elevate Labs, LLC,* the court compelled arbitration based on a screen similar to Aaptiv's sign-in screen. *Kroskey v. Elevate Labs, LLC,* 2025 WL 1507091 (N.D. Cal. May 27, 2025). The screen was uncluttered and contained a single-sentence notice separated from the action buttons by "significant white space[.]" *Id*. at *4.

For reference, the screen from the *Kroskey* decision is reproduced below.




The court found that the screen provided conspicuous notice of the terms of service based on multiple factors, including that, "by creating an account and paying for a subscription membership, the context of the transaction was a continuing, forward-looking relationship likely governed by terms and conditions"; "the page here is free from clutter"; "the sentence containing the Terms & Conditions notice is the only text in the white space of the Sign Up Page"; and the hyperlinks "are in bold with the first letters capitalized, making them stand apart from the other text in the sentence." *Id*. at 3. The court did not find the distance between the action buttons and the notice to be dispositive. Instead, the court found that, "[i]n the context of the clean and simple format of the page, the Court finds that a reasonably prudent internet user would see the notice and understand that the phrase 'Terms & Conditions' was a hyperlink to the Terms of Service containing the Arbitration Clause." *Id*. The same is true here.

### C. Plaintiff Has Not Provided Any Evidence That Aaptiv's Notice Was Not Visible To Him.

Plaintiff's purported evidence is based only on a declaration from his counsel stating that, when counsel downloaded Aaptiv's App on May 16, 2025 to an "iPhone 13 Pro Max," and "clicked the 'First Name' form field to enter text," it "caused the iPhone's keyboard to open" and cover the notice. *See* Motion at 7-9, *citing* Roberts' Declaration Dkt. 40-1 at ¶¶ 3-4. Plaintiff posits that "[i]t stands to reason that this aspect of Defendants' App likely functioned in the same way in 2020 as it does now" (Motion at 9), falsely implying that the notice and hyperlink to Aaptiv's terms of service were not visible when Plaintiff hit the "Joint Aaptiv" button. But Plaintiff's counsel omits to state whether it was possible to click the "Join Aaptiv" button – i.e. whether the "Join Aaptiv" button was active and clickable – while his keyboard was on screen. It was not. In fact, Plaintiff counsel omits any mention of the sign-up process after clicking the "First Name" form field, including that after completing the required fields the keyboard disappears from the screen before the user can select the "Joint Aaptiv" button. Adams Decl. ¶ 5.

Even if counsel's iPhone keyboard popped up when he clicked into the "First Name" text box (Dkt. 40-1, ¶ 4), the keyboard would only have appeared on the screen while it was being used to input text into the form fields, during which the "Join Aaptiv button" would not have been active and could not be selected. Counsel for Aaptiv attempted this using the same model iPhone purportedly used by Plaintiff's counsel (iPhone 13 Max) and the "Join Aaptiv" button was disabled while his keyboard was open and could not be clicked. Adams Decl. ¶ 4. Plaintiff's counsel would have had to fill in all of the text boxes and hit the return button on the keyboard before the "Join Aaptiv" button became active. *Id.* ¶ 5. After the text boxes were filled in and the return button was hit on the keyboard, the keyboard would have disappeared. *Id.* Only then could counsel select the "Join Aaptiv" button. *Id.* Thus, both before and after counsel was inputting text into the form fields using a keyboard – before he could click the "Join Aaptiv" button – the sign-up screen noticeably displayed the notice and the hyperlink to Aaptiv's terms of service. Further, a reasonably prudent smartphone user is familiar with the functionality of his smartphone's keyboard and should expect it to pop up when he clicks into a text box and to go back down when he clicks out of the text box.

Plaintiff has presented the Court with only a partial set of facts.

Therefore, even if it were appropriate to admit Plaintiff's counsel declaration as evidence reflecting what Plaintiff saw when he signed-up for the Aaptiv App in 2020, counsel's incomplete facts would not change the outcome here. Plaintiff had reasonable conspicuous notice of Aaptiv's terms of service both when he opened the sign-in screen and before he hit the "Join Aaptiv" button.

