**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KASRA SARHADI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PEAR HEALTH LABS, INC., d/b/a AAPTIV,

Defendant.

Case No. 3:24-cv-07921-TLT

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

Date: TBD (*See* ECF No. 39)
Time: TBD (*See* ECF No. 39)
Ctrm: 9
Hon. Trina L. Thompson

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. DEFENDANT SEEKS TO HAVE THE COURT IGNORE BINDING PRECENDENT ..... 2

II. *GODUN* CLARIFIED NINTH CIRCUIT LAW IN A DISPOSITIVE WAY FOR THE PRESENT MOTION ..... 2

III. THE COURT COMITTED CLEAR ERROR IN ITS ANALYSIS OF *CHABOLLA* ..... 4

IV. DEFENDANT DOES NOT MATERIALLY DISPUTE PLAINTIFF'S NEWLY DISCOVERED EVIDENCE, WARRANTING RECONSIDERATION ..... 5

A. Defendant Engages In Improper Burden Shifting And Concedes The Hyperlink Is Obfuscated For At Least The Majority Of The Process ..... 6

B. Newly Discovered Evidence Shows The Hyperlink Was Covered By The Keyboard For At Least The Majority, If Not The Entirety, Of The Sign Up Process ..... 7

V. DEFENDANT FAILS TO MEET ITS BURDEN TO PROVE PLAINTIFF AGREED TO THE TERMS AT ANY OTHER TIME ..... 10

VI. DEFENDANT'S OBJECTIONS TO THE ROBERTS DECLARATION ARE WITHOUT MERIT ..... 10

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..... 1, 7

*Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2017 WL 3149578 (S.D. Cal. July 24, 2017) ..... 11

*Castro v. ABM Industries, Inc.*, 2018 WL 2197527 (N.D. Cal. May 14, 2018) ..... 10

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) ..... 4, 5, 6

*Godun JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025) ..... 2, 3, 4

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) ..... 6

*Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091 (N.D. Cal. May 27, 2025) ..... 5

*Long v. Fid. Water Sys., Inc.*, 2000 WL 989914 (N.D. Cal. May 26, 2000) ..... 10

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ..... 9

*Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089 (C.D. Cal. 2023) ..... 5

*United States v. Beck*, 418 F.3d 1008 (9th Cir. 2005) ..... 11

*Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208 (2023) ..... 10

**RULES**

Fed. R. Evid. 106 ..... 2, 6, 9, 12

Fed. R. Evid. 401 ..... 11, 12

Fed. R. Evid. 402 ..... 11, 12

Fed. R. Evid. 602 .......... 11

Fed. R. Evid. 701 .......... 11

Plaintiff Kasra Sarhadi ("Plaintiff") respectfully submits this reply in support of his Motion for Reconsideration (the "Motion" or "Mtn.") of the Court's Order Granting Defendant Pear health Labs d/b/a Aaptiv's ("Defendant" or "Aaptiv") Motion to Compel Arbitration (the "Order").

## INTRODUCTION

Defendant volleys with Plaintiff regarding the applicability of the Ninth Circuit's newest precedent in *Godun*, whether the Court properly analyzed *Chabolla*, and whether the keyboard must remain open when a user clicks the "Join Aaptiv" button. Unsurprisingly, there is great disagreement between the Parties on these points.

But the Parties agree on one crucial fact, and it should be dispositive of this Motion in Plaintiff's favor. During the sign-up process for the App, when a user is entering text into the form fields, the hyperlink remains obfuscated by the iPhone's keyboard. *See* Roberts Decl. ¶¶ 3-5; Adams Decl. ¶¶ 4-6; Supp. Roberts Decl. ¶¶ 4-5, 7. True, Plaintiff contends the hyperlink's distance from the "Join Aaptiv" button is dispositive under *Godun* and *Chabolla*, regardless of the keyboard. And true, a user may close the keyboard prior to clicking the "Join Aaptiv" button, although a user need not do so to proceed with the account creation process. Supp. Roberts Decl. ¶ 7. But, ultimately, Defendant does not dispute that, for a significant chunk of the sign-up process, the hyperlink is obfuscated by the iPhone's keyboard.

