United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KASRA SARHADI,
Plaintiff,
v.
PEAR HEALTH LABS, INC.,
Defendant.

Case No. 24-cv-07921-TLT

**ORDER DENYING MOTION FOR RECONSIDERATION**

Re: ECF 40

On April 18, 2025, the Court granted Defendant Pear Health Labs, Inc. doing business as ("dba") Aaptiv ("Aaptiv" or "Defendant")'s motion to compel arbitration of Plaintiff Kasra Sarhadi's claims. ECF 37. The Court exercised its discretion to stay the action rather than dismiss it, even after Plaintiff failed to oppose Defendant's request for dismissal. *Id.* at 14–5.

Rather than adhere to the Court's order to initiate arbitration, on May 16, 2025, Plaintiff filed a motion for leave to file motion for reconsideration. ECF 38. Based on Plaintiff's representations of the Ninth Circuit's recent holding in *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025), application of the facts under *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), and application of newly discovered evidence, the Court granted Plaintiff leave. ECF 39.

Before the Court is Plaintiff's motion for reconsideration. ECF 40. The Court found this matter appropriate for resolution without oral argument and took it under submission. ECF 45; *see* Civ. L.R. 7-1(b) (authorizing courts to dispense with oral argument on any motion except where an oral hearing is required by statute).

After review of the parties' arguments, the Court **DENIES** Plaintiff's motion for reconsideration.

//

//

## I. BACKGROUND

In June 2020, Plaintiff downloaded Defendant's popular audio- and video-based mobile fitness application. ECF 1, ¶ 86. Plaintiff contends that Defendant disclosed information to third parties sufficient to identify Plaintiff and class members, view and use their private communications, and learn the specific videos they watched. *Id.* ¶ 28. Plaintiff, on behalf of himself and similarly situated individuals, argues that this practice violated the Video Privacy Protection Act ("VPPA") and the California Information Privacy Act ("CIPA"). *Id.* ¶¶ 107–28.

Defendant moved to compel arbitration based on an arbitration agreement Plaintiff assented to during account creation. ECF 25-1, Declaration of Gregory Altin ("Altin Decl."), ¶¶ 22–23, Exhibit ("Ex.") 9; *id.* ¶¶ 14, Ex. 5. The parties primarily disputed whether Plaintiff was on notice of the sign-wrap agreement. ECF 37, at 8–12. The Court granted the motion to compel arbitration. *Id.* at 15. Despite Plaintiff's failure to oppose Defendant's request for dismissal, the Court exercised its discretion and stayed the case pending arbitration. *Id.* at 14–5.

Rather than initiate arbitration, on May 16, 2025, Plaintiff filed a motion for leave to file motion for reconsideration. ECF 38. Based on Plaintiff's representations, the Court granted motion for leave. ECF 39. Plaintiff filed his motion for reconsideration. ECF 40. Defendant timely filed an opposition and objections. ECF 41. Plaintiff timely filed a reply. ECF 42. Defendant filed further objections. ECF 43.

## II. LEGAL STANDARD

Trial courts have inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment. Fed. R. Civ. P. 54(b). The substantive standard governing reconsideration of an interlocutory order is the same as that which governs motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first

United States District Court
Northern District of California

time when they could reasonably have been raised earlier in the litigation.' " *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

The Northern District of California also has local rules governing motions for reconsideration. A motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments. Civ. L.R. 7-9(b). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

## III. DISCUSSION

Plaintiff moves for reconsideration on three grounds: (1) the Court did not consider *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025), a Ninth Circuit case issued three days before the Court's order; (2) the Court failed to consider dispositive legal arguments in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025); and (3) Plaintiff discovered new evidence about the sign-up screen that he could not have discovered earlier. ECF 40. The Court limited Plaintiff's motion for reconsideration to these grounds. *See* ECF 39. The Court will address each contention in turn.