Of course, counsel's speculations are also insufficient to establish what Plaintiff actually did see and experience. Counsel admits that the sign-in screen he saw in 2025 is not the same as the one Plaintiff saw in 2020. Plaintiff conspicuously does not say that the device and keyboard counsel used in 2025 is the same device and keyboard Plaintiff used in 2020 when he signed up for an Aaptiv account – because it was not; the device counsel used was not released until more than a year after Plaintiff signed up with Aaptiv. Adams Decl. ¶ 7. Meanwhile, the function and appearance of a keyboard is dependent on the device, the operating system, and the user, none of which counsel has sufficiently established, as noted in the accompanying objections to counsel's declaration. It is, therefore, incorrect for Plaintiff to speculate that "Defendant's App likely functioned in the same way in 2020" (Motion at 9) when this keyboard was not a "function" of the App at all.

Plaintiff claims that it was Aaptiv's burden "to show that when users signed up for the App in 2020, the iPhone keyboard did *not* cover the hyperlink to the terms." Motion at 9 (emphasis in original). Not so. Aaptiv need not (and cannot) prove the features and settings of the exact device Plaintiff used when registering. That information is solely within Plaintiff's possession. Plaintiff's attempt to shift the burden to Aaptiv to prove a negative is illogical and unsupportable. "When uncontested features of a webpage meet the baseline requirements for constructive notice, additional evidence of subjective intent is not required for a court to determine that constructive notice exists." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 518 (9th Cir. 2023) (rejecting the contention that the district court failed to consider expert and deposition testimony; "The district court did not err in deciding the constructive notice issue as a matter of law.") "[T]ypically, defendants submit a screenshot showing the sign-in process so that the court can evaluate factors such as the size of the text, the color of the text as compared to the background, the location of the text, the obviousness of the hyperlink, and whether other elements on the screen clutter or otherwise obscure the textual

notice." *Robbins v. Mscripts, LLC*, 2023 WL 5723220, at *5 (N.D. Cal. Sept. 5, 2023), *citing Oberstein*, 60 F.4th at 513-15. "***[W]ithout any contradicting evidence about what the plaintiff saw***, the court is not precluded from concluding as a matter of law that the plaintiff was on notice of [defendant's] terms and conditions when he created his account." *Id*. (emphasis added).

Aaptiv here provided a screenshot of the screen Plaintiff would have seen in 2020. Dkt. 25-1 at ¶¶ 21-22, Ex. 9. Plaintiff does not deny that the screenshot attached as Exhibit 9 to the Altin Declaration is the screen he saw in 2020 and it remains undisputed that Plaintiff saw Aaptiv's sign-in screen the moment Plaintiff went to create an Aaptiv account. This is the screen that this Court found provided reasonably conspicuous notice to the average smartphone user of the terms of Aaptiv's arbitration agreement. Aaptiv has therefore demonstrated that it provided constructive notice to Plaintiff as a matter of law. Plaintiff simply has not offered any actual evidence of what *he* saw on *his* device in *2020*. And Plaintiff's counsel declaration, because of its omitted facts, is not even sufficient to show that the notice appeared any differently for counsel when counsel hit the "Join Aaptiv" button, let alone that the notice appeared differently for Plaintiff when Plaintiff hit the "Join Aaptiv" button. If Plaintiff had any actual, contradicting evidence that the notice he saw was different than in the screenshot Aaptiv provided, Plaintiff would have and should have provided it. And, he should have raised this evidence *before* the Court issued its Order.

## VI. PLAINTIFF HAS CONTINUED USING THE APP TO THIS DAY.

Reconsideration would be especially futile here because Plaintiff has continued using the Aaptiv App even after Aaptiv sent its arbitration demand and moved to compel arbitration. Aaptiv's records show that Plaintiff used the Aaptiv App as recently as June 11, 2025. Declaration of Gregory Altin ¶ 2.

"Courts have held that plaintiffs will be bound by a product's terms of use if they learn of the terms' existence during pending litigation and continue to use the product — conduct that a reasonable person would understand to constitute assent." *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) ("Plaintiffs' continued use of the Devices after being on constructive notice of the Terms through this lawsuit constitutes assenting conduct.") (quotations omitted). As the named Plaintiff in this case, and the subject of Aaptiv's Motion to Compel, Plaintiff

was – at the very latest – put on notice of the existence of the arbitration agreement when Aaptiv moved to compel arbitration. Plaintiff's continued use of the Aaptiv App after being put on notice of the arbitration agreement is conduct that a reasonable person understands to constitute assent to the arbitration agreement. Reconsideration concerning what Plaintiff saw when he first signed up for the Aaptiv App, therefore, is further not warranted here because, at this point, it would simply be futile.