So, based on this newly discovered evidence, the question is whether a reasonably prudent user would be on notice of a hyperlink at the bottom of the screen, in small font, and that is hidden by the keyboard for at least most of the sign-up process. Or, to put it another way, is the second or two that a user may glimpse the hyperlink before and potentially after submitting their information to create an account enough to put a reasonably prudent user on notice of the hyperlink? Especially in light of *Godun* and *Chabolla*, the answer must be no. The Ninth Circuit has made clear that "[w]esite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). Hiding the terms of use behind a keyboard for all but a second or two does not meet this standard. And it especially cannot meet the standard where, despite all of Defendant's evidentiary protestations, Defendant has

refused show how the keyboard impacted the 2020 version of the App—something solely within Defendant's possession. This is improper under both Ninth Circuit law and Fed. R. Evid. 106.

For the following reasons, Defendant's arguments against reconsideration should be rejected, Plaintiff's Motion should be granted, and the Motion to Compel Arbitration should be denied.

## ARGUMENT

### I. DEFENDANT SEEKS TO HAVE THE COURT IGNORE BINDING PRECENDENT

Defendant attempts to invalidate Plaintiff's arguments regarding *Godun* and *Chabolla* and by arguing that the "fact-intensive, totality-of-the-circumstances nature of the analysis" (*Godun JustAnswer, LLC*, 135 F.4th 699, 709-10 (9th Cir. 2025)) somehow means there are no factors from those decisions that can be used as precedent. Opp. at 14: 25-26 ("There are no dispositive factors in a court's analysis."). This is a misreading of Ninth Circuit caselaw.

Both *Godun* and *Chabolla* clarified what is required for website or app operators to show notice of and assent to hyperlinked terms and conditions. True, the inquiry is "fact-intensive." But *Godun* and *Chabolla* set the floor for what is required. So, perhaps to state the obvious, the Court must apply the guidelines set forth in *Godun* and *Chabolla* to the design and presentation of the App screen. And, applying *Godun* and *Chabolla*, the hyperlink is inconspicuous. Defendant's contention that the decisions are of no use to the present Motion is baseless.

### II. *GODUN* CLARIFIED NINTH CIRCUIT LAW IN A DISPOSITIVE WAY FOR THE PRESENT MOTION

The decision in *Godun*, 135 F.4th at 712-13, clarified that hyperlinks that are not "located directly above or below the action button" and that are "displayed in relatively small text" are not conspicuous, even where the page is "generally uncluttered." Further, *Godun* held that advisal language which "stands out against a black background and is close to the action [] button" still fails to give notice when it placed "outside the main frame of the screen," creating "an impression of visual discontinuity[,]" because it "'does not capture the user's attention' and direct her to the notice." *Id*. at 713-14.

This binding precedent is directly relevant to the Order. There is no doubt that the advisal language and hyperlink to the Terms are not near the action button or any of the relevant parts of the sign-up page, creating the impression of unimportance emphasized in *Godun*. *See* Order at 12:9-10

(acknowledging that there is "some distance between the 'Join Aaptiv' button and the notice"); *see also* ECF No. 25-1 at Ex. 9. The Order, which does not cite *Godun*, minimizes the effect of the distance between the "Join Apptiv" button and the advisal language by noting that the sign-up page is relatively free of clutter. Order at 11:17-18, 12:15-17. But *Godun* clarifies that the absence of clutter cannot overcome the distance from the action button, the size of the text, and the impression of visual discontinuity created by placing the advisal language outside of the part of the screen where the user interacts with the page. *See Godun*, 135 F.4th at 713 (finding hyperlink inconspicuous where, although it was "close to the action … button" and on a "generally uncluttered" page, "the placement of the advisal on the black border creates an impression of visual discontinuity"). So too here, where the advisal is significantly beneath the action buttons, thus creating the same "visual discontinuity" and not "captur[ing] the user's attention." *Id*.

Defendant's arguments to the contrary are easily disposed of. *First*, Defendant argues that "Plaintiff fails to cite any material difference in the law created by *Godun*." As described above, *Godun* clarifies that the reasoning in the Order is insufficient under Ninth Circuit law. At worst, *Godun* is still controlling authority that the Court did not consider (because it was issued only three days before the Order).