### A. The ruling in *Godun* does not alter the Court's ruling.

Plaintiff first argues that the Court failed to consider intervening change in the controlling law in *Godun v. JustAnswer, LLC*, 135 F.4th 699 (9th Cir. 2025), a Ninth Circuit case issued three days before this Court's Order. ECF 40, at 3–5. In *Godun*, the Ninth Circuit affirmed the district court's finding that the payment page and the landing page did not put plaintiffs on inquiry notice of the contractual terms. *Godun*, 135 F.4th at 711–14. Despite the affirmation of the district court, Plaintiff argues that *Godun* represents an intervening change in the controlling law.

Plaintiff contends that *Godun* stands for the proposition that hyperlinks that are not "located directly above or below the action button" and that are "displayed in relatively small text"

are not conspicuous, even where the page is "generally uncluttered." ECF 40, at 4 (quoting *Godun*, 135 F.4th at 712–13). Plaintiff points the Court to two hyperlinks in the *Godun* analysis—a hyperlink on the landing page for Plaintiff Godun, *Godun*, 135 F.4th at 713, and a hyperlink on the payment page for Plaintiff Nelson, *id.* at 712. ECF 40, at 3; *id.* at 3 n.2 ("*Godun* involved two other hyperlinks that are not relevant here.").

As an initial matter, Plaintiff's suggested holding conflates the Ninth Circuit's analysis for Plaintiff Nelson's payment page hyperlink and Plaintiff Godun's landing page hyperlink. For Plaintiff Nelson's payment page hyperlink, the Court observed that the hyperlink was not "located directly above or below the action button" and was "displayed in relatively small text." *Godun*, 135 F.4th at 712. For Plaintiff Godun's landing page hyperlink, the court separately observed that "[w]hile the page is generally uncluttered, the placement of the advisal on the black border creates an impression of visual discontinuity." *Id.* at 713. Plaintiff's framing seems to suggest these separate observations are connected when *Godun* did not suggest such. *See* ECF 40, at 4. Nevertheless, the Court will address each hyperlink in turn.

**1. Plaintiff Godun's Landing Page Hyperlink**

Turning to Plaintiff Godun's landing page hyperlink, the court observed that the hyperlink was in small text and while it was close to the action button, it was outside the main frame of the screen—separated by a border. *Godun*, 135 F.4th at 713. The court reasoned that "the placement of the advisal on the black border creates an impression of visual discontinuity." *Id.*

Here, Plaintiff Godun's landing page hyperlink's is easily distinguishable because the hyperlink in Aaptiv's sign-up screen it is not outside the main frame of the screen, separated by a border. *See* ECF 40, at 4. Without the separation of the main frame from the hyperlink in *Godun*, there is no similar impression of visual discontinuity. *Id.* The Court finds that *Godun*'s landing page hyperlink does not alter the Court's analysis.

**2. Plaintiff Nelson's Payment Page Hyperlink**

For Plaintiff Nelson's payment page hyperlink, the court first found that "the context of the transaction is informed by the fact that there is an automatically renewing subscription at issue." *Godun*, 135 F.4th at 712. Turning next to the visual prominence, the court found that while



United States District Court
Northern District of California

hyperlink was a different color from the background, the hyperlink was not "located directly above or below the action button and is displayed in relatively small text." *Id.* Considering both the context of the transaction and the visual prominence, the Court found that inquiry notice was not satisfied. *Id.* Here, Defendant also points to other distinguishing characteristics such as distracting clutter, a free trial button, large intervening text, and a smaller notice. ECF 41, at 12.

In response, Plaintiff urges the Court to ignore the context of the transaction, ignore the other distinguishing characteristics, and find *Godun*'s single observation to be applicable and dispositive. ECF 42, at 2–4. However, Plaintiff misunderstands the law. Plaintiff's dispostive factor approach is in contravention of well-established Ninth Circuit precedent. *See Godun*, 135 F.4th at 710. "There is no bright-line test for finding that a particular design element is adequate in every circumstance. And, by the same logic, there are not per se rules about what's necessarily inadequate, either. Such a one-size-fits-all approach would undermine the fact-intensive, totality-of-the-circumstances nature of the analysis. Barring changes to state-law doctrines regarding internet contract formation, any suggestion that hard-and-fast rules constrain this inquiry results from over-reading or misreading our precedent." *Id.* (citations and quotations omitted).