## VII. <u>CONCLUSION.</u>

For all these reasons, Plaintiff's Motion for Reconsideration must be denied. Plaintiff has not provided any new law, argument, or evidence, let alone new law, argument, or evidence warranting a different outcome here. The Court conducted a fact-intensive, case-specific analysis of Aaptiv's sign-in screen and reached a well-reasoned conclusion that Aaptiv's sign-in screen provided reasonably conspicuous notice to Plaintiff of Aaptiv's arbitration agreement.

* * *

**OBJECTIONS TO THE DECLARATION OF MAX S. ROBERTS**

Pursuant to Local Rule 7-3(a), Aaptiv also includes herein the following objections to the Declaration of Max S. Roberts (Dkt. 40-1) submitted with Plaintiff's Motion.

Aaptiv objects to the Roberts declaration pursuant to Fed. R. Evid. C. §§ 602 and 701 on the grounds that it lacks foundation, lacks personal knowledge and is improper speculation. Mr. Roberts states only that he "downloaded Defendant's mobile application on an iPhone 13 Pro Max" on May 16, 2025 and that he "clicked the 'First Name' from field to enter text." Dkt. 40-1 ¶¶ 3, 4. Mr. Roberts does not state whether he actually created an Aaptiv account. Critically, Mr. Roberts does not state whether he ever even attempted to click the "Join Aaptiv" button and whether the button was active and clickable while his keyboard was on screen (it was not).

Mr. Robert's declaration is also filled with other foundational holes. Mr. Roberts does not state whose phone he used, what version operating system was running on the phone, what keyboard application was installed on the phone, whether any non-factory settings were employed on the phone. Mr. Roberts does not state how long the keyboard remained on screen and if and when the keyboard disappeared. Mr. Roberts also does not state whether and when he ever previously downloaded the Aaptiv App. The same is true of Mr. Robert's statement that he "re-tested this process with an iPhone 16 Pro Max" on May 31. *Id*. ¶ 4.

Further, Mr. Roberts includes two images in his declaration as to how the "screen of the application appeared[.]" *Id*. at ¶¶ 3-4. Mr. Roberts does not state how these images were created or who created them.

Without this foundational information, any suggestion that the screen Mr. Roberts saw on his specific devices in 2025 is the same one seen by Plaintiff in 2020 is impermissible speculation. A pop-up keyboard is a feature of a smartphone's operating system and is device and user specific. Mr. Roberts does not even lay the foundation to testify as to the specific keyboard he purportedly saw, let alone the keyboard Plaintiff might have seen. For example, the image on Page 2 of Mr. Roberts' declaration shows a suggested autofill above the keyboard as follows:




This autofill suggestion, which extends the top of the line of the keyboard, was obviously not present on Plaintiff's screen.

Aaptiv further objects to the Roberts declaration pursuant to Fed. R. Evid. C. §§ 401 and 402 on the grounds that it is not relevant to the issues raised for adjudication in Plaintiff's Motion. It is undisputed that Plaintiff saw Aaptiv's sign-in screen attached to the Altin declaration at Exhibit 9. That alone was sufficient to put Plaintiff on constructive notice of Aaptiv's arbitration agreement. Mr. Roberts declaration is not actual, contradicting evidence that Plaintiff was ever prevented from viewing Aaptiv's notice. Quite the opposite. Not only is Counsel's specific device irrelevant to Plaintiff's experience, but it is irrelevant that a keyboard may have popped up over Aaptiv's notice at some point if the "Join Aaptiv" button was not clickable while the keyboard was on screen.

The Court should sustain these objections and disregard the declaration of Max S. Roberts.

Dated: June 16, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
LUCAS HORI
TALYA GOLDFINGER

By: ______________________
Talya Goldfinger
Attorneys for Defendant
PEAR HEALTH LABS, INC., d/b/a
AAPTIV