*Second*, Defendant attempts to distinguish the screens in *Godun* from the sign-up screen here. As to the first screen, Defendant argues that "Aaptiv's notice was not on a black border or background." Opp. At 10:28-11:1. But the point of *Godun* is that there was "visual discontinuity" between the button and the hyperlink. And it is hard to see how a hyperlink that is directly below the action button but on a black background is visually discontinuous under *Godun*, but a hyperlink that is significantly below the action button here is not.

As to the second screen, Defendant argues its screen "is also less cluttered than the *Godun* payment screen and Aaptiv does not include any other text larger than the notice." Opp. At 11:28-12:2. The latter statement is simply not true: the form fields and "Join Aaptiv" button are all in larger text than the notice. ECF No. 25-1 at Ex. 9. Regardless, the Ninth Circuit did not base its order on the clutter on the screen. Instead, it found the placement and font size of the advisal dispositive in and of itself. *Godun*, 135 F.4th at 712 ("The advisal is not, however, located directly above or below

the action button and is displayed in relatively small text."). So, regardless of whether *Godun*'s screen was more or less cluttered, that was not a dispositive factor for the Ninth Circuit. And applying *Godun* here, that means the small font size of the advisal and its distance from the "Join Aaptiv" button alone render the hyperlink inconspicuous.

*Finally*, Defendant points out that an automatically renewing subscription was at issue in *Godun*. Opp. At 11:20-26. Defendant fails to recognize that the analysis regarding the context of the transaction applies equally to its own screen. As in *Godun*, Aaptiv users sign up for the Aaptiv account once, "which triggers an 'automatically recurring membership' for continued access to the product." *Godun*, 135 F.4th at 712. As such, the context of the transaction does not change *Godun*'s applicability.

**III. THE COURT COMITTED CLEAR ERROR IN ITS ANALYSIS OF *CHABOLLA***

As discussed in the Motion, the Order also committed clear error by misapprehending the facts and failing to consider dispositive legal arguments in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) by analogizing to screens not analyzed by the *Chabolla* court for conspicuous notice. Mot. at 6-8. This is especially true in light of *Godun*, which clarified (in part, by analyzing *Chabolla*) that if a hyperlink is not "located directly above or below the action button and is displayed in relatively small text," as here, then that in and of itself renders the hyperlink inconspicuous. *Godun*, 135 F.4th at 712

Defendant's attempt to distinguish Screen 1 in *Chabolla* from its own signup screen rests on (i) its insistence that the clutter on the Screen 1 is the most important factor, and (ii) its note that "Aaptiv's screen here did not include any 'Sign up with Facebook' button." Opp. at 13:18-19, 14:2-3. This is wrong. The Ninth Circuit's holding in *Chabolla* was that, "because of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is deemphasized by the overall design of the webpage and not prominently displayed on screen 1." *Chabolla*, 129 F.4th at 1157 (cleaned up). Whether or not the "clutter" of the webpage was considered, *Chabolla* did not base its holding on that aspect. Especially paired with *Godun*, *Chabolla*'s holding means the hyperlink here—in the smallest font

on the page, well below the action buttons, and not in any different color than the surrounding text—renders it inconspicuous.

As to the latter point, Defendant's sign-up screen contained a keyboard that covered up the hyperlink during the sign-up process. Supp. Roberts Decl. ¶¶ 4-6. Regardless, *Chabolla* made clear that "[a] reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook." *Chabolla*, 129 F.4th at 1157. In other words, *Chabolla* made clear that once users click the action button, they are not presumed to read further than text that is directly below the action button. Applying that reasoning here, a reasonably prudent user would not be presumed to read well below the "Join Aaptiv" button to see the advisal at the very bottom of their screen—not least of all because the advisal is covered by a keyboard for most of the process. *See* Argument § IV, *infra*. That renders the hyperlink inconspicuous under *Chabolla*.