Here, there are significant distinguishing characteristics between the screen at issue and the Plaintiff Nelson's payment page hyperlink. *See* ECF 41, at 12. Further, the context of the transaction remains a relevant consideration. ECF 37, at 9–10. The Court finds that *Godun*'s payment page hyperlink does not alter the Court's analysis.

The ruling in *Godun* does not in any way alter this Court's ruling. The motion for reconsideration based on *Godun* is **DENIED**.

### B. The legal arguments in *Chabolla* were already considered by the Court.

In its order, the Court considered the sign-up screens in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025). ECF 37, at 11. The Court found that a side-by-side comparison of the sign-up screen in question and *Chabolla*'s sign-in screens indicated clear distinctions. *Id.* Unlike the Defendant's sign-up screen, "the [*Chabolla*] screen was 'crowded,' and the notice was obscured by other images and intervening and muddled text about signing up with Facebook or language regarding gift cards." *Id.* The Court further found that unlike the *Chabolla* screen, "the

distance between 'Join Aaptiv' button and the notice was offset by the fact that there is no intervening text or buttons in between such that the eyes of the user flow to the notice." *Id.* at 12.

Here, Plaintiff argues that the Court erred by not considering *Chabolla*'s Screen 1 in its analysis. In *Chabolla*, the Ninth Circuit considered the reasonable conspicuous notice of terms for three screens. *Chabolla*, 129 F.4th at 1157. For Screen 1, the court observed:

> Screen 1 contains text in varying font sizes and images of people exercising. The user is directed to the action box in the right third of the page and must enter an email to continue. For users (like Chabolla) who enter their email address, the most obvious and natural next step is to click "Continue." If a user continued to read down the page, they would see an option to "Sign up with Facebook." The notice of additional terms is found below the "Sign up with Facebook" option, on the periphery of where a user intending to use their email would be looking. A reasonably prudent user would likely click "Continue" and read no further if she had no intention of using Facebook. It is not apparent that a user agrees or commits to anything on screen 1 other than sharing her email address. Here, the notice seems to fade into the irrelevancy of other aspects of the page.

*Id.* The court also observed:

> Because of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is "deemphasized by the overall design of the webpage" and not "prominently displayed" on screen 1.

*Id.* Based off these observations the court found that the visual aspects of the Screen 1 weighed against conspicuous notice. *Id.* at 1157–58.

Plaintiff argues that the hyperlink on *Chabolla*'s Screen 1 was inconspicuous because "of the notice's distance from relevant action items, its placement outside of the user's natural flow, and its font." ECF 40, at 6. *Chabolla*'s Screen 1 did not have to do with clutter or other images, and the Court's consideration of such was "clear error." *Id.*

Plaintiff's motion for reconsideration has quickly collapsed into a declaration of disagreement with the Court. As Defendant points out, the Court's order considered the distance between the "Join Aaptiv" button and the notice in the same context that the Ninth Circuit did—whether it was within "the user's natural flow." ECF 37, at 12. Here, the Court found that the distance between the button and screen did not interrupt the user's natural flow. *Id.* The Court

found further distinguishing design elements such as "crowded[ness]" and the presence of "other images and intervening and muddled text." *Id.*

In his declaration of disagreement, Plaintiff again wishes to isolate the Ninth Circuit's words and hold a single factor—"the notice's distance from relevant action items"—as dispositive. In his reply, Plaintiff concedes that he believes this single factor is dispositive to the analysis. *See* ECF 42, at 1 ("True, Plaintiff contends the hyperlink's distance from the "Join Aaptiv" button is dispositive under *Godun* and *Chabolla*, regardless of the keyboard.").