Defendant also cites to *Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091 (N.D. Cal. May 27, 2025), which it claims supports notice "in the wake of *Godun*." Opp. at 16:24-17:28. But as is clear from the text of the decision, *Kroskey* did not cite to, much less consider, *Godun* or *Chabolla*. Thus, it is not clear that the *Kroskey* decision was correctly decided or in harmony with Ninth Circuit precedent. *Cf. Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1097 n.1 (C.D. Cal. 2023) (declining to follow district court opinion that cited to the Ninth Circuit's decision in *Berman* "but did not address the Ninth Circuit's statement," and holding "*Berman*, of course, is binding precedent, while [the district court opinion] is not").

In short, as Plaintiff respectfully highlighted in his Motion, the Court did not apply *Godun* and missed the key part of *Chabolla*'s holding—which turned on placement of the advisal rather than clutter. These decisions together warrant reconsideration.

## IV. DEFENDANT DOES NOT MATERIALLY DISPUTE PLAINTIFF'S NEWLY DISCOVERED EVIDENCE, WARRANTING RECONSIDERATION

In addition to the *Godun* and *Chabolla* holdings warranting reconsideration, newly discovered evidence suggests that typing text into a form field on an iPhone, a keyboard pops up that covers up the entire lower half of the screen, including the terms hyperlink and advisal language. Mot. at 8-9. Defendant does not dispute this feature exists and, notably, did not produce an updated

reconstruction of the App from 2020 that shows how this feature would have affected the presentation of the screen. Defendant's arguments to the contrary must fail.

### A. Defendant Engages In Improper Burden Shifting And Concedes The Hyperlink Is Obfuscated For At Least The Majority Of The Process

Before delving into the meat of the discussion, there are two important principles to keep in mind. *First*, Defendant improperly tries to shift the burden of proving lack of notice to Plaintiff. Opp. at 19:18-19 ("Aaptiv need not (and cannot) prove the features and settings of the exact device Plaintiff used when registering. That information is solely within Plaintiff's possession."). The Ninth Circuit could not have been clearer the other way: "[i]t was [Defendant's] burden to show assent, not [Plaintiff's] to show lack thereof." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023); *see also Chabolla*, 129 F.4th at 1156 ("[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.") (cleaned up). This was so in *Jackson*, even though (theoretically) whether delivery drivers received an e-mail would have been in the drivers' possession. *See id*. And this was despite the defendant's repeated argument in *Jackson* that the plaintiff "submitted no [contrary] evidence" (*see Jackson v. Amazon.com, Inc.*, Case No. 21-56107, ECF No. 12 at 2 (9th Cir. Mar. 7, 2022)—an argument the Ninth Circuit rejected.

The same is true here. It was thus incumbent on Defendant to show how the App appeared on an iPhone in 2020 when Plaintiff created an account. And it was incumbent on Defendant—both under *Jackson* and as an evidentiary matter (*see* Fed. R. Evid. 106)—to show that the hyperlink was not covered by the keyboard.[1] Defendant should be capable of demonstrating how keyboard affected the presentation of the 2020 App screen, as Defendant "recreated the sign-up screen from the 2020 App by isolating the sign-up screen files and assets from the Git repository that were used in June 2020." ECF No. 25-1 ¶ 22. So, either Defendant (i) is capable of showing this, but chose to not provide this crucial piece of information, or (ii) it is incapable of doing so, which is also insufficient for Defendant to meet its burden. *Jackson*, 65 F.4th at 1100. Either way, it is improper under Ninth Circuit law for Defendant to argue "[i]f Plaintiff had any actual, contradicting evidence that the notice

[1] Defendant contends the screenshot itself was sufficient "without any contradicting evidence about what the plaintiff saw." Opp. at 20:2-3 (cleaned up). Notwithstanding Plaintiff did provide contradicting evidence here, the presence or absence of the keyboard is a key factor for notice here, and Defendant was thus required to show how the screen appeared in conjunction with the keyboard.

he saw was different than in the screenshot Aaptiv provided, Plaintiff would have and should have provided it." Opp. at 20:15-17.