Plaintiff hopes the Court will ignore the *Chabolla*'s guidance regarding the user's natural flow and other distinguishing intervening text and buttons before the notice. The Court declines to do so. As Plaintiff knows, this "inquiry has always been context- and fact-specific." *Chabolla*, 129 F.4th at 1155 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513–14 (9th Cir. 2023)); *id.* at 1156–57 ("[T]here is no bright-line test for finding that a particular design element is adequate in every circumstance. We must instead consider how those design elements appear on the page.").

Plaintiff's arguments reply on highly selective reading of Ninth Circuit authority. The motion for reconsideration based on already-considered legal arguments in *Chabolla* is **DENIED**.

**C. Plaintiff's new evidence does not meet the standard for reconsideration.**

Plaintiff presents his new evidence: when his counsel downloaded Aaptiv's App on May 16, 2025 to an "iPhone 13 Pro Max," and "clicked the 'First Name' form field to enter text," it "caused the iPhone's keyboard to open" and cover the notice. ECF 40-1, Declaration of Max S. Roberts ("Roberts Decl.") ¶¶ 3–4. Plaintiff's counsel then retested this process on May 31, 2025 on an iPhone 16 Pro Max, and the result was the same. *Id.* ¶ 5.

Defendant quickly points out the major omission in Plaintiff's new evidence: the keyboard disappears from the screen before the user can select the "Joint Aaptiv" button revealing the hyperlink. ECF 41-1, Declaration of Michael D. Adams ("Adams Decl."), ¶ 5. Defendant next points out that the sign-in screen Plaintiff's counsel saw in 2025 is not the same as the one Plaintiff saw in 2020. ECF 41, at 19. Further, the device and keyboard counsel used in 2025 is not the same device and keyboard Plaintiff used in 2020. *Id.*



United States District Court
Northern District of California

Plaintiff files a new declaration on reply that attempts to correct his evidence. ECF 42-1, Supplemental Declaration of Max Roberts ("Supp. Roberts. Decl."). Defendant objects to this evidence as new evidence that is improper on reply and must be stricken. ECF 43, at 2. The Ninth Circuit has established that the "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Accordingly, the Court **STRIKES** the Supplemental Declaration of Max Roberts.

Turning to the new evidence, the Court need not reach its merits because it does not meet the standard for new evidence on reconsideration. "When a movant seeks reconsideration based on newly discovered evidence, he must make three showings: the evidence must be newly discovered, the movant must have exercised due diligence to discover the evidence, and the evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Costa v. Postmates Inc.*, No. 19-CV-03046-JST, 2020 WL 13526733, at *2 (N.D. Cal. June 26, 2020) (internal quotations and citations omitted).

Here, Plaintiff fails to fulfill the first two showings. First, the evidence is not newly discovered. Rather, the Aaptiv App is publicly available to anyone with a smartphone and Plaintiff and his counsel had the ability to access it. *See California Crane Sch., Inc. v. Google LLC*, No. 21-CV-10001-PCP, 2024 WL 3498239, at *2 (N.D. Cal. July 18, 2024) (evidence was not newly discovered where it was publicly available on a website). Second, Plaintiff makes no attempt to demonstrate "reasonable diligence," failing to describe "as to when, or how, or under what circumstances Plaintiff[] first learned of" the iPhone keyboard. *Costa*, 2020 WL 13526733, at *2. Plaintiff's reason for delay is largely an after-thought from counsel to test the Aaptiv App after the Court's order to initiate arbitration. Accordingly, the Court **DENIES** motion for reconsideration on the basis of new evidence.

Defendant files further objections to the Declaration of Michael D. Adams. *See* ECF 41, at 22–3. In light of the Court's denial of reconsideration, these objections are now moot.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's motion for reconsideration is **DENIED**. The parties are ordered to initiate arbitration. ECF 37. Joint status report regarding status of arbitration proceedings is due August 25, 2025, and every 60 days thereafter.

A case management conference is schedule for December 11, 2025, at 2:00 p.m. via videoconference. Joint case management statement is due December 4, 2025.

**IT IS SO ORDERED.**

Dated: July 10, 2025

TRINA L. THOMPSON
United States District Judge