*Second*, Plaintiff and Defendant dispute whether the "Join Aaptiv" button is clickable while the keyboard is open and whether the keyboard covers the hyperlink at the time the button is clicked. *Compare* Supp. Roberts Decl. ¶¶ 4-5, 7; *with* Adams Decl. ¶¶ 4-6. But Defendant does *not* dispute that, throughout the sign-up process (*i.e.*, entering one's name and e-mail into the form fields), the hyperlink remains covered by the keyboard. Adams Decl. ¶¶ 4-6.

So, even assuming Defendant's presentation of the evidence is correct (and it is not), Defendant's position is that a reasonably prudent user would be on notice of the hyperlink for the second or two that the hyperlink is uncovered between closing the keyboard and clicking the "Join Aaptiv" button. This argument contradicts Ninth Circuit law. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print."). Thus, whether the keyboard must be closed before clicking the "Join Aaptiv" button does not change Plaintiff's argument that this newly discovered evidence shows, at least, that the hyperlink was obfuscated for the majority of the sign-up process. This does not suffice for notice.

In short, (i) the burden is on Defendant to show notice, including obviating any concerns about the keyboard, and (ii) Defendant does not dispute that the hyperlink remained covered by the keyboard for the majority of the sign-up process. With those principles in mind, Defendant's arguments must fail.

### B. Newly Discovered Evidence Shows The Hyperlink Was Covered By The Keyboard For At Least The Majority, If Not The Entirety, Of The Sign Up Process

As Plaintiff made clear in his Motion, Defendant's declaration omitted that the iPhone keyboard would have obfuscated the hyperlink on the App screen. *See generally* Mtn. at 7-9. Ironically, Defendant now contends Plaintiff's counsel's declaration "presented the Court with only" because "Plaintiff's counsel would have had to fill in all of the text boxes and hit the return button

on the keyboard before the 'Join Aaptiv' button became active." Opp. at 18:20-22, 19:1. As Plaintiff made clear above, this is a distinction without a difference to his argument. Argument § IV.A, *supra*.

But Defendant's statement is also not true. The "Join Aaptiv" button *can in fact be clicked while the keyboard is open*. Supp. Roberts Decl. ¶¶ 4-5.[2] The user need not close the keyboard themselves to complete the process. When a user clicks the "Join Aaptiv" button, the keyboard does close. *Id.* ¶ 7. However, the App then automatically directs the user to the next phase of the sign-up process a second later. *Id.* ¶ 7. So, to the extent it is material, the App's sign-up process is follows:

1. A user downloads the App and proceeds to the sign-up screen. No keyboard obfuscates the hyperlink until a user begins entering information in the form fields. Roberts Decl. ¶¶ 3-4; Adams Decl. ¶ 3.
2. Once a user begins entering text into the form fields, the keyboard covers up the hyperlink on the sign-up screen. Roberts Decl. ¶¶ 3-4; Adams Decl. ¶ 4.
3. Once a user fills in all of their information, the "Join Aaptiv" button becomes clickable. *Id.* ¶ 7; Adams Decl. ¶ 5. However, the keyboard covers the hyperlink throughout this process, and a user need not close the keyboard to click the "Join Aaptiv" button. Supp. Roberts Decl. ¶¶ 4, 7.
4. When a user clicks "Join Aaptiv," the keyboard does in fact close. Supp. Roberts Decl. ¶ 7. However, the button click is still processed and the App immediately directs the user to the next screen. *Id.*

Thus, as Plaintiff argues above, the advisal language and Terms hyperlink are only visible or accessible for, *at most, a few seconds* before disappearing. That cannot be sufficient for the purpose of providing adequate notice of an arbitration agreement in the Terms of Service.

Defendant also raises evidentiary issues with Plaintiff's evidence, including that it was taken on more recent iPhones and that "Plaintiff simply has not offered any actual evidence of what he saw on his device in 2020." Opp. at 19:10-11, 20:11-12 (cleaned up). But this is the problem Plaintiff highlighted in his Motion. The relevant version of the App from 2020 is entirely within Defendant's possession, custody, and control. Indeed, it took Defendant recreating the 2020 App from "files and assets from the Git repository" to produce the screenshots in the Altin Declaration. ECF No. 25-1 ¶ 22. So, Plaintiff has raised an evidentiary dispute as to how the sign-up page appeared based on

[2] Mr. Adams does state that the "Join Aaptiv" button cannot be clicked until text is inputted "into all of the form fields on the sign-[up] screen." Adams Decl. ¶ 2. Plaintiff does not dispute this.

the functionality and appearance of the App in the present day. But because the 2020 version of the App was entirely within Defendant's control, and because Defendant's presentation was non-interactive, "it was impossible for Plaintiff to interact with or dispute how the App appeared at that time." Mtn. at 8:4-5. That is why the current presentation of the App is newly discovered evidence. And it is why the burden as to notice must remain on Defendant: because Defendant is asking Plaintiff to dispute evidence that is entirely within Defendant's control, that Defendant omitted a key part of, and that Defendant did not present Plaintiff an opportunity to interact with. If Defendant contends the current version of the App is different from 2020, it is on Defendant to show otherwise.

Relatedly, in attempting to improperly shift the burden onto Plaintiff, Defendant also argues it cannot "prove the features and settings of the exact device Plaintiff used when registering." Opp. at 19:18-19. But Defendant was the one who submitted a declaration that claimed to approximate how the App screen would have appeared to Plaintiff in 2020. ECF No. 25-1 ¶ 22 ("Aaptiv's lead application engineer recreated the sign-up screen from the 2020 App … which was emulated on an iPhone 11 because it was a device available in June 2020."). Defendant cannot have it both ways. Either Defendant capable of showing how its App would have appeared to Plaintiff in 2020 based on this recreation, in which case, Defendant can show whether or not the keyboard interfered with the viewability of the hyperlink in 2020. Or, the Altin Declaration (ECF No. 25-1) did not actually show how the App appeared to Plaintiff in 2020, in which case Defendant failed to meet its evidentiary burden under *Jackson*.[3]

In sum, in response to Plaintiff's evidentiary challenge, Defendant could have recreated its App screen from 2020, entered text into the form fields, and either disproven or proven Plaintiff's argument. Indeed, not only did Defendant have the burden to do so, but "in fairness," it ought to have done so. Fed. R. Evid. 106. Instead, Defendant chastises Plaintiff for not conducting testing on a five-year-old version of the App that is entirely within Defendant's control, while also

---

[3] Defendant's citation to *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), is inapposite. There, the Ninth Circuit rejected "evidence of subjective intent." *Id.* at 518. But that is because this evidence did not create a question of fact as to the appearance of the webpage, and constructive notice is "an objective-reasonableness standard." *Id.* at 513, 518. Here, Plaintiff's evidence has created a question of fact as to the appearance of the App and goes to the objective inquiry.

submitting its own declaration of counsel that largely confirms Plaintiff's argument. This is improper. And, ultimately, Defendant's own testing shows the hyperlink was covered for at least most of the sign-up process, which cannot suffice for notice.

Thus, Plaintiff's newly discovered evidence shows the hyperlink was obstructed from at least much of the sign-up process, warranting reconsideration.

## V. DEFENDANT FAILS TO MEET ITS BURDEN TO PROVE PLAINTIFF AGREED TO THE TERMS AT ANY OTHER TIME

Defendant finally argues reconsideration is not warranted because "Plaintiff has continued using the Aaptiv App even after Aaptiv sent its arbitration demand and moved to compel arbitration." Opp. at 20:19-20. Even if Plaintiff were bound to arbitrate any claims related to his use of the App since the date Defendant moved to compel arbitration (which Plaintiff disputes), the arbitration clause does not apply retroactively. The arbitration clause (*see* ECF No. 25-1 Ex. 7 ¶ 11) does not contain language that "clearly and unequivocally" indicates retroactive application. *Long v. Fid. Water Sys., Inc.*, 2000 WL 989914, at *4 (N.D. Cal. May 26, 2000); *see also id.*, at *3 ("Even assuming Mr. Continolo is deemed to have agreed to the arbitration provision, defendants[] offer no justification for holding that he agreed to arbitrate acts that occurred before the effective date of that agreement."). Indeed, the clause makes use of present-tense language, which indicates prospective rather than retroactive effect. *Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208, 223 (2023) ("The use of the present-tense … suggests that the contract governs only disputes that begin … in the present or future. The present tense usually does not refer to the past."); *see also*, *e.g.*, *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) ("[T]he CBAs' use of the present tense 'arise' suggests that the clauses govern present and future, but not past, conduct.").

Thus, even if Plaintiff must arbitrate any claims he has against Defendant that arose after March 14, 2025, Plaintiff would not be required to arbitrate any claims arising before that date.

## VI. DEFENDANT'S OBJECTIONS TO THE ROBERTS DECLARATION ARE WITHOUT MERIT

Defendant also asks the Court to strike the initial Roberts Declaration "on the grounds that it lacks foundation, lacks personal knowledge and is improper speculation." Opp. at 22. Defendant is mistaken.

*First*, to the extent there is any missing information in the Roberts Declaration regarding whether an account was created, whether he used his own phone, or the like, Plaintiff's counsel has clarified that in his Supplemental Declaration. *See* Supp. Roberts Decl. ¶ 8.

*Second*, none of Defendant's arguments go to whether Plaintiff's counsel had "personal knowledge" of the facts in his declaration (Fed. R. Evid. 602), or whether the declaration was "rationally based on the witness's perception" (Fed. R. Evid. 701(a)). Indeed, Plaintiff's counsel repeatedly avers that the actions described in the declaration were personally undertaken by him, and that he has personal knowledge of the facts in the declaration. *See*, *e.g.*, Roberts Decl. ¶ 1 ("I have personal knowledge of the facts set forth in this declaration such that, if called as a witness, I could testify truthfully and accurately to its contents."); *id.* ¶ 3 ("I downloaded Defendant's mobile application on an iPhone 13 Pro Max while at my firm's Walnut Creek office."); *id.* ¶ 6 ("[M]y iPhone's keyboard covered the hyperlink…").

*Third*, Defendant raises a number of arguments about what operating system was used, what "keyboard app" was used, and what settings were in place on the iPhones. Opp. at 22:11-14. None of those criticisms appear material, especially given Defendant's own counsel largely confirmed the Roberts Declaration. At best, these questions would go to the weight of the evidence, not its admissibility, as they do not affect Plaintiff's counsel's personal knowledge of the content attested to in the declaration. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2017 WL 3149578, at *10 (S.D. Cal. July 24, 2017) ("Lopez testifies as to Bona Fide's past profit margins—not lost profits—as permitted by Federal Rule of Evidence 701. And SourceAmerica's objections to Lopez's methodology go to the weight, not the admissibility, of the evidence."); *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (holding that "a lay witness's testimony is rationally based within the meaning of Rule 701 where it is based upon personal observation and recollection of concrete facts") (cleaned up).

*Fourth*, Defendant also objects to the Roberts Declaration pursuant to Fed. R. Evid. 401 and 402 because "[i]t is undisputed that Plaintiff saw Aaptiv's sign-in screen attached to the Altin declaration at Exhibit 9" and "[t]hat alone was sufficient to put Plaintiff on constructive notice of Aaptiv's arbitration agreement." Opp. at 23:6-7. Except it is not. Whether the keyboard obfuscated

the hyperlink to Defendant's terms directly bears on whether a reasonably prudent user would be on constructive notice. If the hyperlink was obfuscated for all (or at least most) of the sign-up process, that makes it "more … probable" that a reasonably prudent user would not be on constructive notice. Thus, the evidence is not inadmissible under Fed. R. Evid. 401 and 402.

*Finally*, and relatedly, it is Defendant's burden to prove notice, and Defendant thus can and should have (under *Jackson* and Fed. R. Evid. 106) shown how the keyboard affected the presentation of the App in 2020. Were Defendant to do this, as is Defendant's burden, there would be no need for either the Roberts or the Adams Declarationn. Defendant's continued unwillingness to do so reinforces the need for the Roberts Declaration, as it puts the design and content of the App in dispute.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Reconsideration and deny Defendant's Motion to Compel Arbitration.

Dated: June 23, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joshua R. Wilner*
Joshua R. Wilner

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*